UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LINDA CRUZ-PACKER,                 )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        Civil Action No. 07-1235 (RWR)
                                   )
MICHAEL CHERTOFF,                  )
Secretary of Homeland Security,    )
Department of Homeland Security,   )
                                   )
            Defendant.             )
_____  )


## DEFENDANT'S MOTION TO DISMISS

Defendant, Michael Chertoff, Secretary, Department of Homeland Security,  respectfully

moves this Court, pursuant to Fed. R. Civ. P. 12(b)(1)  for an order dismissing the Complaint for

 lack of subject matter jurisdiction. In support of this Motion, the Court is referred to the (1)

accompanying Memorandum of Points and Authorities; (2) Exhibits and (3) proposed Order. [1]

_____

[1]  To the extent that the Court may rely on matters outside of the pleadings, the Court may
enter summary judgment in favor of the defendant.  See Fed. R. Civ. P. (12) (b); 56. Plaintiff
should take notice that any factual assertions contained in the affidavits and other attachments in
support of defendant's motion will be accepted by the Court as true unless the plaintiff submits
his own affidavits or other documentary evidence contradicting the assertions in the defendant's
attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and
Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


\_\_/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., E-4106
Washington, D.C. 20530

OF COUNSEL:

Bryan A. Bonner, Esquire
Office of Chief Counsel
Transportation Security Administration

---

summary judgment is made and supported as provided in this rule,
an adverse party may not rest upon the mere allegations or denials
of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial. If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LINDA CRUZ-PACKER,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        Civil Action No. 07-1235 (RWR)
                                      )
MICHAEL CHERTOFF,                     )
Secretary of Homeland Security,       )
Department of Homeland Security,      )
                                      )
            Defendant.                )
_____     )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS `

### INTRODUCTION

While Title VII of the Civil Rights Act of 1964 provides expansive rights for federal

employees to bring employment discrimination and retaliation claims in federal court, those

rights are subject to certain limitations.  This case implicates one of those limitations - the right

of the Executive Branch to exercise its discretion in making determinations regarding national

security and who may have access to information affecting it.

This case involves plaintiff Linda Cruz-Packer's indefinite suspension and separation

from the Transportation Security Administration (TSA), a subcomponent of the Department of

Homeland Security (DHS).   TSA conditionally hired Plaintiff as a Criminal Investigator,

SV-1811-J.  In order to be permanently placed in that position, Plaintiff had to meet certain

suitability requirements.  For her position, she had to be successfully adjudicated for employment

and eligible for access to national security information.  TSA conducts suitability determinations

of its employees pursuant to an Executive Order of the President that declares acceptable backgrounds are required to protect the national security of the United States.  Because Plaintiff's claims in this case are inextricably intertwined with the Executive Branch's stewardship over national security, this Court is without subject matter jurisdiction to hear the claims.

## FACTUAL BACKGROUND

The Transportation Security Administration conditionally hired Plaintiff as a Transportation Security Specialist, SV-1801-J, in TSA's Office of Internal Affairs and Program Review.  See Plaintiff's hiring SF-50; effective June 16, 2002, attached hereto as Exhibit 1. Plaintiff was reassigned to the position of Criminal Investigator, SV-1811-J, in TSA's Office of Special Investigations, conditioned upon Plaintiff's successful completion of the Office of Personnel Management (OPM) background investigation.  See Plaintiff's reassignment SF-50, effective June 30, 2002, attached hereto as Exhibit 2 ; see also TSA's Decision on Proposed Removal, November 18, 2004, attached hereto as Exhibit 3 and Notice of Proposed Removal; October 24, 2003, attached hereto as Exhibit 4.  As stated above, Plaintiff's permanent appointment to the Criminal Investigator position was contingent on her successfully being adjudicated for employment and eligibility for a Top Secret security clearance. See Declaration of Sheran Callahan, attached hereto as Exhibit 5, See also Exhibits 3 & 4.

In the course of its investigations into Plaintiff's eligibility for a Top Secret security clearance, Plaintiff submitted a  SF-86 Declaration of Federal Employment, which included the "Questionnaire for National Security Positions."  Question #22 of this questionnaire requires applicants to disclose, among other things, all positions from which they have been fired.  See

2

Plaintiff's SF-86, March 24, 2003, attached hereto as Exhibit 6.  In response to question #22, Plaintiff failed to disclose that in May of 1998, she had been terminated from a position with Charleston Work Release Center, a component of the Charleston, West Virginia Division of Corrections for misconduct. Id.  Once OPM's background check on Plaintiff was completed, it was forwarded to TSA's Credentialing Program Office (CPO) for a suitability determination.

As a result of Plaintiff's background investigation, TSA's CPO discovered the existence of Plaintiff's termination along with the reasons for it, including:  (1) directing an inmate who was incarcerated for 3rd offense DUI and driving on a suspended license to drive a personal vehicle (a felony); (2) misuse of inmate privileges, i.e., visits/furloughs; (3) utilizing the services of correctional staff and inmates to provide transportation and babysitting services contrary to law and policy; (4) making improper purchases; (5) theft of facility food; and (6) misuse of inmates free time among other acts of misconduct.  Id., See also Exhibits 3 and 4.

CPO determined that Plaintiff was unsuitable for employment with TSA as a Criminal Investigator on October 24, 2003, and issued a Notice of Proposed Removal (CPO Removal Notice) to terminate Plaintiff from the federal service.  See Exhibit 4.  Plaintiff, who had been placed on administrative leave in June of 2003, continued on paid administrative leave during the notice period.  In addition to the unfavorable suitability determination, the Removal Notice referenced Plaintiff's past disciplinary record with TSA, which included a 5-day suspension in June of 2003, for abusing the government credit card by obtaining cash advances unrelated to official government travel and misusing the government travel credit card to rent vehicles for unofficial, personal business.  Id.

In response to the CPO Removal Notice, Plaintiff denied the existence of her prior

3

termination from the West Virginia Division of Corrections and submitted a declaration from

Mr. Otis Cox, a former administrator at the West Virginia Department of Corrections.  See Otis

Cox Declaration, January 16, 2004, attached hereto as Exhibit 7.   In his declaration, Mr. Cox

indicated that a Form WV-11 was required to complete a personnel action, that he was the only

official authorized to execute such a document, and that he had not executed a Form WV-11

terminating Plaintiff.  Because of that affidavit and the information CPO had from the

background investigation, CPO initiated a supplemental investigation.

As a result of the supplemental investigation, CPO obtained a sworn affidavit from Mr.

Donald M. Ervin, Administrator for the Charleston Work Release Center, former immediate

supervisor of the Plaintiff.  See Donald M. Ervin affidavit, April 22, 2004, attached hereto as

Exhibit 8.  In his affidavit, Mr. Ervin states that during Plaintiff's employment, she was involved

in improprieties.  See Id.  Mr. Ervin further states that as a result of these improprieties, he

recommended Plaintiff's dismissal to the then Deputy Commissioner for the Division of

Corrections, Mr. Manfred G. Holland.  Consequently, on May 21, 1998,  Plaintiff was dismissed

from her employment.  Id.

CPO also obtained a sworn affidavit from Mr. Manfred G. Holland, former Deputy

Commissioner for the Division of Corrections.  See Manfred G. Holland affidavit, April 22,

2004, attached hereto as Exhibit 9.  In his affidavit, Mr. Holland states that by letter dated May

21, 1998 (See Plaintiff's Dismissal Letter, May 21, 1998, attached hereto as Exhibit 10 ), he

dismissed the Plaintiff from her position with the West Virginia Division of Corrections for rule

violations in the performance of her duties.  Id.   Mr. Holland further states that prior to his

dismissal of the Plaintiff from her position, he advised Mr. Cox of the problems with Plaintiff

4

and his belief that the Plaintiff should no longer be employed with the West Virginia Department of Corrections.  See Exhibit 9.

As a result of the information provided by Mr. Holland, CPO conducted a follow up interview with Mr. Cox who provided a subsequent sworn affidavit.  See Otis G. Cox affidavit (2nd), April 27, 2004, attached hereto as Exhibit 11.  In his affidavit, Mr. Cox states that Mr. Holland advised him of his concerns regarding the Plaintiff and that he advised Mr. Holland to "do whatever was necessary to correct the [Plaintiff's] situation."  Id.  Mr. Cox further states that although he did not review a copy of the letter signed by Mr. Holland dismissing Plaintiff from her position at the time it was issued, he had discussed the letter with Mr. Holland and after subsequently reviewing the letter, he would have agreed on the Plaintiff's dismissal.  Id.  Mr. Cox also states that although a WV-11 indicating Plaintiff's dismissal should have been completed, the letter from Mr. Holland to Plaintiff "was official and will stand as a letter of termination." Id.  A WV-11, Personnel Action Form, indicating Plaintiff's dismissal was issued on May 26, 1998.  See Plaintiff's WV-11, Personnel Action Form, May 26, 1998, attached hereto as Exhibit 12.

On October 4, 2003, TSA proposed Plaintiff's removal from her Criminal Investigator position.  See Exhibit 4.  Plaintiff submitted written and verbal replies to her proposed removal, which were fully considered by the Agency.  See Exhibit 3.  Subsequently, Plaintiff was removed from her position on November 18, 2004.

On July 18, 2006, a full hearing regarding Plaintiff's indefinite suspension and removal was held before the United States Merit Systems Protection Board ("MSPB"), Washington Field Office.  By way of an initial decision dated September 6, 2006, the MSPB affirmed Plaintiff's

indefinite suspension and removal.  See MSPB Initial Decision, September 6, 2006, attached

hereto as Exhibit 13.  Plaintiff filed a petition for review (PFR) with the full Board asking the

Board to reconsider the administrative judge's initial decision.  On January 31, 2007, the full

Board denied Plaintiff's PFR finding that "there [was] no new, previously unavailable, evidence

and that the administrative judge made no error in law or regulation that affects the outcome."

See MSPB Final Order, January 31, 2007, attached hereto as Exhibit 14.

Plaintiff has brought a four-count Complaint against TSA.[1]  The first count alleges TSA

discriminated against Plaintiff on the basis of sex (female).  See Compl.5.  The second count

alleges that TSA discriminated against Plaintiff on the basis of sex (sexual harassment).  Id.  The

third count alleges TSA discriminated against Plaintiff on the basis of retaliation.  See Compl.¶

6.  The fourth count alleges that TSA defamed Plaintiff.  See Compl.¶  6.

## ARGUMENT

## I.    LEGAL STANDARD FOR A 12(b)(1) MOTION TO DISMISS

TSA moves for dismissal under Rules 12(b)(1) of the Federal Rules of Civil Procedure

 for lack of jurisdiction over the subject matter.  "In reviewing a motion to dismiss for lack of

subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept

the complaint's well-pled factual allegations as true and draw all reasonable inferences in the

---

[1] Plaintiff originally filed a one-count complaint against TSA alleging sex (female) and
race (African-American) discrimination.  See Complaint, September 12, 2007.  Plaintiff
subsequently filed an amended complaint where she dropped her allegation of race
discrimination.  See Amended Complaint, September 24, 2007.  Regardless, Plaintiff's original
allegation of race discrimination does not affect, in any way, the issue of subject matter
jurisdiction.

plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000)

(citations omitted); see also Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).  "The

court is not required, however, to accept inferences unsupported by the facts alleged or legal

conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C.

2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  In addition, "[on] a motion to dismiss pursuant to

Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction

by a preponderance of the evidence." Thompson, 120 F. Supp. 2d at 81; Vanover, 77 F. Supp. 2d

at 98.

A court may resolve a motion to dismiss for lack of subject-matter jurisdiction under Rule

12(b)(1) in either of two ways.  First, a court may base its decision solely on the complaint.

Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, a

court may look beyond the allegations of the complaint, consider affidavits and other extrinsic

information, and ultimately weigh the conflicting evidence.  Id.; Rann, 154 F. Supp. at 64.

## II.    SECURITY CLEARANCE DETERMINATIONS ARE SENSITIVE AND INHERENTLY DISCRETIONARY EXERCISES NOT SUBJECT TO REVIEW

In this case, Ms. Cruz-Packer was hired as a Criminal Investigator, SV-1811-J, in an

Excepted Appointment with TSA.  See Exhibit 2.  Plaintiff's appointment to this position was

contingent upon the successful adjudication of her suitability for employment and eligibility for a

Top Secret security clearance.  See Exhibits 3, 4 and 5  In the course of assessing Plaintiff's

eligibility for a Top Secret security clearance, TSA learned that in March 2003, she failed to

disclose on her SF-86 Declaration of Federal Employment "Questionnaire for National Security

Positions" that she was terminated from her position with the West Virginia Division of

Corrections for rule violations in the performance of her duties. See Exhibit 6. In fact, by way of letter dated May 21, 1998, the West Virginia Department of Corrections informed Ms. Cruz-Packer that she was being removed from her position as a Corrections Program Specialist for the following infractions: a) misuse of inmates free time; b) misuse of inmate privileges; c) utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy; and d) making improper purchases. See Exhibit 10. This meant that Plaintiff had falsified her SF-86. Accordingly, Plaintiff could not meet the suitability requirements for her position and obtain a top secret security clearance. See Exhibits 3 and 4. As set forth in TSA's decision letter, Plaintiff's termination was based on her unsuitability for employment with TSA because of the inaccurate information on her SF-86 and the serious nature of the misconduct discovered during her background investigation. See Exhibit 3.

Plaintiff claims, however, that TSA's articulated reason for indefinitely suspending and removing her was a pretext and that its actual reason for doing so was to discriminate against her on the basis of gender and sexual harassment and retaliation. See Compl. ¶¶ 5-6. In other words, Plaintiff is claiming that TSA's stated reason for the termination - failure to meet the suitability conditions of her appointment - is not the real reason; rather, it is a "phony" reason. See Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir.1996) (citing and quoting Pignato v. American Trans Air, Inc., 14 F.3d 342, 349 (7th Cir.1994)). Therefore, by Plaintiff's own admission, litigation of this case necessarily would bring into question TSA's contention that Plaintiff is not suitable to hold a position for which a national security clearance is required.

Plaintiff was discharged from a position, the occupancy of which was subject to a

8

requirement imposed in the interest of the national security of the United States.  In the interest of national security, TSA requires its Criminal Investigators to successfully be adjudicated for suitability for employment and eligibility for a Top Secret security clearance.  See Exhibit 3, 4 and 5.   The power to issue security clearances for access to national security information lies with the Executive Branch and is delegated to the agencies by the President through Executive Order.  See, e.g., Executive Order 10450 (April 27, 1953); Executive Order 12968 (August 2, 1995).  This power is a discretionary function of the Executive Branch and is not subject to judicial review.  Accordingly, this Court is without subject-matter jurisdiction to hear this claim.

In Bennett v. Ridge, 321 F. Supp 2d 49 (D.D.C. 2004),  this Court dismissed a nearly factually identical case on the issue of the Executive Branch's stewardship over national security. In Bennett, as in this case, TSA sought to dismiss Ms. Bennett's complaint on the ground that the litigation regarding her removal would bring into question issues concerning the grant or denial of a security clearance, which is a discretionary function entrusted to the Executive Branch and thus not subject to judicial review.  See Bennett generally.  Ms. Bennett was also found unsuitable for the position of criminal investigator with TSA and ineligible for a Top Secret security clearance because of a discrepancy between her answer to a question on the OPM OF 306 form and the actual circumstances surrounding her resignation from the Department of Defense.  Id.  Ms. Bennett argued that TSA's articulated reason for her termination was based on a negative suitability determination, not as a result of a national security investigation. Thus, she contended that the dispute was properly subject to judicial review.  Id.  This Court found that it lacked subject matter jurisdiction to review the decision to terminate Ms. Bennett because it in part resulted from the denial of a security clearance.  Id.  Specifically, this Court found that it was

9

precluded from "exercising subject matter jurisdiction in the Title VII context when an agency's explanation about why an employee was subjected to an adverse employment action will inevitably require judicial review of the agency's decision to deny a security clearance." See Bennett v. Ridge, 321 F. Supp. 2d 49, 73.

In upholding the district court's decision, the U.S. Court of Appeals for the District of Columbia Circuit found that "[d]eterminations of eligibility for security clearances and determinations of suitability were not mutually exclusive. Because of [Ms. Bennett's] dishonesty, [she] was unsuitable for the position for the same reasons that she was ineligible for a security clearance. Although [Ms. Bennett] claimed that the security clearance explanation was pretextual, the district court was not permitted to adjudicate the credibility of the claim because to do so required it to evaluate the validity of the employing agency's security determination." Bennett v. Chertoff,  425 F.3d 999 (D.C. Cir. 2005).

The decision in Bennett was predicated on this Circuit's previous dismissal of Title VII claims where the litigation would bring into question issues concerning the grant or denial of a security clearance.  In Ryan v. Reno, 168 F.3d 520 (D.C. Cir. 1999), the Immigration and Naturalization Service announced openings for immigration inspector positions.  The position was a "sensitive" one requiring a background investigation and security clearance.  Id. at 522. Appellants applied for the openings and conditionally were hired, "pending satisfactory completion of security requirements."  Id.  The appointment offers were withdrawn after the FBI determined that, because appellants had lived in Ireland for an extended period of time, it could not conduct an adequate background investigation.  Id.  The individuals filed suit in federal court, and the district court dismissed the case for lack of jurisdiction because assessing the claims

10

would require review of the decision not to grant security clearances.  Id. at 523.

The D.C. Circuit determined that Department of Navy v. Egan, 484 U.S. 519 (1988),

"controlled" the disposition of the matter.  Id.  In Egan, the Supreme Court held that the Merit

Systems Protection Board did not have the authority to review a decision regarding the grant or

denial of a security clearance.  Egan, 484 U.S. at 526-30.  Specifically, "the protection of

classified information must be committed to the broad discretion of the agency responsible, and

this must include broad discretion to determine who may have access to it."  Id. at 529 (citing

CIA v. Sims, 471 U.S. 159, 170 (1985)).  Turning to the Title VII claims brought by plaintiffs in

Ryan, the D.C. Circuit held:

> In a case such as this, however, a court cannot clear the second step of McDonnell
> Douglas v. Green, 411 U.S. 792 (1973))] without running smack up against Egan.  The
> nondiscriminatory reason proffered below for withdrawing the employment offers was
> that the applicants' long residence abroad prevented DOJ from conducting an adequate
> security clearance background investigation.  The appellants could not challenge the
> proffered reason's authenticity without also challenging its validity.

Id. at 524 (emphasis added).  In sum, since consideration of the appellants' claims would have

required review of the decision not to grant security clearances, "the court was foreclosed from

proceeding at all."  Id.  The D.C. Circuit further stated that "[o]ur decision is fortified by Title

VII's express language exempting employment actions based on security clearance possession vel

non."  Id. at 524 n.3 (citing 42 U.S.C. § 2000e-2(g);  [2]Becerra v. Dalton, 94 F.3d 145, 149 (4th

---

[2]42 U.S.C. § 2000e-2(g), provides, in relevant part:
Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment
practice for an employer to fail or refuse to hire and employ any individual for any position, for
an employer to discharge any individual from any position, or for an employment agency to fail
or refuse to refer any individual for employment in any position, or for a labor organization to
fail or refuse to refer any individual for employment in any position, if -

(1) the occupancy of such position, or access to the premises in or upon which any part of the

Cir. 1996)).  The same result should obtain here, where TSA's articulated basis for Plaintiff's removal was that she was unsuitable for employment and ineligible for access to national security information, because Plaintiff could not sustain a Top secret security clearance.  See Exhibits 3 and 4.

     "Three other circuits have held that <u>Egan</u> applies in a Title VII action to preclude a 'nonexpert body' - whether administrative or judicial - from resolving a discrimination claim based on an adverse employment action resulting from an agency security clearance decision." <u>Ryan</u>, 168 F.3d at 523; <u>see</u> <u>Becerra v. Dalton</u>, 94 F.3d 145, 148-49 (4th Cir. 1996); <u>Brazil v. United States Department of the Navy</u>, 66 F.3d 193, 195-96 (9th Cir. 1995), <u>Perez v. Federal Bureau of Investigation</u>, 71 F.3d 513 (5th Cir. 1995).  In <u>Perez</u>, appellant alleged that the FBI retaliated against him for EEO activity by revoking his top secret security clearance and firing him.  <u>Id.</u> at 514.  The FBI offered as legitimate, non-discriminatory reasons for his termination that appellant (1) fabricated official reports, and (2) disclosed classified information to unauthorized representatives of the Cuban government.  <u>Id</u>.  The Court went on to note that in the normal instance, "that would put the ball in [appellant's] court to show pretext."  <u>Id</u>.  But in the specific circumstances at bar, the Court held:

> Because the court would have to examine the legitimacy and the possibly pretextual nature of the FBI's proffered reasons for revoking the employee's security clearance, any Title VII challenge to the revocation would of necessity require some judicial scrutiny of

duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

the merits of the revocation decision.  As the Supreme Court and several circuit courts
have held that such judicial scrutiny is an impermissible intrusion by the Judicial Branch
into the authority of the Executive Branch over matters of national security, neither we
nor the district court have jurisdiction to consider those matters.

Id. at 514-15 (internal citations omitted).  The opinion went on to note:

We also understand the concerns of federal agents, whose employment is conditioned on
security clearances, that the lack of judicial review creates the potential for abuse by the
agencies and bureaus employing them.  This result, however, is required by the fact that
security clearance determinations are "sensitive and inherently discretionary" exercises,
entrusted by law to the Executive.

Id. at 514 n.6 (quoting Egan, 484 U.S. at 527-29).

In Becerra v. Dalton, 94 F.3d 145 (4th Cir. 1996), appellant brought a claim under Title

VII, claiming that the instigation of a security check that led to the revocation of his security

clearance and the loss of his job constituted impermissible retaliation for filing EEO complaints.

Id. at 146-48.  The Fourth Circuit affirmed the district court's decision that it lacked jurisdiction

to review the merits of the decision to investigate plaintiff or the ultimate security clearance

decision.  Id. at 148-49.  The appellant attempted to distinguish his case from Egan and its

progeny be claiming that he was not seeking to challenge the security clearance decision per se;

rather, he only was challenging the agency's decision to initiate a security clearance check.  The

Court concluded that "the distinction between the initiation of a security investigation and the

denial of a security clearance is a distinction without a difference . . . . the court would be

required to review the very issues that the Supreme Court has held are nonreviewable."  Id. at

149.  See also Brazil v. Department of the Navy, 66 F.3d 193, 195-96 (9th Cir. 1995) (district

court lacked jurisdiction over Title VII claim arising out of revocation of civilian employee's

nuclear weapons personnel reliability program certification, which was the equivalent of a

13

security clearance).

To allow claims like Plaintiff's would require the fact-finder to second-guess the Executive Branch's analysis and conclusions involving whom to trust with national security information.  Ultimately, to do so would violate separation of powers principles by enmeshing courts in an area within the sole province of the Executive Branch.  Courts consistently have acknowledged the Executive's broad discretion and greater experience with national security matters.  See, e.g., Central Intelligence Agency v. Sims, 471 U.S. 159 (1985); Halperin v. Central Intelligence Agency, 629 F.2d 144 (D.C.  Cir. 1980).  As the Supreme Court expressed in Egan:

> concerns of national security, as in this case, where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch.

484 U.S. at 527. "Without clear congressional authorization, courts traditionally have demonstrated a reluctance to encroach on Executive prerogative in the area of military and national security affairs."  National Federation of Federal Employees v. Greenberg, 983 F.2d 286, 296 97 (D.C. Cir. 1993) (concurring opinion) (citing Chappell v. Wallace, 462 U.S. 296 (1983)); Schlesinger v. Councilman, 420 U.S. 738, 757-58 (1975); Gilligan v. Morgan, 413 U.S. 1, 10 (1973); Burns v. Wilson, 346 U.S. 137, 142 (1953); Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)); Haig v. Agee, 453 U.S. 280, 305 (1981) (it is "obvious and unarguable" that no governmental interest is more compelling than the security of the Nation.) (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)).

## CONCLUSION

For these reasons, defendant respectfully submits that the Complaint be dismissed.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., E-4106
Washington, D.C. 20530


OF COUNSEL:
Bryan A. Bonner, Esquire
Office of Chief Counsel
Transportation Security Administration

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th of November, 2007 that a copy of the foregoing

was served by First Class, prepaid postage, U.S.P.S. mail to:


Linda Cruz-Packer
4800 Megan Drive
Clinton, Maryland 20735


_____
Wyneva Johnson
Assistant United States Attorney
555 4th Street, N.W., E-4106
Washington, D.C. 20530
(202) 514-7224

16

**GOVERNMENT EXHIBIT**

**No. 1**

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| CRUZ-PACKER, LINDA | 5077 | | 05-20-51 | 06-16-02 |

| FIRST ACTION | | | SECOND ACTION | |
|---|---|---|---|---|
| 5-A Code | 5-B. Nature of Action | | 6-A Code | 6-B. Nature of Action |
| 170 | EXCEPTED APPOINTMENT | | | |
| 5-C Code | 5-D Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| ZVC | P.L. 107-71 | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E Code | 6-F. Legal Authority |
| | | | | |

**7. FROM Position Title and Number**

**15. TO: Position Title and Number**
TRANSPORTATION SECURITY SPECIALIST
PD NO=02-801-008    BU NO=810001
ORG=SA801            CST CNTR=801000

| 8 Pay Plan | 9 Occ Code | 10 Grade or Level | 11 Step or Rate | 12. Total Salary | 13 Pay Basis | 16 Pay Plan | 17 Occ Code | 18 Grade or Level | 19 Step or Rate | 20. Total Salary/Award | 21 Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | SV | 1801 | J | 00 | $74,200 | PA |

| 12A Basic Pay | 12B Locality Adj | 12C. Adj. Basic Pay | 12D Other Pay | 20A Basic Pay | 20B. Locality Adj | 20C. Adj. Basic Pay | 20D Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | $66,559 | $7,641 | $74,200 | $0 |

**14 Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**
O/ASSOC. UNDERSEC FOR INSPECTION
WASHINGTON, DC

| EMPLOYEE DATA | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23. Veterans Preference | | | | 24. Tenure | | 25. Agency Use | 26. Veterans Pref for RIF |
| 1 | 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30% | | | 1 | 0 - None    2 - Conditional<br>1 - Permanent    3 - Indefinite | | ☐ YES  ☒ NO |
| 27 FEGLI | | | | 28. Annuitant Indicator | | | 29 Pay Rate Determinant |
| C0 | BASIC LIFE ONLY | | | 9 | NOT APPLICABLE | | 0 |
| 30. Retirement Plan | | | 31. Service Comp Date (Leave) | 32 Work Schedule | | | 33 Part-Time Hours Per Biweekly Pay Period |
| K | FERS & FICA | | 06-16-02 | F | | | |

| POSITION DATA | | | | | | | |
|---|---|---|---|---|---|---|---|
| 34. Position Occupied | | 35. FLSA Category | | 36. Appropriation Code | | | 37 Bargaining Unit Status |
| 2 | 1 - Competitive Service    3 - SES General<br>2 - Excepted Service    4 - SES Career | E | E - Exempt<br>N - Nonexempt | SEE REMARKS BELOW | | | 8888 |
| 38. Duty Station Code | | 39. Duty Station (City - County - State or Overseas Location) | | | | | |
| 11-0010-001 | | WASHINGTON, DISTRICT OF COLUMBIA | | | | | |
| 40. AGENCY DATA | 41. | 42. | 43 | 44 | | | |
| SP PROG=00 | SUPV CSC=8 | POS TYPE=1 | | POSITION SENSITIVITY = 3 | | | |

**45 Remarks**
APPROP = 06X2.801/000/810001/801000/1111
SALARY IN BLOCK 20A IS BASED ON PAY BAND J, TECHNICAL JOB CATEGORY, LEVEL 4.
SALARY IN BLOCK 20C INCLUDES A LOCALITY-BASED PAYMENT OF 11.48%. APPOINTMENT
AFFIDAVIT EXECUTED 06-17-2002. ELIGIBLE FOR SICK AND ANNUAL LEAVE. FROZEN
SERVICE: NONE. CREDITABLE MILITARY SERVICE: NONE. EMPLOYEE IS AUTOMATICALLY
COVERED UNDER FERS. REGISTRATION MUST BE RECEIVED BY PERSONNEL NLT 60 DAYS FOR
HEALTH BENEFITS AND 31 DAYS FOR LIFE INSURANCE FROM THE EFFECTIVE DATE OF THIS
ACTION. SCD SUBJECT TO CHANGE UPON VERIFICATION OF PRIOR SERVICE. WELCOME TO
THE TRANSPORTATION SECURITY ADMINISTRATION.

| 46 Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF TRANSPORTATION/TSA | *Nancy A. Mowry* |
| 47 Agency Code | 48. Personnel Office ID | 49. Approval Date | Nancy A. Mowry |
| TD-19 | 1598 | 06-21-02 | APPROVING OFFICIAL |

| 5-Part | | Editions Prior to 7/91 Are Not Usable After 8/30/93 |
|---|---|---|
| | **2 - OPF Copy - Long-Term Record — DO NOT DESTROY.** | NSN 7540-01-333-6238 |

GOVERNMENT EXHIBIT

No. 2

Standard Form 50
Rev. 7/91
U S Offfice of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1 Name (Last, First, Middle) | | 2 Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| CRUZ-PACKER, LINDA | 6753 | | 05-20-51 | 06-30-02 |

**FIRST ACTION**  /  **SECOND ACTION**

| 5-A Code | 5-B Nature of Action | 6-A Code | 6-B. Nature of Action |
|---|---|---|---|
| 721 | REASSIGNMENT | | |
| 5-C Code | 5-D Legal Authority | 6-C Code | 6-D Legal Authority |
| ZVC | P.L. 107-71 | | |
| 5-E Code | 5-F Legal Authority | 6-E Code | 6-F Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| TRANSPORTATION SECURITY SPECIALIST<br>PD NO=02-801-008   BU NO=810001<br>ORG=SA801       CST CNTR=8010 | CRIMINAL INVESTIGATOR<br>PD NO=02-801-005   BU NO=810001<br>ORG=SA801       CST CNTR=801000 |

| 8 Pay Plan | 9 Occ Code | 10 Grade or Level | 11 Step or Rate | 12 Total Salary | 13 Pay Basis | 16 Pay Plan | 17 Occ Code | 18 Grade or Level | 19 Step or Rate | 20. Total Salary/Award | 21 Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SV | 1801 | J | 00 | $92,750 | PA | SV | 1811 | J | 00 | $92,750 | PA |

| 12A. Basic Pay | 12B Locality Adj | 12C Adj Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B Locality Adj | 20C Adj Basic Pay | 20D Other Pay |
|---|---|---|---|---|---|---|---|
| $66,559 | $7,641 | $74,200 | $18,550 | $66,559 | $7,641 | $74,200 | $18,550 |

| 14 Name and Location of Position's Organization | 22 Name and Location of Position's Organization |
|---|---|
| O/ASSOC. UNDERSEC FOR INSPECTION<br>WASHINGTON, DC | O/ASSOC. UNDERSEC FOR INSPECTION<br>WASHINGTON, DC |

**EMPLOYEE DATA**

| 23 Veterans Preference | 24. Tenure | 25 Agency Use | 26 Veterans Pref for RIF |
|---|---|---|---|
| 1 - None  3 - 10-Point/Disability  5 - 10-Point/Other<br>2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30%<br>**1** | 0 - None  2 - Conditional<br>1 - Permanent  3 - Indefinite<br>**1** | | YES  X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29 Pay Rate Determinant |
|---|---|---|
| R5  BASIC+OPT B(3X)+OPT A+OPT C(5X) | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31 Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K   FERS & FICA | 06-16-02 | F | |

**POSITION DATA**

| 34 Position Occupied | 35 FLSA Category | 36 Appropriation Code | 37 Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service  3 - SES General<br>2 - Excepted Service  4 - SES Career<br>**2** | E - Exempt<br>N - Nonexempt<br>**E** | SEE REMARKS BELOW | 8888 |

| 38 Duty Station Code | 39 Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON, DISTRICT OF COLUMBIA |

| 40. AGENCY DATA | 41. | 42 | 43 | 44 |
|---|---|---|---|---|
| SP PROG=00 | SUPV CSC=8 | POS TYPE=1 | | POSITION SENSITIVITY = 3 |

**45 Remarks**

APPROP = 06X2.801/000/810001/801000/1111
SALARY IN BLOCK 12A IS BASED ON PAY BAND J, TECHNICAL JOB CATEGORY, LEVEL 4.
SALARY IN BLOCK 12C INCLUDES A LOCALITY-BASED PAYMENT OF 11.48%. SALARY IN
BLOCK 12 INCLUDES AVAILABILITY PAY OF $18,550. SALARY IN BLOCK 20A IS BASED ON
PAY BAND J, TECHNICAL JOB CATEGORY, LEVEL 4. SALARY IN BLOCK 20C INCLUDES A
LOCALITY-BASED PAYMENT OF 11.48%. SALARY IN BLOCK 20 INCLUDES AVAILABILITY PAY
OF $18,550. PAY ASSOCIATED WITH THIS PREMIUM INCREASES RETIREMENT SYSTEM,
FEGLI AND TSP ENTITLEMENTS AND DEDUCTIONS.

| 46 Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF TRANSPORTATION/TSA | *Nancy A. Mowry* |
| 47 Agency Code | 48. Personnel Office ID | 49 Approval Date | Nancy A. Mowry |
| TD-19 | 1598 | 07-10-02 | APPROVING OFFICIAL |

5-Part                **2 - OPF Copy - Long-Term Record -- DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

GOVERNMENT EXHIBIT
No. 3



U.S. Department of Homeland Security
Arlington, VA 22202

Transportation
Security
Administration

November 18, 2004

TO:        Linda Cruz-Packer
           Special Agent
           Office of Internal Affairs and Program Review

FROM:      Joy S. Fairtile
           Deputy Director
           Office of Transportation Vetting and Credentialing

SUBJECT:   Decision on Proposed Removal

    By memorandum dated October 24, 2003, Mr. Robert J. Scanlon, former Assistant Director, Personnel Security & Credentialing Program Office (CPO), proposed your removal from Federal Service. (CPO is now known as the Office of Transportation Vetting and Credentialing, but for ease of reference, I will refer to CPO throughout this memorandum.) You replied to the proposed action on January 27, 2004. Based upon the information provided in your initial background investigation report and your written reply to the proposed removal, CPO decided to conduct a supplemental investigation. CPO provided you a copy of the supplemental investigation once it was completed and also provided you an opportunity to respond to the new information. You submitted a written reply to the supplemental investigation on June 1, 2004, and on August 26, 2004, you provided an verbal reply to the proposed removal.

    I have considered all of the information of record in this matter, including your written and verbal replies. Based upon my review, I have decided to remove you from your TSA position and from the Federal Service. This action is being taken to promote the efficiency of the Service.

    My findings, with regard to the reasons and the specifications set forth in your proposed removal notice, are as follows:

**Reason**: **Unsuitability for Federal Service**

    The Office of Personnel Management, on behalf of TSA, conducted a background investigation to facilitate TSA's adjudication of your suitability for employment and eligibility for access to national security information. The results of the investigation and adjudication raise serious issues that render you unsuitable for employment

1

<u>Specification #1</u>: The OPM Investigative Report states that you were terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections on 05/21/98 for abuse of inmates free time, abuse of inmate privileges, i.e. visits/furloughs, no respect for staff assignments made by the Director of Security, theft of facility food, having inmates drive vehicles, which were not authorized to do so, directing an inmate who was incarcerated for 3rd offense DUI and Driving on a suspended license, to drive personal vehicle (a felony), taking inmates to your home without permission or notification of their whereabouts, taking inmates to the South Charleston Recreational facility without permission or notification of their whereabouts, making improper purchases, utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

<u>Your January 27th Written Reply</u>

You denied that you were terminated from the Division of Corrections (DOC), Charlestown Work Release Program (CWRP). While you admitted that there were allegations of misconduct raised against you in May, 1998, you stated that these allegations were unfounded and untrue. You stated that you were the victim of discrimination and a hostile work environment created by your former first and second line supervisors, Donald Ervin, Administrator for (CWRP), and Mr. Holland, Deputy Commissioner, DOC. When advised of the allegations, you immediately contacted Otis Cox, former Secretary for Public Safety for the State of West Virginia, to dispute the allegations. After your conversation with Mr. Cox, you voluntarily resigned in order to return to New York to attend to your husband, who had been diagnosed with a terminal illness, and your children who you were in the process of adopting. You stated that you resigned on the basis of a mutual agreement between you and Mr. Cox.

You also indicated that Mr. Holland lacked the authority to terminate you and you submitted a declaration, dated January 16, 2003, from Mr. Cox to support that contention. Mr. Cox indicated that had you been terminated by the Department of Corrections, he was the official who would have done so. Further, he stated that the Commissioner of Corrections, William K. Davis, could only terminate you with his (Mr. Cox's) approval and written concurrence, which was neither sought nor given.

<u>The Results of the Supplemental Investigation</u>

The supplemental investigation revealed the following:

- A copy of your termination letter dated May 21, 1998, signed by Mr. Holland.

- A copy of the WV-11, Personnel Action Form, for your dismissal

- Wayne Armstrong, Director of Human Resources, stated that Mr. Davis, had

2

signature authority to dismiss/terminate DOC employees. As Commissioner, Mr. Davis would have given signature authority to his Deputy Commissioner, Mr. Holland. Therefore, Mr. Holland did have the authority to dismiss/terminate you from your employment with the CWRP.

- John Boothroyd, Assistant Attorney General, DOC, State of West Virginia, stated that, in accordance with West Virginia Statute, the Commissioner of the DOC has the authority to sign-off on personnel affairs/matters, to include hiring/firing employees within the Division.

- Copies of the State of West Virgnia - Signature Cards for Nancy Swecker, Manfred Holland and William K. Davis authorizing delegated authority to sign official documents including Personnel Action Forms (WV-11).

- David Withrow, Office Assistant/Payroll, Human Resources, the personnel database used to record Personnel Actions from the WV-11 indicated that you had been dismissed as represented by the transaction code "DL." If you had resigned from your position, the transaction code "RS" would have been indicated on the WV-11.

- Mr. Ervin conducted the investigation regarding the allegations of misconduct raised against you. Based upon the results of that investigation, he recommended your termination to Mr. Holland, Deputy Commissioner. Mr. Holland agreed with his recommendation.

- Mr. James Rubenstein is the current Commissioner for the DOC. He stated that, as the Commissioner, he has the authority to hire and fire individuals for the DOC and he can delegate this authority to his Deputy Commissioner. Further, with regard to use of the Personnel Action Form WV-11, in all practicality, the Commissioner and Deputy Commissioner can hire and fire without the prior approval from the Secretary.

- Barbara Wimer, Administrative Services Manager, worked with Mr. Cox during his tenure as Secretary for Public Safety. After having worked for four Secretaries, she never had a Secretary be the only one to have the authority to hire or fire.

- Mr. Holland had a discussion with Mr. Cox about firing you prior to the issuance of the termination letter. Mr. Cox told him to do what he had to do. Mr. Holland stated that he terminated you and had the authority to do so.

- Mr. Cox stated that he was not aware of the termination letter issued by Mr. Holland and that Mr. Holland had the authority to fire employees within the DOC. He was aware of the allegations raised against you. He told Mr. Holland "Do what you have to do". He stated that he would normally sign-off on special

3

engaging in the misconduct specified in the May 21, 1998 letter. Indeed, in your May 18, 1998 memorandum to Mr. Ervin in response to your suspension, you admitted to engaging in much of the conduct alleged. Whether your involuntary separation constituted a dismissal or termination is, for TSA's purposes, a distinction without materiality.

It is also clear from the record that Mr. Holland had the authority to dismiss/terminate your employment and did, in fact, do so. There is nothing in the record that supports your contention that you resigned. Moreover, I find that several of your statements made in response to the Proposed Removal lack credibility. For example, while you stated in your January 27th declaration that you met with Mr. Cox and resigned by mutual agreement, Mr. Cox indicated that there was no such mutual agreement and that there was no discussion between you and him regarding your resignation. In your June 1st declaration, you stated that you informed Mr. Cox of your resignation at the time you left. During your verbal reply, however, you stated that you did not discuss this matter, the allegations of misconduct or your resignation with Mr. Cox, which directly contradicts the statements contained in both of your declarations.

For the above reasons, I find that you engaged in the much of the conduct referenced in the termination letter and that your contention that you were not terminated from the DOC is not credible. The conduct referenced in this Specification is of a very serious nature and it renders you unsuitable for employment with TSA. Accordingly, I have decided to terminate your employment with TSA.

**Specification #2:** On the SF-86 that you signed and completed on 03/24/03, Question #22, Your Employment Record asks, Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. You responded in the affirmative; however, you listed 08/97 and selected reason #1 – Fired from job with Volunteers of America, New York, but did not list being Fired from position with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections in 05/21/98. In your response to this question, you failed to fully disclose information regarding your employment history.

<u>Your Written and Verbal Replies</u>

In your January 27th declaration, you represented that you ran out of room on the SF-86 to disclose your departure from the DOC but that you disclosed on the Declaration of Federal Employment Form (Declaration Form) that your departure from the DOC was based on a mutual agreement between you and Mr. Cox to leave. Because you signed the Declaration Form on the same day you that you completed your SF-86 and it was attached to the SF-86 and the two documents had almost identical questions pertaining to employment history, you believed that the Declaration Form "would serve to complete my answer [to] Question 22 on the SF-86." You indicated that the Declaration Form and the SF-86 were stapled together and submitted as one document to a Credentialing Program Office staff member. You stated that it was your understanding that the two

forms were part of the same security clearance package and would be considered together.

In your June 1st Declaration, you indicated that you were truthful when you completed the Declaration of Form and that you left the DOC to return to New York to care for your husband who was diagnosed with a terminal illness and that you could no longer bear the race and gender-based hostility and discrimination you were experiencing with your supervisors.

In your verbal reply presented on August 26, 2004, you stated that you believed that the Agency's SF-86 copy is not the same SF-86 you completed. You stated that you had no prior experience completing the SF-86 even though you had worked previously for the Federal Bureau of Investigations from 1980-1982. You also stated that, prior to coming to TSA, you contacted OPM for guidance on completing the forms, particularly with respect to questions concerning your employment history. You stated that you did not intend to omit or mislead.

### Findings

I sustain this second specification and find that you failed to fully disclose information regarding your employment history. Contrary to your assertion, the SF-86 and the Declaration of Form are two separate and distinct forms, each requiring a certification of the veracity and completeness of the information provided therein. You were required to truthfully and completely respond to the questions concerning your employment history on each of the forms and failed to do so.

Even assuming that your disclosure on the Declaration Form concerning your departure from the DOC could be construed as constituting full disclosure on the SF-86, which it can not, your representations, both on the Declaration Form and to me, lack credibility. You wrote on the Declaration Form that you left the DOC because "Job promised could not be granted. Due to start up costs. Couple with family stress, relocation, mutual agreement between Director of Public Safety (Otis Cox) [and] myself to leave".[1] As I noted above with respect to Specification 1, several of your statements lacked credibility. In addition to Mr. Cox denying the existence of a mutual agreement between the two of you and/or that you discussed your resignation with him, you represented to me during your verbal reply that you did not discuss your resignation with Mr. Cox, contradicting your earlier statements, including the representation in the Declaration Form. Thus, I find that the reason, disclosed by you on the Declaration Form for departing the DOC, is not truthful.

You were required to truthfully disclose the reason you left the DOC on the SF-86 (Question # 22), as well as the Declaration of Federal Employment (Questions #12).

---

[1] I find no merit in your claim that someone altered your Declaration Form by deleting your written response to Question # 12 in the Continuation space. Based on my experience, it appears that you initially neglected to complete a response to Question # 12 and either someone from my office or one of your managers asked you to complete the form in its entirety, which you subsequently did. In any event, my decision is premised only on your responses to the "completed" Declaration Form.

While you admitted in both your written and verbal replies that you left employment with the DOC under adverse circumstances, you failed to disclose any information relating to the adverse circumstances surrounding your departure, e.g., the allegations of abuse of inmates time and privileges and theft of facility food. For these reasons, I find that the record supports Specification 2 and that you are unsuitable for TSA employment. Based on Specification 2, I have decided to terminate your employment.

During the verbal reply, you and your attorney, Ms. Fisher, advised of your continuing efforts to obtain documents from the DOC that you believed were related to this matter and on September 21, 2004, and October 4, 2004, you submitted correspondence summarizing documents requested and responses received from the DOC. I reviewed and considered this documentation before making my decision in this matter. None of the documentation provided led me to conclude that you were not terminated for the reasons stated in the May 21, 1998, dismissal/termination letter.

All TSA employees are required to demonstrate behavior, which meets federal government standards for trustworthiness, judgment, and reliability. These standards are heightened for individuals in law enforcement positions, such as yourself. The above information reported in your background investigation reflects behavior that includes repeated and serious incidents of misconduct, providing incomplete and inaccurate information information in a federal document (SF-86) and renders you unsuitable for employment with TSA.

As a TSA employee, you are expected and required to provide accurate and complete responses in an administrative inquiry. This expectation and requirement is heightened for a law enforcement officer. You failed to provide responses that were accurate and complete.

In assessing the reasonableness of the proposed action, I have considered a number of factors as set forth in Douglas v. Veterans Administration, 5 MSPB 313 (1981), which I find relevant to your case:

Nature and Seriousness of the Offense. Each of the two specifications above raised issues of serious misconduct, which calls into question your judgment, integrity, veracity and trustworthiness. At the very heart of the employee-employer relationship is the expectation that an employee is honest, trustworthy, candid and engages in ethical conduct. This expectation is heightened and critical for employees holding a federal law enforcement officer position, such as yourself. Your failure to meet this heightened standard renders you unsuitable for federal employment.

The Impact of Your Actions Upon Your Position as a Federal Law Enforcement Officer and the Offense Upon this Agency. As a federal law enforcement officer, you occupy a position of trust, authority and responsibility, and are held to the highest standards of conduct and performance. TSA is a agency whose mission is concentrated on security in support of homeland security. Your conduct, as identified in Specifications 1 and 2 respectively, has resulted in a loss of trust and confidence in your ability to serve

effectively as a federal law enforcement officer and renders you unsuitable for employment with TSA.

<u>Employment Record.</u>  You have been an employee with the TSA since June 2002. Based upon your Service Computation Date, you have approximately 5 years of federal service. I find that the seriousness of your misconduct outweighs any positive impressions that may have been created during your tenure.

<u>Prior Disciplinary Record.</u>  You were suspended from duty without pay with the TSA, for a period of five days beginning on June 16, 2003, for abuse of your government issued credit card. Specifically, there were cash advances on November 16, 2002, January 11, 2002, and March 22, 2003, unrelated to official government travel, as well as charges for rental cars on November 4 and 30, 2002, December 30, 2002, February 24, March 30, and April 14, 2003.

<u>Potential for Rehabilitation.</u>  I am concerned that you have expressed no remorse and have not taken responsibility for your actions. Thus, I believe that you have failed to demonstrate the potential for rehabilitation.

<u>Consistency of Penalty with Those Imposed Upon Other Employees for the Same Offense in Like or Similar Circumstances.</u> This action is consistent with other employees for the same offense determined to be unsuitable for federal employment.

<u>Mitigating Factors.</u>  I find there are no mitigating factors. You do not have a very long or distinguished career.

<u>The Effectiveness of Alternative Sanctions to Deter Such Conduct in the Future.</u>  Based upon the totality of your actions, the seriousness of your offense, your position as a federal law enforcement officer, and my determinations regarding your credibility and misconduct, there is no other sanction that would serve the best interests of TSA in carrying out its security mission.

Based on the above, I find the proposed penalty reasonable. Your removal from employment will promote the efficiency of the Federal Service. Your removal is effective upon your receipt of this notice.

This notice constitutes a final decision. TSA is an excepted service agency and all of its employees are in excepted service positions. Employees in excepted service positions have narrowly defined rights to appeal to the MSPB. Specifically, excepted service employees may file an appeal to the MSPB if they are: (1) veteran preference eligible individuals who have completed one year of current continuous service in the same or similar positions in an Executive agency, the United States Postal Service or Postal Rate Commission; or (2) non-veteran preference eligible individuals, who have completed two years of current or continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to two years or less. If you believe you meet this criterion you may file an appeal to the MSPB. Your appeal must

be filed within 30 days of the effective date of this action or within 30 days of the date of this letter, whichever is later. If you decide to appeal, you may use the attached form. The MSPB's regulations are available on its website, www.MSPB.gov.

   If you believe this action resulted from discrimination or harassment based on race, color, religion, sex, national origin, physical or mental disability, age (40 or over), sexual orientation, or reprisal, you may contact the Office of Civil Rights (OCR) at 1-877-336-4872. If you choose to contact OCR you must do so within 45 calendar days of the effective date of this action.

   If you have any questions regarding your rights or this process, you may contact Martina Griggs Johnson, Risk Management I, Office of Human Resources, at (571) 227-2865.

cc: Crystal A.G. Fisher
     Carolyn C. Eaglin & Associates


_____                    _____
Acknowledgement of Receipt                  Date

GOVERNMENT EXHIBIT

No. 4

 **Transportation Security Administration**

Date:        October 24, 2003

To:          Linda Cruz-Packer
             Special Agent
             Office of Internal Affairs and Program Review

From:        Robert J. Scanlon
             Assistant Director
             Personnel Security & Credentialing Program Office

Subject:     Notice of Proposed Removal

You are hereby notified that I am proposing to remove you from your position as a Special Agent in order to promote the efficiency of the Federal Service. This proposal is based on the results of your background investigation. If a decision is made to remove you from the Federal Service, it will be effected no earlier than fifteen (15) calendar days from the date you receive this notice.

The Office of Personnel Management, on behalf of TSA, conducted a background investigation to determine your suitability for employment and eligibility for access to national security information. The results of the investigation raise serious issues that render you unsuitable for employment.

Reason:  Unsuitability for Federal Service

The results of your background investigation revealed the following:

Specification #1: The OPM Investigative Report reflects that you were terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections on 05/21/98 for abuse of inmates free time, abuse of inmate privileges, i.e. visits/furloughs, no respect for staff assignments made by the Director of Security, theft of facility food, having inmates drive vehicles, which were not authorized to do so, directing an inmate who was incarcerated for 3rd offense DUI and Driving on a suspended license, to drive personal vehicle (a felony), taking inmates to your home without permission or notification of their whereabouts, taking inmates to the South Charleston Recreational facility without permission or notification of their whereabouts, making improper purchases, utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

<u>Specification #2</u>: On the SF-86 that you signed and completed on 03/24/03, Question #22, Your Employment Record asks, Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. You responded in the affirmative; however, you listed 08/97 and selected reason #1 – **Fired from job with Volunteer's of America, New York,** but did not list being **Fired from position with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections** in 05/21/98. In your response to this question, you failed to fully disclose information regarding your employment history.

In determining the appropriateness of this proposal, I took into consideration several factors, including your prior discipline record. On June 13, 2003, you were suspended from duty with the Transportation Security Administration, without pay, for a period of five days beginning on June 16, 2003. As a result of a monthly internal control review on all government travel card transactions, several charges on your travel credit card appeared to be unrelated to official government travel. Specifically, there were cash advances on November 16, 2002, January 11, 2002, and March 22, 2003. Additionally, there were charges for rental cars on November 4 and 30, 2002, December 30, 2002, February 24, March 30, and April 14, 2003. When confronted with this information, you indicated that two of the cash advances November 16, 2002, and January 11, 2003, were for official travel to New York and Atlanta. The cash withdrawal on March 22, 2003, you attributed to an oversight, since your personal credit card is similar in appearance to your government issued card. The government card clearly indicates on the face that the card is for official use only; wording that does not appear on your personal card. You admitted that the rental card charges were all for personal use, clearly in violation of TSA policy, as well as the instructions provided by Citibank to each employee upon issuance, and the prohibitions stated on the face and reverse side of the travel card.

All TSA employees are required to demonstrate behavior, which meets federal government standards for trustworthiness, judgment, and reliability. As a federal law enforcement officer, this responsibility and standards are heightened. The above information reported in your background investigation reflects behavior that includes repeated and serious incidents of misconduct, falsifying a federal document (SF-86) and renders you unsuitable for
employment with TSA.

This is a proposal and not a final decision. You have the right to timely reply to this proposal in writing and to furnish affidavits and evidence in support of your reply within ten (10) calendar days after the date you receive this proposal. Consideration will be given to extending this time limit if you submit a written request stating your reasons for needing more time <u>before</u> the expiration of the reply period. Full consideration will be given to any reply you timely submit. A written reply, affidavits, and any other documentary evidence should be forwarded to the Deciding Official, Mr. Gary Krizanovic, Deputy Director, Personnel Security & Credentialing Program Office,

TSA Headquarters – East Building, 8th Floor, TSA-19, 601 South 12th Street, Arlington, Virginia 22202-4220.

You have the right to be represented by an attorney or any other individual of your choice provided such representation does not constitute a conflict or apparent conflict of interest or position. Please designate your representative, if any, by name, address, position and employer in a written statement signed by you, and forward to the Deciding Official before the expiration of the reply period.

A copy of the material relied on to support this proposed removal is attached. You, or your representative if an agency employee, will be allowed a reasonable amount of administrative time to prepare your reply, to review the material relied upon to support the reason for the proposed action, and to secure affidavits and other documentary evidence. Your representative, if an agency employee, must contact his or her immediate supervisor to make advance arrangements for the use of administrative time.

The Employee Assistance Program (EAP) is available to you to provide counseling and/or assistance and may be contacted at 1-888-222-0364. The EAP is a confidential resource designed to help employees address a wide range of personal or family issues.

A final decision will not be made in this matter until your reply has been received and considered, or, if no timely reply is received, until after the time specified for the reply has passed. You will be notified in writing of the final decision.

To ensure its delivery, this correspondence is being forwarded to you via federal express and first-class mail.

If you have any questions about your rights or this process, please contact Martina Griggs Johnson, Employee Relations Services, at (571) 227-2865.

Attachments

# SUITABILITY WORKSHEET

SUBJECT NAME: Cruz-Packer, Linda        SSN: 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

[ ] Applicant            [ X ] Appointee              [ ] Contractor

Position: Special Agent

ISSUE: Misconduct, Falsification

DISCUSSION: OPM Investigative Report reflects that Subject was terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections on 05/21/98 for abuse of inmates free time, abuse of inmate privileges, i.e. visits/furloughs, no respect for staff assignments made by the Director of Security, theft of facility food, having inmates drive vehicles, which were not authorized to do so, directing an inmate who was incarcerated for 3rd offense DUI and Driving on a suspended license, to drive personal vehicle (a felony), taking inmates to Subject's home without permission or notification of their whereabouts, taking inmates to the South Charleston Recreational facility without permission or notification of their whereabouts, making improper purchases, utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

On Subject's SF 86 which was signed and dated by Subject on 03/24/03, Question #22, Your Employment Record asks, Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. Subject responded in the affirmative; however, she listed 08/97 1 – Fired from job with Volunteer's of America, New York, but did not list being Fired from position with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections in 05/21/98.

FINDING: Based on the above listed issues, Personnel Security recommends Subject be found unsuitable for employment with TSA as a Special Agent.

[ ] Eligible        [ X ] Ineligible on suitability

Adjudicator                    Date
Steven Olson                   10/21/03

GOVERNMENT EXHIBIT
No. 5

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA CRUZ-PACKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1235 (RWR) |
| | ) |
| MICHAEL CHERTOFF, | ) |
| Secretary of Homeland Security, | ) |
| Department of Homeland Security, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF SHERAN CALLAHAN

I, Sheran Callahan, do hereby declare as follows:

1.    I am the Deputy Director, Office of Inspection, Business Management Office,

Transportation Security Administration (TSA), United States Department of Homeland Security.

2.    The Job Analysis Tool for a Criminal Investigator, SV-1811-J, in the Office of

Inspection, states among other things, that it is a category 3, critical-sensitive position and

requires a Top Secret security clearance.

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct to the best of

my knowledge and belief.

Executed on the 15th day of November 2007.

_____
Sheran Callahan
Deputy Director, Business Management Office
Office of Inspection
Transportation Security Administration
United States Department of Homeland Security

**GOVERNMENT EXHIBIT**
**No. 6**

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

 NA



03008433

R
ITIONS

APR 1 6    Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4035
MAR 2    86-111 (EG)
RETURN
EXPRESS

**Part 1**    Investigating Agency Use Only    MAR 28 035980    Codes    Case Number

Agency Use Only (Complete Items A through F using instructions provided by the investigating agency)

| A Type of Investigation | B Extra Coverage | C Sensitivity Level | D Access | E Nature of Action Code | F Date of Action |
|---|---|---|---|---|---|
| BOA | 7 | 3 | 3 | | Month 03 Day 27 Year 03 |

G Geographic Location  1 1 0 0 1 0 0 0 1    H Position Code    I Position Title  Special Agent

J SON  TD29    K Location of Official Personnel Folder    None / NPRC / At SON  OSI 154 HR Services, 11951 Freedom Dr.  ZIP Code
Suite 900 Restn. VA 20190-5674

L SOI  TD29    M Location of Security Folder  None / At SOI / NPI (X)  Other Address 8-274-6439    ZIP Code

N OPAC-ALC Number  6928001    O Accounting Data and/or Agency Case Number

Requesting Official  A. Maddox, Sec Specialist    Signature    J.Q. Mellon    Telephone Number 571-227-2074    Date 3/27/

Persons completing this form should begin with the questions below.

**5a** FULL · If you have only initials in your name, use them and state (IO).    · If you are a "Jr.," "Sr.," "II," etc., enter this in the box after your middle name.    **5b** DATE OF BIRTH
NAME · If you have no middle name, enter "NMN."

| Last Name | First Name | Middle Name | Jr., II, etc. | Month | Day | Year |
|---|---|---|---|---|---|---|
| CRUZ-PACKER | LINDA | Yuetta | | 05 | 20 | 51 |

**3a** PLACE OF BIRTH · Use the two letter code for the State.    **4** SOCIAL SECURITY NUMBER

| City | County | State | Country (if not in the United States) |
|---|---|---|---|
| Clarksville | Montgomery | TN | |

**5c** OTHER NAMES USED

Give other names you used and the period of time you used them (for example: your maiden name, name[s] by a former marriage, former name[s], alias[es], or nickname[s]). If the other name is your maiden name, put "nee" in front of it.

| #1 Name Linda Wakefield (Maiden) | Month/Year 05/51 To Month/Year 06/70 | #3 Name | Month/Year To Month/Year |
|---|---|---|---|
| #2 Name Linda Pippen (Married) | Month/Year 06/70 To Month/Year 09/70 | #4 Name | Month/Year To Month/Year |

**6** OTHER IDENTIFYING INFORMATION
| Height (feet and inches) 5'9" | Weight (pounds) 250 lbs | Hair Color Black | Eye Color Brown | Sex (mark one box) [X] Female [ ] Male |
|---|---|---|---|---|

**7** TELEPHONE NUMBERS
Work (include Area Code and extension)  ( ) Day / (5x) Night ( 5 1 ) 227-1681
Home (include Area Code)  ( ) Day / (x) Night ( 301 ) 234-0097

**8a** CITIZENSHIP
Mark the box at the right that reflects your current citizenship status, and follow its instructions.

[✓] I am a U.S. citizen or national by birth in the U.S. or U.S. territory/possession.——— Answer items b and d
[ ] I am a U.S. citizen, but was NOT born in the U.S. ——————————— Answer items b,c, and d
[ ] I am not a U.S. citizen. ——————————————————— Answer items b and e

**8b** Your Mother's Maiden Name  Gilmer

**8c** UNITED STATES CITIZENSHIP  If you are a U.S. Citizen, but were not born in the U.S., provide information about one or more of the following proofs of your citizenship.

Naturalization Certificate (Where were you naturalized?)
| Court | City | State | Certificate Number | Month/Day/Year issued |
|---|---|---|---|---|
| | | | | |

Citizenship Certificate (Where was the certificate issued?)
| City | | State | Certificate Number | Month/Day/Year issued |
|---|---|---|---|---|
| | | | | |

State Department Form 240 - Report of Birth Abroad of a Citizen of the United States
| Give the date the form was prepared and give an explanation if needed. | Month/Day/Year | Explanation |
|---|---|---|
| | | |

U.S. Passport
| This may be either a current or previous U.S. Passport | Passport Number 80 1584588 | Month/Day/Year issued 11/27/2002 |
|---|---|---|

**8d** DUAL CITIZENSHIP  If you are (or were) a dual citizen of the United States and another country, provide the name of that country in the space to the right.    Country

**8e** ALIEN  If you are an alien, provide the following information:
| Place You Entered the United States: | City | State | Date You Entered U.S. Month Day Year | Alien Registration Number | Country(ies) of Citizenship |
|---|---|---|---|---|---|
| | | | | | |

## WHERE YOU HAVE LIVED

List the places where you have lived, beginning with the most recent (#1) and working back 7 years. All periods must be accounted for in your list. Be sure to indicate the actual physical location of your residence: do not use a post office box as an address, do not list a permanent address when you were actually living at a school address, etc. Be sure to specify your location as closely as possible: for example, do not list only your base or ship, list your barracks number or home port. You may omit temporary military duty locations under 90 days (list your permanent address instead), and you should use your APO/FPO address if you lived overseas.

For any address in the last 5 years, list a person who knew you at that address, and who preferably still lives in that area (do not list people for residences completely outside this 5-year period, and do not list your spouse, former spouses, or other relatives). Also for addresses in the last five years, if the address is "General Delivery," a Rural or Star Route, or may be difficult to locate, provide directions for locating the residence on an attached continuation sheet.

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| #1 09/01 To | Present | 4800 Megan Drive | | Clinton | MD | 20735 |

| Name of Person Who Knows You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| Nicole Cotton | 3972 Megan Dr. | | Clinton | MD | 20735 | (301) 297-5033 |

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| #2 6/00 To 9/01 | | 104-26 220th St | | Queens | NY | 11429 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| Diane Blyden | 11245 Seaview Ave | 10 D | Brooklyn | NY | 11239 | (718) 692-6897 |

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| #3 8/98 To 6/00 | | 106-08 215th St | | Queens | NY | 11429 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| Sylvia Harris | 780 Pinelake Dr. | | Virginia Beach | VA | 23462 | (757) 474-463 |

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| #4 4/97 To 7/98 | | 306 Grandview Pointe | 306 | Dunbar | WV | 25064 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| Wanda Cox | 118 Oak Dr. | K | Charleston | WV | 25064 | (304) 216-3711 |

| Month/Year | Month/Year | Street Address | Apt. # | City (Country) | State | ZIP Code |
|---|---|---|---|---|---|---|
| #5 10/91 To 9/97 | | 111-39 197 St | | St. Albans | NY | 11412 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| June Dickens | 111-38 197 St | | St. Albans | NY | 11412 | (718) 740-530 |

## WHERE YOU WENT TO SCHOOL

List the schools you have attended, beyond Junior High School, beginning with the most recent (#1) and working back 7 years. List College or University degrees and the dates they were received. If all of your education occurred more than 7 years ago, list your most recent education beyond high school, no matter when that education occurred.

- Use one of the following codes in the "Code" block:

  1 - High School          2 - College/University/Military College          3 - Vocational/Technical/Trade School

- For schools you attended in the past 3 years, list a person who knew you at school (an instructor, student, etc.). Do not list people for education completely outside this 3-year period.

- For correspondence schools and extension classes, provide the address where the records are maintained.

| Month/Year | Month/Year | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #1 9/66 To 6/69 | | 1 | Clarksville High School | HS | 5/69 |

| Street Address and City (Country) of School | | State | ZIP Code |
|---|---|---|---|
| | Clarksville | TN | 37040 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| | | | | | | ( ) |

| Month/Year | Month/Year | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #2 9/76 To 6/79 | | 2 | Boston State College | BS | 5/1980 |

| Street Address and City (Country) of School | City (Country) | State | ZIP Code |
|---|---|---|---|
| 625 Huntington Ave | Boston | MA | 02115 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| | | | | | | ( ) |

| Month/Year | Month/Year | Code | Name of School | Degree/Diploma/Other | Month/Year Awarded |
|---|---|---|---|---|---|
| #3 6/99 To 7/81 | | 2 | Anna Maria | MA | 5/1981 |

| Street Address and City (Country) of School | City (Country) | State | ZIP Code |
|---|---|---|---|
| | Paxton | MA | 01610 |

| Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|---|---|
| | | | | | | ( ) |

Enter your Social Security Number before going to the next page

## YOUR EMPLOYMENT ACTIVITIES

List your employment activities, beginning with the present (#1) and working back 7 years. You should list all full-time work, part-time work, military service, temporary military duty locations over 90 days, self-employment, other paid work, and all periods of unemployment. The entire 7-year period must be accounted for without breaks, but you need not list employments before your 16th birthday. EXCEPTION: Show all Federal civilian service, whether it occurred within the last 7 years or not.

- **Code.** Use one of the codes listed below to identify the type of employment:

  1 - Active military duty stations    5 - State Government (Non-Federal employ-    7 - Unemployment (Include name    9 - Other
  2 - National Guard/Reserve     ment)    of person who can verify)
  3 - U.S.P.H.S. Commissioned Corps    6 - Self-employment (Include business name    8 - Federal Contractor (List Con-
  4 - Other Federal employment     and/or name of person who can verify)    tractor, not Federal agency)

- **Employer/Verifier Name.** List the business name of your employer or the name of the person who can verify your self-employment or unemployment in this block. If military service is being listed, include your duty location or home port here as well as your branch of service. You should provide separate listings to reflect changes in your military duty locations or home ports.

- **Previous Periods of Activity.** Complete these lines if you worked for an employer on more than one occasion at the same location. After entering the most recent period of employment in the initial numbered block, provide previous periods of employment at the same location on the additional lines provided. For example, if you worked at XY Plumbing in Denver, CO, during 3 separate periods of time, you would enter dates and information concerning the most recent period of employment first, and provide dates, position titles, and supervisors for the two previous periods of employment on the lines below that information.

| Month/Year To Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|
| #1 6/02 To Present | 4 | Transportation Security Admin | Special Agent |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 701 South 12th ST. | Arlington | VA | 22202 | (571) 227-173 |
| Street Address of Job Location (if different than Employer's Address) SAME | City (Country) | State | ZIP Code | Telephone Number ( ) |
| Supervisor's Name & Street Address (if different than Job Location) Hector Santana | City (Country) Same | State " | ZIP Code " | Telephone Number (571) 227-172 |

| Month/Year To Month/Year | Position Title | Supervisor |
|---|---|---|
| 1/02 To Present | Special Agent | Hector Santana (Program Manag |
| 6/02 To 12/02 | Transportation Security Specialist | Stephen Iannucci (Director) |
| To | | |

| Month/Year To Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|
| #2 9/01 To 6/02 | 9 | National Organization of Black Law Enforcement Exec. | Associate Executive Director |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 4609 Pinecrest Office Park Dr. | Alexandria | VA | 22312 | (703) 658-152 |
| Street Address of Job Location (if different than Employer's Address) SAME | City (Country) | State | ZIP Code | Telephone Number ( ) |
| Supervisor's Name & Street Address (if different than Job Location) Maurice Foster | City (Country) " | State " | ZIP Code " | Telephone Number ( 703 658-152 |

| Month/Year To Month/Year | Position Title | Supervisor |
|---|---|---|
| 9/01 To 6/02 | Associate Executive Director | Maurice Foster (Executive Directo |
| 9/01 To 6/02 | Executive Assistant | Jimmy Wilson (vice-president) |
| To | | (H) 757-686-0940 (c) 202 528-28 |

| Month/Year To Month/Year | Code | Employer/Verifier Name/Military Duty Location | Your Position Title/Military Rank |
|---|---|---|---|
| #3 10/88 To 9/01 | 9 | Leake + Watts Services Inc. | Administrator on Duty |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 463 Hawthorne Ave | Yonkers | NY | 10705 | ( ) |
| Street Address of Job Location (if different than Employer's Address) Same | City (Country) | State | ZIP Code | Telephone Number ( ) |
| Supervisor's Name & Street Address (if different than Job Location) Michael Devery / Clinical Director | City (Country) " | State " | ZIP Code " | Telephone Number (914) 375-884 |

| Month/Year To Month/Year | Position Title | Supervisor |
|---|---|---|
| 10/88 To 12/00 | Admin on Duty | Mr Devery (Director) (914) 375-8738 |
| 12/00 To 9/01 | Admin / Teacher | Mrs. Walkenberg (Asst. Principa |
| To | | (914) 375-8 |

Enter your Social Security Number before going to the next page

YOUR EMPLOYMENT ACTIVITIES (CONTINUED)

| Month/Year  Month/Year | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank |
|---|---|---|---|---|
| #4 6/98 To 10/98 | 9 | Collective Capital Inc | | Supervisor |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| UNKNOWN | Dunbar | WY | 25064 | ( UNKNOWN |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Month/Year  Month/Year | Position Title | Supervisor |
|---|---|---|
| To | Part-time Supervisor | UNKNOWN |
| Month/Year  Month/Year | Position Title | Supervisor |
| To | | |
| Month/Year  Month/Year | Position Title | Supervisor |
| To | | |

| Month/Year  Month/Year | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank |
|---|---|---|---|---|
| #5 3/98 To 6/98 | 5 | WV Division of Correction | | Program Manager |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 112 California Ave, Bldg 4, Rm 30 | Charleston | WV | 25301 | (309) 558-203( |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| | | | | ( ) |

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| OTIS COX (Director of Public Safety) | | | | (304) 293-696( X 3380 |

| Month/Year  Month/Year | Position Title | Supervisor |
|---|---|---|
| To | | |
| 3/98 To 6/98 | Program Manager | OTIS COX (304) 594-3133 |
| #6 9/97 To 2/98 | unemployed (1) | |

| Month/Year  Month/Year | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank |
|---|---|---|---|---|
| #3 3/96 To 8/97 | 9 | Volunteers of America | | Director of Security |

| Employer's/Verifier's Street Address | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| The Regent Family Residence | | | | (212) 865-700( |

| Street Address of Job Location (if different than Employer's Address) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| 104 + Broadway | Manhattan | NY | 10035 | ( ) |

| Supervisor's Name & Street Address (if different than Job Location) | City (Country) | State | ZIP Code | Telephone Number |
|---|---|---|---|---|
| MS PUREK (Regional Director) | | | | (212) 865-700( |

| Month/Year  Month/Year | Position Title | Supervisor |
|---|---|---|
| 3/96 To 8/97 | Volunteers of America | DONNA KENNEDY (Director) |
| | Director of Security | (212) 865-7000 |
| To | | |
| Month/Year  Month/Year | Position Title | Supervisor |
| To | | |

**(12?) PEOPLE WHO KNOW YOU WELL**

List three people who know you well and live in the United States. They should be good friends, peers, colleagues, college roommates, etc., whose combined association with you covers as well as possible the last 7 years. Do not list your spouse, former spouses, or other relatives, and try not to list anyone who is listed elsewhere on this form.

| Name | Dates Known Month/Year  Month/Year | Telephone Number ( ) Day ( ) Night |
|---|---|---|
| #1 Emmett Dashiell | 2/80 To Present | (202) 564-2480  (703) 930-5773 |

| Home or Work Address Arielo Rios South Rm 211 (EPA) 1200 Pennsylvania Ave, NW. - MC 2231A | City (Country) Washington | State DC | ZIP Code 20004 |
|---|---|---|---|

| Name | Dates Known Month/Year  Month/Year | Telephone Number ( ) Day ( ) Night |
|---|---|---|
| #2 James Younger | 1/80 To Present | (703) 228-4322  (703) 920-2888 |

| Home or Work Address 1425 North Courthouse Road (Arlington Police) | City (Country) Arlington | State VA | ZIP Code 22201 |
|---|---|---|---|

| Name | Dates Known Month/Year  Month/Year | Telephone Number ( ) Day ( ) Night |
|---|---|---|
| #3 FRANCINE Plummer | 1/90 To Present | (202) 646-2613  (301) 868-3782 |

| Home or Work Address 500 D ST, SW (Fema) | City (Country) Washington | State | ZIP Code ?07 |
|---|---|---|---|

Enter your Social Security Number before going to the next page

Page 4

## 13 YOUR SPOUSE

Mark one box to show your current marital status and provide information about your spouse(s) in items a, and/or b.

- [ ] 1.- Never married
- [ ] 2 - Married
- [ ] 3 - Separated
- [ ] 4 - Legally Separated
- [ ] 5 - Divorced
- [x] 6 - Widowed

**ⓐ Current Spouse** Complete the following about your current spouse only.

| Full Name N/A | Date of Birth | Place of Birth (Include country if outside the U.S.) | Social Security Number |
|---|---|---|---|

Other Names Used (Specify maiden name, names by other marriages, etc., and show dates used for each name) | Country(ies) of Citizenship

| Date Married | Place Married (Include country if outside the U.S.) | State |
|---|---|---|

| If Separated, Date of Separation | If Legally Separated, Where is the Record Located? City (Country) | State |
|---|---|---|

| Address of Current Spouse, if different than your current address (Street, city, and country if outside the U.S.) | State | ZIP Code |
|---|---|---|

**ⓑ Former Spouse(s)** Complete the following about your former spouse(s), use blank sheets if needed.

| Full Name Louis Kyle Packer | Date of Birth 4/22/45 | Place of Birth (Include country if outside the U.S.) MANhattan | State NY |
|---|---|---|---|
| Country(ies) of Citizenship | Date Married 11/07/92 | Place Married (Include country if outside the U.S.) MANhattan | State NY |
| Check One, Then Give Date  [ ] Divorced  [x] Widowed | Month/Day/Year 11/16/02 | If Divorced, Where is the Record Located? City (Country) | State |

| Address of Former Spouse (Street, city, and country if outside the U.S.) | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|

## 14 YOUR RELATIVES AND ASSOCIATES

Give the full name, correct code, and other requested information for each of your relatives and associates, living or dead, specified below.

| | | |
|---|---|---|
| 1 - Mother (first) | 5 - Foster parent | 9 - Sister | 13 - Half-sister | 17 - Other Relative* |
| 2 - Father (second) | 6 - Child (adopted also) | 10 - Stepbrother | 14 - Father-in-law | 18 - Associate* |
| 3 - Stepmother | 7 - Stepchild | 11 - Stepsister | 15 - Mother-in-law | 19 - Adult Currently Living With You |
| 4 - Stepfather | 8 - Brother | 12 - Half-brother | 16 - Guardian | |

* Code 17 (Other Relative)-include only foreign national relatives not listed in 1-16 with whom you or your spouse are bound by affection, obligation, or close and continuing contact. Code 18 (Associates) - include only foreign national associates with whom you or your spouse are bound by affection, obligation, or close and continuing contact.

| Full Name (if deceased, check box on the left before entering name) | Code | Date of Birth Month/Day/Year | Country of Birth | Country(ies) of Citizenship | Current Street Address and City (country) of Living Relatives | State |
|---|---|---|---|---|---|---|
| 1 [x] Finley Elder Wakefield | 1 | 1/25/33 | USA | USA | | |
| 2 [x] Flemming Morris Wakefield | 2 | 4/22/23 | | | | |
| 3 Deborah Carmichael | 9 | 7/9/52 | | | 1124 Micheline Terrace Richmond, 23223 | VA |
| 4 Dorothy Jackson | 13 | 8/3/41 | | | 6306 Mayfield Drive Pine Bluff 71603 | AR |
| 5 Gloria Washington | 9 | 1/26/55 | | | 28 South Main # 115 Randolph 02368 | MA |
| 6 Flemming Morris Wakefield | 8 | 8/2/54 | | | 450 165th St. Apt #3 Bronx | NY |
| 7 Greg Wakefield | 8 | 2/2/57 | | | 10704 Mullikin Drive Clinton 20735 | MD |
| 8 Keith Kyle Packer | 6 | 1/21/91 | | | 4800 Megan Drive Clinton 20735 | MD |
| 9 April Nicole Packer | 6 | 9/4/93 | USA | USA | 4800 Megan Drive Clinton 20735 | MD |
| [ ] | | | | | | |
| [ ] | | | | | | |

Enter your Social Security Number before going to the next page

**15** CITIZENSHIP OF YOUR RELATIVES AND ASSOCIATES

If your mother, father, sister, brother, child, or current spouse or person with whom you have a spouse-like relationship is a U.S. citizen by other than birth, or an alien residing in the U.S., provide the nature of the individual's relationship to you (Spouse, Spouse-like, Mother, etc.), and the individual's name and date of birth on the first line *(this information is needed to pair it accurately with information in items 13 and 14).*

On the second line, provide the individual's naturalization certificate or alien registration number and use one of the document codes below to identify proof of citizenship status. Provide additional information on that line as requested.

1. Naturalization Certificate: Provide the date issued and the location where the person was naturalized (Court, City and State).
2. Citizenship Certificate: Provide the date and location issued (City and State).
3. Alien Registration: Provide the date and place where the person entered the U.S. (City and State).
4. Other: Provide an explanation in the "Additional information" block.

| Association 1# | Name | | Date of Birth (Month/Day/Year) |
|---|---|---|---|
| Certificate/Registration # | Document Code | Additional information | |

| Association 2# | Name | | Date of Birth (Month/Day/Year) |
|---|---|---|---|
| Certificate/Registration # | Document Code | Additional information | |

**16** YOUR MILITARY HISTORY

| | Yes | No |
|---|---|---|
| (a) Have you served in the United States military? | X | |
| (b) Have you served in the United States Merchant Marine? | | X |

List all of your military service below, including service in Reserve, National Guard, and U.S. Merchant Marine. Start with the most recent period of service (#1) and work backward. If you had a break in service, each separate period should be listed.
- Code. Use one of the codes listed below to identify your branch of service:
  1 - Air Force   (2 - Army)   3 - Navy   4 - Marine Corps   5 - Coast Guard   6 - Merchant Marine   7 - National Guard
- O/E. Mark "O" block for Officer or "E" block for Enlisted.
- Status. "X" the appropriate block for the status of your service during the time that you served. If your service was in the National Guard, do not use an "X": use the two-letter code for the state to mark the block.
- Country. If your service was with other than the U.S. Armed Forces, identify the country for which you served.

| Month/Year | Month/Year | Code | Service/Certificate # | O | E | Status: Active | Active Reserve | Inactive Reserve | National Guard (State) | Country |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/72 To 7/3/73 | | 2 | | | ✓ | ✓ | | | | |
| To | | | | | | ✓ | | | | |

**17** YOUR FOREIGN ACTIVITIES

| | Yes | No |
|---|---|---|
| (a) Do you have any foreign property, business connections, or financial interests? | | X |
| (b) Are you now or have you ever been employed by or acted as a consultant for a foreign government, firm, or agency? | | X |
| (c) Have you ever had any contact with a foreign government, its establishments (embassies or consulates), or its representatives, whether inside or outside the U.S., other than on official U.S. Government business? (Does not include routine visa applications and border crossing contacts.) | | X |
| (d) In the last 7 years, have you had an active passport that was issued by a foreign government? | | X |

If you answered "Yes" to a, b, c, or d above, explain in the space below: provide inclusive dates, names of firms and/or governments involved, and an explanation of your involvement.

| Month/Year | Month/Year | Firm and/or Government | Explanation |
|---|---|---|---|
| To | | | |
| To | | | |

**18** FOREIGN COUNTRIES YOU HAVE VISITED

List foreign countries you have visited, except on travel under official Government orders, beginning with the most current (#1) and working back 7 years. (Travel as a dependent or contractor must be listed.)
- Use one of these codes to indicate the purpose of your visit:   1 - Business   2 - Pleasure   3 - Education   4 - Other
- Include short trips to Canada or Mexico. If you have lived near a border and have made short (one day or less) trips to the neighboring country, you do not need to list each trip. Instead, provide the time period, the code, the country, and a note ("Many Short Trips").
- Do not repeat travel covered in items 9, 10, or 11.

| Month/Year | Month/Year | Code | Country | Month/Year | Month/Year | Code | Country |
|---|---|---|---|---|---|---|---|
| #1 2/60 To 2/65 | | 4 | Germany | #3 To | | | |
| #2 2/57 To 2/60 | | 4 | France | #4 To | | | |

This concludes Part 1 of this form. If you have used Page 9, continuation sheets, or blank sheets to complete any of the questions in Part 1, give the number for those questions in the space to the right:

Enter your Social Security Number before going to the next page

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

**QUESTIONNAIRE FOR**
**NATIONAL SECURITY POSITIONS**

Form approved:
O.M.B. No. 3206-0007
NSN 7540-00-634-4036
86-111



**Part 2**  OFFICIAL USE ONLY

---

**19** **YOUR MILITARY RECORD**

Have you ever received other than an honorable discharge from the military? If "Yes," provide the date of discharge and type of discharge below.

| | | Yes | No |
|---|---|---|---|
| | | | X |

| Month/Year | Type of Discharge |
|---|---|
| | |

---

**20** **YOUR SELECTIVE SERVICE RECORD**

| | | Yes | No |
|---|---|---|---|
| a  Are you a male born after December 31, 1959? If "No," go to 21. If "Yes," go to b. | | | X |
| b  Have you registered with the Selective Service System? If "Yes," provide your registration number. If "No," show the reason for your legal exemption below. | | | |

| Registration Number | Legal Exemption Explanation |
|---|---|
| | |

---

**21** **YOUR MEDICAL RECORD**

In the last 7 years, have you consulted with a mental health professional (psychiatrist, psychologist, counselor, etc.) or have you consulted with another health care provider about a mental health related condition?

| | | Yes | No |
|---|---|---|---|
| | | | X |

If you answered "Yes", provide the dates of treatment and the name and address of the therapist or doctor below, unless the consultation(s) involved only marital, family, or grief counseling, not related to violence by you.

| Month/Year | Month/Year To | Name/Address of Therapist or Doctor | State | ZIP Code |
|---|---|---|---|---|
| | To | | | |
| | To | | | |

---

**22** **YOUR EMPLOYMENT RECORD**

Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested.

| | | Yes | No |
|---|---|---|---|
| | | X | |

Use the following codes and explain the reason your employment was ended:
1 - Fired from a job
2 - Quit a job after being told you'd be fired
3 - Left a job by mutual agreement following allegations of misconduct
4 - Left a job by mutual agreement following allegations of unsatisfactory performance
5 - Left a job for other reasons under unfavorable circumstances

| Month/Year | Code | Specify Reason | Employer's Name and Address   (Include city/Country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| 8/97 | 1 | Fired For Reporting Assault of an employee by a manager | Volunteer's of America  104 + Broadway | NY | 10035 |

---

**23** **YOUR POLICE RECORD**

For this item, report information regardless of whether the record in your case has been "sealed" or otherwise stricken from the court record. The single exception to this requirement is for certain convictions under the Federal Controlled Substances Act for which the court issued an expungement order under the authority of 21 U.S.C. 844 or 18 U.S.C. 3607.

| | | Yes | No |
|---|---|---|---|
| a  Have you ever been charged with or convicted of any felony offense? (Include those under Uniform Code of Military Justice) | | | ✓ |
| b  Have you ever been charged with or convicted of a firearms or explosives offense? | | | ✓ |
| c  Are there currently any charges pending against you for any criminal offense? | | | ✓ |
| d  Have you ever been charged with or convicted of any offense(s) related to alcohol or drugs? | | | ✓ |
| e  In the last 7 years, have you been subject to court martial or other disciplinary proceedings under the Uniform Code of Military Justice? (Include non-judicial, Captain's mast, etc.) | | | ✓ |
| f  In the last 7 years, have you been arrested for, charged with, or convicted of any offense(s) not listed in response to a, b, c, d, or e above? (Leave out traffic fines of less than $150 unless the violation was alcohol or drug related.) | | | ✓ |

If you answered "Yes" to a, b, c, d, e, or f above, explain below. Under "Offense," do not list specific penalty codes, list the actual offense or violation (for example, arson, theft, etc.).

| Month/Year | Offense | Action Taken | Law Enforcement Authority/Court (Include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

Enter your Social Security Number before going to the next page

Page 7

**24**  YOUR USE OF ILLEGAL DRUGS AND DRUG ACTIVITY

|  |  | Yes | No |
|---|---|---|---|

The following questions pertain to the illegal use of drugs or drug activity. You are required to answer the questions fully and truthfully, and your failure to do so could be grounds for an adverse employment decision or action against you, but neither your truthful responses nor information derived from your responses will be used as evidence against you in any subsequent criminal proceeding.

(a) Since the age of 16 or in the last 7 years, whichever is shorter, have you illegally used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription drugs?  — No ✓

(b) Have you ever illegally used a controlled substance while employed as a law enforcement officer, prosecutor, or courtroom official; while possessing a security clearance; or while in a position directly and immediately affecting the public safety?  — No ✓

(c) In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis for your own intended profit or that of another?  — No ✓

If you answered "Yes" to a or b above, provide the date(s), identify the controlled substance(s) and/or prescription drugs used, and the number of times each was used.

| Month/Year | Month/Year | Controlled Substance/Prescription Drug Used | Number of Times Used |
|---|---|---|---|
| To |  |  |  |
| To |  |  |  |

**25**  YOUR USE OF ALCOHOL

|  |  | Yes | No |
|---|---|---|---|

In the last 7 years, has your use of alcoholic beverages (such as liquor, beer, wine) resulted in any alcohol-related treatment or counseling (such as for alcohol abuse or alcoholism)?  — No ✓

If you answered "Yes," provide the dates of treatment and the name and address of the counselor or doctor below. Do not repeat information reported in response to item 21 above.

| Month/Year | Month/Year | Name/Address of Counselor or Doctor | State | ZIP Code |
|---|---|---|---|---|
| To |  |  |  |  |
| To |  |  |  |  |

**26**  YOUR INVESTIGATIONS RECORD

|  |  | Yes | No |
|---|---|---|---|

(a) Has the United States Government ever investigated your background and/or granted you a security clearance? If "Yes," use the codes that follow to provide the requested information below. If "Yes," but you can't recall the investigating agency and/or the security clearance received, enter "Other" agency code or clearance code, as appropriate, and "Don't know" or "Don't recall" under the "Other Agency" heading below. If your response is "No," or you don't know or can't recall if you were investigated and cleared, check the "No" box.  — Yes ✓

Codes for Investigating Agency
1 - Defense Department
2 - State Department
3 - Office of Personnel Management
4 - FBI
5 - Treasury Department
6 - Other (Specify)

Codes for Security Clearance Received
0 - Not Required
1 - Confidential
2 - Secret
3 - Top Secret
4 - Sensitive Compartmented Information
5 - Q
6 - L
7 - Other

| Month/Year | Agency Code | Other Agency | Clearance Code | Month/Year | Agency Code | Other Agency | Clearance Code |
|---|---|---|---|---|---|---|---|
| 8/80 | 4 |  | 3 |  |  |  |  |
| 5/72 | 1 | 45 Army (maybe) |  |  |  |  |  |

(b) To your knowledge, have you ever had a clearance or access authorization denied, suspended, or revoked, or have you ever been debarred from government employment? If "Yes," give date of action and agency. Note: An administrative downgrade or termination of a security clearance is not a revocation.  — No ✓

| Month/Year | Department or Agency Taking Action | Month/Year | Department or Agency Taking Action |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**27**  YOUR FINANCIAL RECORD

|  |  | Yes | No |
|---|---|---|---|

(a) In the last 7 years, have you filed a petition under any chapter of the bankruptcy code (to include Chapter 13)?  — No ✓

(b) In the last 7 years, have you had your wages garnished or had any property repossessed for any reason?  — No ✓

(c) In the last 7 years, have you had a lien placed against your property for failing to pay taxes or other debts?  — No ✓

(d) In the last 7 years, have you had any judgments against you that have not been paid?  — No ✓

If you answered "Yes" to a, b, c, or d, provide the information requested below:

| Month/Year | Type of Action | Amount | Name Action Occurred Under | Name/Address of Court or Agency Handling Case | State | ZIP Code |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Enter your Social Security Number before going to the next page

|  |  |  | Yes | No |
|---|---|---|---|---|
| **(24)** | **YOUR USE OF ILLEGAL DRUGS AND DRUG ACTIVITY** | | | |

The following questions pertain to the illegal use of drugs or drug activity. You are required to answer the questions fully and truthfully, and your failure to do so could be grounds for an adverse employment decision or action against you, but neither your truthful responses nor information derived from your responses will be used as evidence against you in any subsequent criminal proceeding.

| | | Yes | No |
|---|---|---|---|
| (a) | Since the age of 18 or in the last 7 years, whichever is shorter, have you illegally used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription drugs? | | ✓ |
| (b) | Have you ever illegally used a controlled substance while employed as a law enforcement officer, prosecutor, or courtroom official; while possessing a security clearance; or while in a position directly and immediately affecting the public safety? | | ✓ |
| (c) | In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis for your own intended profit or that of another? | | ✓ |

If you answered "Yes" to a or b above, provide the date(s), identify the controlled substance(s) and/or prescription drugs used, and the number of times each was used.

| Month/Year | Month/Year | Controlled Substance/Prescription Drug Used | Number of Times Used |
|---|---|---|---|
| | To | | |
| | To | | |

|  |  |  | Yes | No |
|---|---|---|---|---|
| **(25)** | **YOUR USE OF ALCOHOL** | | | |

In the last 7 years, has your use of alcoholic beverages (such as liquor, beer, wine) resulted in any alcohol-related treatment or counseling (such as for alcohol abuse or alcoholism)? — ✓ No

If you answered "Yes", provide the dates of treatment and the name and address of the counselor or doctor below. Do not repeat information reported in response to item 21 above.

| Month/Year | Month/Year | Name/Address of Counselor or Doctor | State | ZIP Code |
|---|---|---|---|---|
| | To | | | |
| | To | | | |

|  |  |  | Yes | No |
|---|---|---|---|---|
| **(26)** | **YOUR INVESTIGATIONS RECORD** | | | |

(a) Has the United States Government ever investigated your background and/or granted you a security clearance? If "Yes," use the codes that follow to provide the requested information below. If "Yes," but you can't recall the investigating agency and/or the security clearance received, enter "Other" agency code or clearance code, as appropriate, and "Don't know" or "Don't recall" under the "Other Agency" heading below. If your response is "No," or you don't know or can't recall if you were investigated and cleared, check the "No" box. — Yes ✓

| Codes for Investigating Agency | | Codes for Security Clearance Received | |
|---|---|---|---|
| 1 - Defense Department | 4 - FBI | 0 - Not Required | 3 - Top Secret | 6 - L |
| 2 - State Department | 5 - Treasury Department | 1 - Confidential | 4 - Sensitive Compartmented Information | 7 - Other |
| 3 - Office of Personnel Management | 6 - Other (Specify) | 2 - Secret | 5 - Q | |

| Month/Year | Agency Code | Other Agency | Clearance Code | Month/Year | Agency Code | Other Agency | Clearance Code |
|---|---|---|---|---|---|---|---|
| 8/80 | 4 | | 3 | | | | |
| LCP 6 %/72 | 1 | 45 Army (maybe) | | | | | |

|  | Yes | No |
|---|---|---|
| (b) To your knowledge, have you ever had a clearance or access authorization denied, suspended, or revoked, or have you ever been debarred from government employment? If "Yes," give date of action and agency. Note: An administrative downgrade or termination of a security clearance is not a revocation. | | ✓ |

| Month/Year | Department or Agency Taking Action | Month/Year | Department or Agency Taking Action |
|---|---|---|---|
| | | | |

|  |  |  | Yes | No |
|---|---|---|---|---|
| **(27)** | **YOUR FINANCIAL RECORD** | | | |

| | | Yes | No |
|---|---|---|---|
| (a) | In the last 7 years, have you filed a petition under any chapter of the bankruptcy code (to include Chapter 13)? | | ✓ |
| (b) | In the last 7 years, have you had your wages garnished or had any property repossessed for any reason? | | ✓ |
| (c) | In the last 7 years, have you had a lien placed against your property for failing to pay taxes or other debts? | | ✓ |
| (d) | In the last 7 years, have you had any judgments against you that have not been paid? | | ✓ |

If you answered "Yes" to a, b, c, or d, provide the information requested below:

| Month/Year | Type of Action | Amount | Name Action Occurred Under | Name/Address of Court or Agency Handling Case | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

Enter your Social Security Number before going to the next page

Page 8

## 28. YOUR FINANCIAL DELINQUENCIES

|  |  | Yes | No |
|---|---|---|---|
| a | In the last 7 years, have you been over 180 days delinquent on any debt(s)? | | X |
| b | Are you currently over 90 days delinquent on any debt(s)? | | X |

If you answered "Yes" to a or b, provide the information requested below:

| Incurred Month/Year | Satisfied Month/Year | Amount | Type of Loan or Obligation and Account Number | Name/Address of Creditor or Obligee | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

## 29. PUBLIC RECORD CIVIL COURT ACTIONS

|  | Yes | No |
|---|---|---|
| In the last 7 years, have you been a party to any public record civil court actions not listed elsewhere on this form? | | X |

If you answered "Yes," provide the information about the public record civil court action requested below.

| Month/Year | Nature of Action | Result of Action | Name of Parties Involved | Court (Include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |

## 30. YOUR ASSOCIATION RECORD

|  |  | Yes | No |
|---|---|---|---|
| a | Have you ever been an officer or a member or made a contribution to an organization dedicated to the violent overthrow of the United States Government and which engages in illegal activities to that end, knowing that the organization engages in such activities with the specific intent to further such activities? | | X |
| b | Have you ever knowingly engaged in any acts or activities designed to overthrow the United States Government by force? | | X |

If you answered "Yes" to a or b, explain in the space below.

### Continuation Space

Use the continuation sheet(s) (SF 86A) for additional answers to items 9, 10, and 11. Use the space below to continue answers to all other items and any information you would like to add. If more space is needed than is provided below, use a blank sheet(s) of paper. Start each sheet with your name and Social Security Number. Before each answer, identify the number of the item.

28. I am a Recent widow. Husband's will is currently being settle. Law firm of Shaewitz + Shaewitz (718) 291-3400 is in the process of getting me appointed Administrator. A lot of items currently on my credit Report are items belonging to my husband & when his estate is cleared they will be settled. I am in the process of resolving Bell Atlantic $587, Dr. Bloom $361 + Apartment Management + $767. All gasoline bills belong to husband.

After completing Parts 1 and 2 of this form and any attachments, you should review your answers to all questions to make sure the form is complete and accurate, and then sign and date the following certification and sign and date the release on page 10.

## Certification That My Answers Are True

My statements on this form, and any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See section 1001 of title 18, United States Code).

| Signature (Sign in ink) _Linda Cruz-Packer_ | Date 03/24/03 |
|---|---|

Enter your Social Security Number before going to the next page

GOVERNMENT EXHIBIT

No. 7

DECLARATION OF OTIS COX

I, Otis G. Cox, being first duly sworn, do hereby depose and state as follows:

1.) My name is Otis G. Cox. I make this Declaration at the request of Linda Cruz-Packer to support her reply to the proposal to remove her from the Transportation Safety Administration ("TSA"). A copy of that proposal is attached here as Exhibit 1.

2.) Between 1997 and 2001, I served as the Secretary for Public Safety for the State of West Virginia. As Secretary, I was a Cabinet level official and reported directly to the Governor. I had ultimate responsibility over a number of departments of the State of West Virginia, including the Department of Corrections, the West Virginia State Police, the West Virginia National Guard, the Regional Jails, and the Capital Security.

3.) I currently serve as the Deputy Administrator, NHTSA, the U.S. Department of Transportation, where my duties and responsibilities includes providing executive direction and leadership to all organizational elements of National Highway Traffic Safety Administration (NHTSA) and evaluates their performance. Serve as the day-to-day first line supervisor of the Director of Civil Rights, Intergovernmental Affairs, Public and Consumer Affairs; the Associate Administrator for State and Community Services; and the Chief Counsel.

4.) As I noted above, one of the departments which reported to me as Secretary for Public Safety was the West Virginia Department of Corrections. This is the Department which employed Ms. Cruz-Packer in the period in question.

1

5.) TSA's notice of proposed removal is based on Ms. Cruz-Packer's supposed termination by the West Virginia Department of Corrections which she supposedly failed to disclose in applying for a position with TSA.

6.) As Secretary for Public Safety, I had supervisory authority over the Commissioner of Corrections. Had Ms. Cruz-Packer been terminated by the Department of Corrections, this is the official who would have had to have done so.

7.) The Commissioner of Corrections could only terminate Ms. Cruz-Packer with my approval and written concurrence.

8.) My approval to terminate Ms. Cruz-Packer was neither sought nor given. TSA's notice of proposed removal (Exh. 1) does not contain a copy of the supposed decision to terminate Ms. Cruz-Packer, nor does it refer to any approval which I would have had to have given before the Department of Corrections could have terminated her. For that reason, even if there were a document purporting to terminate Ms. Cruz-Packer, it would have no force or effect.

I hereby declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Otis Cox

Executed on January _16_, 2003.

2

GOVERNMENT EXHIBIT

No. 8

# TRANSPORTATION SECURITY ADMINISTRATION

## Credentialing Program Office

## <u>Affidavit</u>

State of:    West Virginia

ss:

County of:  Kanawha


I, Donald M. Ervin, Administrator for Charleston Work Release Center, being duly sworn, hereby make the following statement to Special Agent Steve Geary, who has identified himself/herself to me as a special agent with TSA Credentialing Program Office. I am making this statement of my own free will, without any duress or coercion.

In 1998 I was Linda Cruz Packers' immediate supervisor. I was directed by then Deputy Commissioner Manfred Holland at the request of Otis Cox, Cabinet Secretary for MAPS to place Ms. Packer into the Program Specialist position that was currently vacant.

During her employment allegations arose regarding improprieties of Linda Cruz Packer. While I was looking into those improprieties I suspended Linda Cruz Packer pending the outcome of my investigation.

At the conclusion of my investigation I recommended Linda Cruz Packers dismissal to Deputy Commissioner Holland.   Deputy Commissioner Holland agreed with my recommendations and on May 21, 1998 dismissed (fired) her.

During subsequent conversations with Deputy Commissioner Holland he mentioned conversations he had with Secretary Cox regarding Linda Cruz Packers dismissal (firing).

I have no knowledge of the specifics of their conversations.

I never spoke with Secretary Cox nor did he speak to me regarding Linda Cruz Packers dismissal (firing).

*Donald M Ervin*

*april 22, 2004*

Page 2 of 2

I have read the above statement consisting of 2 page(s) and I have been given an opportunity to make corrections. All of the facts contained herein are true and correct to the best of my knowledge.

_____
(Affiant Signature)

_____
(Witness Signature)

Signed and sworn before me

This 22ᵘᵈ day of _April_ , 2004.

(Authority to administer oaths: Title 5, Sec: 303)

√TEVE CLARY S/A TSA - CPO
Name, Title, Transportation Security Administration

GOVERNMENT EXHIBIT
No. 9

# TRANSPORTATION SECURITY ADMINISTRATION

## Credentialing Program Office

## Affidavit

State of:   West Virginia  )

)  ss:

County of:  Kanawha       )

I, Manfred G. Holland                , being duly sworn, hereby make the
following statement to Spec. Agent Steve Geary who has identified himself/herself
to me as a special agent with TSA Credentialing Program Office. I am making this
statement of my own free will, without any duress or coercion.

In March of 1998, I was Deputy Commissioner for the Division of Corrections.
While in this position, I had occasion to speak with Otis Cox, Cabinet Secretary
for the Department of Military Affairs and Public Safety regarding Ms. Linda
Cruz-Packer and Mr. Cox's wishes for us to employ her as a Program Specialist
at the Charleston Work Release Center. Ms. Cruz-Packer was hired as a 160
day temporary employee.

While she was in this position, Don Ervin, Administrator of the Charleston
Work Release Center, advised me that Ms. Cruz-Packer may possibly be involved
in rule violations in the performance of her duties.

I instructed Mr. Ervin to investigate those allegations. The outcome of that
investigation prompted me to author a letter dated, May 21, 1998, dismissing
Ms. Cruz-Packer for reasons outlined in that correspondence.

Prior to issuing that correspondence, I spoke with the Cabinet Secretary of
Military Affairs and Public Safety, Otis Cox, advising him of the problem with
Ms. Cruz-Packer and my believing that she should no longer be employed at the
Charleston Work Release Center or with the division. Mr. Cox advised me to
do what I had to do.

Subsequent to that conversation, Mr. Cox and I did not speak again in reference
to Ms. Cruz-Packer. I have no knowledge of Ms. Cruz-Packer resigning or
requesting resignation in lieu of termination.

4/22/06

Page 2 of 2

Initials: _MK_

I have read the above statement consisting of **2** page(s) and I have been given an opportunity to make corrections. All of the facts contained herein are true and correct to the best of my knowledge.

_(Affiant Signature)_

_(Witness Signature)_

Signed and sworn before me
This 22 th day of _APRIL_ , 200_4_

_STEVE CLEARY, S/A, TSA — CPO_
Name, Title, Transportation Security Administration

(Authority to administer
oaths: Title 5, Sec: 303)

GOVERNMENT EXHIBIT
No. 10




### STATE OF WEST VIRGINIA
### DEPARTMENT OF MILITARY AFFAIRS & PUBLIC SAFETY
### DIVISION OF CORRECTIONS

CECIL H. UNDERWOOD
GOVERNOR

WILLIAM K. DAVIS
COMMISSIONER

OTIS G. COX, JR.
SECRETARY

OFFICE OF THE COMMISSIONER
112 CALIFORNIA AVENUE-STATE CAPITOL COMPLEX
BUILDING 4, ROOM 300
CHARLESTON, WV 25305-0280
(304) 558-2036 Telephone - (304) 558-5934 Fax

May 21, 1998

Ms. Linda Cruz-Packer
306 Grandview Pointe
Dunbar, West Virginia 25064

Dear Ms. Cruz-Packer:

This letter is to inform you of my decision to dismiss you from your limited term/temporary position as Corrections Program Specialist with the West Virginia Division of Corrections, Charleston Work Release Center. The dismissal shall be effective immediately.

As you are aware, you were hired as a limited term/ temporary employee on March 16, 1998 at noon. On March 3, 1998, you were advised that acceptance of a limited term/ temporary position did not provide you any rights under the Civil Service System (Division of Personnel). Therefore, you may be released from employment without cause. Nevertheless, I wish to share with you that the reason for this action is my loss of confidence in your ability to effectively discharge the duties and responsibilities of your position. The following is submitted to reiterate my concerns:

* Misuse of inmates free time

* Misuse of inmate privileges, i.e. Visits/Furloughs

* Utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

* Making improper purchases

Ms. Linda Cruz-Packer
May 21, 1998
Page 2


You have the opportunity to either meet with me in person or to present me with a written explanation of the reason why you may think the facts and grounds contained in this letter are in error and why you may think this action is inappropriate, providing that you do so within fifteen (15) calendar days of receipt of this letter.


Sincerely,

Manfred G. Holland
Deputy Commissioner


MGH:HLW

cc: Don Ervin, Administrator
    Division of Personnel
    Personnel File

**GOVERNMENT EXHIBIT**
# No. 11

# TRANSPORTATION SECURITY ADMINISTRATION

## Credentialing Program Office

## Affidavit

State of:  Washington, DC  )

County of: _____ )
                     ss:

I, ____Otis G. Cox_____, being duly sworn, hereby make the following statement to ____Steve Geary____, who has identified himself/herself to me as a special agent with TSA Credentialing Program Office. I am making this statement of my own free will, without any duress or coercion.

My name is Otis G. Cox, Jr., and I currently serve as the Deputy Administrator, National Highway Traffic Safety Administration, U.S. Department of Transportation, and have served in this position since June 15, 2003.

I served as the Cabinet Secretary for Public Safety and Military Affairs, for the State of West Virginia, from February 1997 until February 2001. As the Cabinet Secretary, I had ultimate responsibility over a number of departments of the State of West Virginia, which included the Department of Corrections, the West Virginia State Police, the West Virginia National Guard, the Regional Jails Authority and the State Capital Security Agency.

This affidavit is concerning my role with the Department of Corrections and the knowledge I had with the resignation of Linda Cruz Packer.

In 1998, I recommended to William (Bill) Davis, Commissioner of the Department of Corrections that he take look at Linda's resume for a possible position in Corrections. About two months after bringing her on board, Bill came to me with a film and advised me that Linda's supervisor was complaining of Linda taking food from the dining room refrigerator. I reviewed the film and noted Linda removing food from the refrigerator. After I reviewed the entire film and the film from the remainder of the week, I advised Bill we could not use this information because it appeared that all of the staff were going in and out of the refrigerator. Bill advised me that there were some other issues and he would get back to me. Bill and I never discussed Linda again. However, when Bill was leaving my office I advised him to do whatever was necessary to correct the situation.

Otis G. Cox Jr.
April 27, 2004

I reviewed Manfred Holland's letter to Linda today where he advised Linda she was being dismissed from Corrections. Mr. Holland had not sent me a copy of this letter and this was the first time I reviewed the letter. If Mr. Holland had discussed the letter with me, I would have agreed on the dismissal. All of this time I have assumed that she resigned because I never saw Deputy Commissioner Holland's letter and never saw or signed the WV-11 personnel action form indicating a termination. My department had a procedure in place that on any special hire or dismissal the WV-11 would come through the Secretary's office. Without seeing the WV-11 indicating a dismissal, I will have to assume that Linda resigned from Corrections.

Mr. Holland was given the signature authority to hire and to terminate by letter. However, to close out the personnel action, a WV-11 would have been needed to notify the Division of Personnel and to have taken Linda off payroll. It appears to me that something fell through the cracks. The letter to Linda from Mr. Holland was official and will stand as a letter of termination. There must be a WV-11 some place in the Division of Personnel which brought closure to Linda's termination.

I never discussed with Linda how she exited the organization and I had no mutual agreement with her regarding the issue of her leaving.

Initials: _____

I have read the above statement consisting of 2 page(s) and I have been given an opportunity to make corrections. All of the facts contained herein are true and correct to the best of my knowledge.

_____
(Affiant Signature)

_____
(Witness Signature)

Signed and sworn before me
This 27th day of APRIL, 2004.

_____
Name, Title, Transportation Security Administration

(Authority to administer
oaths: Title 5, Sec: 303)

GOVERNMENT EXHIBIT
No. 12

PERSONNEL ACTION FORM

M---27/CWR
REFERENCE NUMBER

EMPLOYEE NAME: _Cruz-Packer, Linda_
(LAST)      (FIRST)      (MIDDLE)

SOC. SEC. NO.: ▓▓▓▓▓

ADDRESS: _____

COUNTY: _____    DATE OF BIRTH: _____

DEPARTMENT OF: _MAPS_
_Corrections_

DIVISION NAME: _Chas. Work Rel._

ORG NO.: _0608_

EMPLOYMENT DATE: _____  SEX: ____  RACE: ____

**TYPE OF CHANGE**

- ☐ NEW EMPLOYMENT
- ☐ FILL VACANT POSITION
- ☐ DATE OF VACANCY
- ☐ NEW HIRE  ☐ OA
- ☐ PROBATIONARY-REQ.
- ☐ PROVISIONAL-REQ.
- ☐ REINSTATEMENT
- ☐ RETURN TO DUTY
- ☐ PERMANENT  ☐ FT  ☐ PT
- ☐ TEMPORARY  ☐ FT  ☐ PT
- ☐ INTERMITTENT-REQ.
- ☐ 6-MO. TEMP.-REQ.
- ☐ CLASSIFIED EXEMPT
- ☐ 30-DAY  ☐ 90-DAY  ☐ 160-DAY
- ☐ STUDENT EXEMPT
- ☐ PROFESSIONAL PT EXEMPT

- ☐ SEPARATION CODE
- ☐ TRANS. TO _____
- ☐ TRANS. FROM _____
- ☐ RESIGNATION
- ☐ TERMINATION
- ☐ RETIREMENT
- ☐ LEAVE OF ABSENCE
- ☒ DISMISSAL
- ☐ LAYOFF
- ☐ DEATH
- ☐ SUSPENSION

FROM                TO
- ☐ MEDICAL         ☐ PERSONAL
- ☐ MILITARY        ☐ WC  ☐ ED
- ☐ PARENTAL        ☐ UL
- ☒ LAST WORKING DAY _5-15-98_
- ☒ LAST DAY ON PAYROLL _5-15-98_
- ☐ LEAVE PAID _____
- ☒ LEAVE BALANCE(S)
  AL ___0___   SL ___0___

- ☐ OTHER
- ☐ REQUEST NEW POSITION
- ☒ POSITION UPGRADE
- ☐ FUNDING SOURCE  ☐ UNIT CODE ONLY
- ☐ CERTIFIED PERMANENT
- ☐ SALARY ADJ  ☐ LONG. INC.
- ☐ SALARY ADVANCE/MERIT _____%
- ☐ PROMOTION  ☐ DEMOTION
- ☐ RECLASSIFICATION  ☐ REALLOCATION
- ☐ TEMPORARY UPGRADE
- ☐ LATERAL CLASS CHANGE
- ☐ NAME CHANGE-FORMER _____

- ☐ ADDRESS-FORMER _____

- ☐ PT TO FT  ☐ FT TO PT  ☐ PT TO PT

---

**CURRENT BUDGET INFORMATION**

WAGE/HR STATUS: c          EFFECTIVE DATE: _____

POS. #: _10T_  PAYROLL TITLE: _CORPRSP_

HOURLY: Y  N x  RATE: _13.52_    BASE MONTHLY RATE: _2,344.00_

NO. PAY PERIODS: _24_   EEO-4 CODE:   CLASS NO.: _8923_  PAY GRADE: _11_  STEP: ___

DOP COVERED/EXEMPT: _c_

| ACCOUNT NO. | | | | UNIT CODE | FTE | ANNUAL BASE | INCRE. |
|---|---|---|---|---|---|---|---|
| FUND | FY | ORG | ACT | | | | |
| 0450 | 98 | 0608 | 001 | 002-000 | 1.00 | 28,128.00 | 0 |

---

**PROPOSED BUDGET INFORMATION**

WAGE/HR STATUS:          EFFECTIVE DATE: _5-16N-98_

POS. #: ___  PAYROLL TITLE: ___

HOURLY: Y  N  RATE: ___    BASE MONTHLY RATE: ___

NO. PAY PERIODS: ___   EEO-4 CODE:   CLASS NO.: ___  PAY GRADE: ___  STEP: ___

DOP COVERED/EXEMPT:

| ACCOUNT NO. | | | | UNIT CODE | FTE | ANNUAL BASE | INCRE. |
|---|---|---|---|---|---|---|---|
| FUND | FY | ORG | ACT | | | | |
| | | | | | | | |

JUSTIFICATION

DEPARTMENT OF ADMINISTRATION USE ONLY
☒ PENDING    DATE/BY _5-27 MB_
☐ APPROVED   DATE/BY _6-18 QC_

DIVISION OF PERSONNEL USE ONLY
☐ APPROVED  ☐ DISAPPROVED  ☐ NOTED

SIGNATURE: _____

DATE: _____

APPROVALS        DEPT. SECRETARY/GOVERNOR

AGENCY SIGNATURE - AREA OFFICE        (DATE)

DIVISION
_Nancy Leonor Sweeter_  5/6/98
DIVISION SIGNATURE        (DATE)

DATE _____

DEPARTMENT OF ADMINISTRATION

DATE _____

GOVERNMENT EXHIBIT

No. 13

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

LINDA Y. CRUZ-PACKER,

          Appellant,

    v.

DEPARTMENT OF HOMELAND
    SECURITY,

          Agency.

DOCKET NUMBER
DC-0752-05-0636-B-1
DC-0752-04-0640-I-3

DATE: September 6, 2006

> Crystal A. G. Fisher, Esquire, Carolyn C. Eaglin & Associates, Alexandria, Virginia, for the appellant.

> Bryan A. Bonner, Esquire, and Remy Savin, Arlington, Virginia, for the agency.

## BEFORE
Michelle M. Hudson
Administrative Judge

## INITIAL DECISION

In *Cruz-Packer v. Department of Homeland Security*, 102 M.S.P.R. 64 (2006), the Board remanded the appellant's appeal from an action taken by the agency's Transportation Security Administration (TSA) removing her from the position of Special Agent (Criminal Investigator), SV-1811-J, effective November 18, 2004, for adjudication of the merits of the removal action.[1] The appellant also refiled her appeal from the agency's action indefinitely suspending

---

[1] The docket number for the remand appeal of the removal action is MSPB Docket No. DC-0752-05-0636-B-1.

her effective June 3, 2004, and the Board has jurisdiction over that action.[2] *See* 5 U.S.C. §§ 7511(a), 7512, 7513, 7701; 5 C.F.R. Part 752, Subpart D.

For the reasons that follow, both the indefinite suspension and removal actions are AFFIRMED.

## BACKGROUND

On June 4, 2002, the appellant was offered the position of Transportation Security Specialist, SV-1801-J, with the TSA. The appellant received a waiver to begin working pending the outcome of a successful OPM background investigation, and she began working in the TSA's Office of Internal Affairs and Program Review. *See* Initial Removal Appeal File (DC-0731-05-0636-I-1) (IRAF), Tab 4, Agency's Response, tab 6. Shortly thereafter, on June 30, 2002, the appellant was reassigned to the position of Special Agent (Criminal Investigator), SV-1811-J, which is a Federal law enforcement position.

In furtherance of OPM's background investigation, the appellant submitted an SF-86, and a "Declaration of Federal Employment," Form 306, to the agency both dated March 24, 2003. Once OPM's background check on the appellant was completed, it was forwarded to the TSA's Credentialing Program Office (CPO), for a suitability determination. The CPO determined that the appellant was unsuitable for employment, after discovering the existence of evidence which indicated that in May of 1998, the appellant had been terminated from her former position with the West Virginia Department of Corrections (along with the reasons for the termination), and after determining that the appellant had not disclosed the termination on her SF-86.

---

[2] The docket number for the refiled indefinite suspension appeal is MSPB Docket No. DC-0752-04-0640-I-3. This appeal had been previously dismissed without prejudice on two occasions, in initial decisions that were issued on August 25, 2004 and January 14, 2005. The refiled indefinite suspension appeal has been joined with the removal appeal for adjudication, because joinder will not adversely affect the interest of the parties. *See* 5 C.F.R. § 1201.36(a)(2).

Thereafter, by notice dated April 15, 2004, Lou Widawski, (Deputy Director, MIIA, Management Inspections Division),[3] proposed the appellant's indefinite suspension, based on the charge of "Falsification of an Official Employment Document." *See* Initial Indefinite Suspension File (IISF) (DC-0752-04-0640-I-1), Tab 7, Agency's Response, tab 4(C). The appellant made both an oral and written reply to the proposed action, and by decision dated June 1, 2004, John J. Rooney (Director, Management Inspections Division, U.S. Customs and Border Protection),[4] decided to indefinitely suspend her, effective, June 3, 2004. *Id.*, Agency's Response, tab 4(A).

By notice dated October 24, 2003, Robert Scanlon, Assistant Director, Personnel Security & Credentialing Program Office, proposed to remove the appellant based on the charge of "Unsuitability for Federal Service," and the appellant replied to the proposed action. IRAF, Tab 4, Agency's Response, tab 8. Because of the appellant's denial that she had been terminated from the position with the Department of Corrections in West Virginia, and evidence that's she submitted in support of that claim, the CPO initiated a supplemental background investigation.

On July 1, 2004, the appellant filed an appeal from her indefinite suspension, and in an initial decision that was issued on August 25, 2004, the appeal was dismissed without prejudice because the appellant had amended a formal EEO complaint that she had previously filed, to include her indefinite suspension, prior to filing her appeal with this Board, and 120 days had not passed.

---

[3]  Mr. Widawski was formerly the Deputy Director, Office of Internal Affairs and Program Review.

[4]  Mr. Rooney was formerly the Director, Office of Internal Affairs and Program Review.

On October 20, 2004, the appellant refiled her indefinite suspension appeal (DC-0752-04-0640-I-2).

By notice dated November 18, 2004, Joy S. Fairtile, Deputy Director, Office of Transportation Vetting and Credentialing, decided to remove the appellant effective upon her receipt of the notice.    IRAF, Tab 4, Agency's Response, tab 5.

In an initial decision that was issued on January 14, 2005, the indefinite suspension appeal was again dismissed without prejudice because the agency had taken action to remove the appellant. The appeal was dismissed in order to allow the indefinite suspension appeal to be joined with the removal appeal when it was filed.

On March 15, 2005, the appellant filed a formal EEO complaint concerning her removal action. IRAF-1, Tab 3. On July 14, 2005, the appellant filed her appeal to this Board from the removal action. IRAF, Tabs 1 and 3.

In an initial decision that was issued on October 6, 2005, the removal appeal was dismissed for lack of Board jurisdiction.

In *Cruz-Packer v. Department of Homeland Security*, 102 M.S.P.R. 64 (2006), the Board granted the appellant's petition for review, reversed the October 6, 2005 initial decision, and found that it has jurisdiction over the appellant's removal appeal under 5 U.S.C. § 7511(a)(1).    Thus, the Board remanded the appeal for adjudication of the merits of the removal action.

The indefinite suspension appeal was reopened (DC-0752-04-0640-I-3), and the removal and indefinite suspension appeals were joined for adjudication. A hearing was held on both matters on July 18, 2006. The record remained open until July 24, 2006, for the receipt of additional evidence which the AJ ordered the agency to submit during the July 18, 2006 hearing.

5

## ANALYSIS AND FINDINGS

Burdens of proof

The agency has the burden to prove the merits of its case by a preponderance of the evidence, and the appellant has the burden to prove her affirmative defenses by a preponderance of the evidence. 5 C.F.R. § 1201.56(a). Preponderance of the evidence is defined by regulation as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). In addition, the agency must show that the penalty it selected was within the bounds of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302, 306 (1981).

The Indefinite Suspension

The agency has established that the appellant was properly placed on indefinite suspension.

Indefinite suspensions can be effected, pending criminal proceedings or inquiry, under certain circumstances in which an agency believes that the employee's retention on active duty could result in damage to Federal property, be detrimental to government interests, or be injurious to the employee, his fellow workers, or the public. 5 C.F.R. §§ 752.401(a)(2), 752.402(e); *Jones v. Department of the Navy*, 48 M.S.P.R. 680, 689 (1991), *Thomas v. General Services Administration*, 756 F.2d 86, 88, cert. denied, 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985). The essential element of a valid indefinite suspension is that it have a condition subsequent that will bring the suspension to an end. *Jones*, 48 M.S.P.R. at 686. The Board has also held that an agency is not required to prove the misconduct at issue in an indefinite suspension, but only examination into that conduct. *Larson v. Department of the Navy*, 22 M.S.P.R. 260 (1984).

Here, the agency issued a notice of proposed indefinite suspension to the appellant pending an investigation into the appellant's allegation that she was not

terminated from the State of West Virginia, Division of Corrections, and that she did not falsify her SF-86 that she completed as a part of her employment requirements.   IISF, Tab 7, Agency's Response, tab 4(C).   The appellant responded to the proposed suspension, and by decision dated June 1, 2004, the agency decided to indefinitely suspend the appellant "pending completion of the Agency's investigatory process and any administrative action that may follow". *Id.*, Agency's Response, tab 4(A).

The record shows that the agency was conducting an investigation into serious allegations concerning information that the appellant had provided on her SF-86 when it made the decision to indefinitely suspend her, and that it had not yet determined what, if any, administrative action would be taken.   *See* Testimony of Lou Widawski and John J. Rooney.   It is also undisputed that the appellant was provided with the required procedural safeguards prior to implementing the suspension.[5]   I find that the indefinite suspension had an identifiable end, was for such cause as will promote the sufficiency of the service, and that the chosen penalty was reasonable under the circumstances. Accordingly, I find the agency has proven by preponderant evidence that the appellant was properly placed on indefinite suspension effective June 3, 2004.

The Removal Action

The agency has proven its charge by a preponderance of the evidence.

In the October 24, 2003 Notice of Proposed Removal, the agency charged the appellant as follows:

> The Office of Personnel Management, on behalf of TSA, conducted a background investigation to determine your suitability for employment and eligibility for access to national security

---

[5]   The appellant acknowledged during the telephonic prehearing conference that was held on July 10, 2006, that she is not alleging that there were any procedural errors regarding the indefinite suspension. RAF, Tab 9, Summary of Prehearing Conference.

information. The results of the investigation raise serious issues that render you unsuitable for employment.

Reason: Unsuitability for Federal Service

The results of your background investigation revealed the following:

Specification #1: The OPM Investigative Report reflects that you were terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections on 05/21/98 for abuse of inmates free time, abuse of inmate privileges, i.e. visits/furloughs, no respect for staff assignments made by the Director of Security, theft of facility food, having inmates drive vehicles, which were not authorized to do so, directing an inmate who was incarcerated for 3rd offense DUI and Driving on a suspended license, to drive personal vehicle (a felony), taking inmates to your home without permission or notification of their whereabouts, taking inmates to the South Charleston Recreational facility without permission or notification of their whereabouts, making improper purchases, utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

Specification #2: On the SF-86 that you signed and completed on 03/24/03, Question #22, Your Employment Record asks, Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. You responded in the affirmative; however, you listed 08/97 and selected reason #1 - Fired from job with Volunteer's of America. New York, but did not list being Fired from position with State of West Virginia Department of Military Affairs & Public Safe Division of Corrections in 05/21/98. In your response to this question, you failed to fully disclose information regarding your employment history.

\*\*\*

All TSA employees are required to demonstrate behavior, which meets federal government standards for trustworthiness, judgment, and reliability. As a federal law enforcement officer, this responsibility and standards are heightened. The above information reported in your background investigation reflects behavior that includes repeated and serious incidents of misconduct, **falsifying a federal document (SF-86)** and renders you unsuitable for employment with TSA.

*Emphasis Supplied. See* IRAF, Tab 4, Agency's Response, tab 8.

The agency's charge concerning the appellant's SF-86, is essentially a "falsification" charge.[6]  To sustain a falsification charge, the agency must prove by preponderant evidence that appellant knowingly supplied incorrect information with the specific intent of defrauding, deceiving, or misleading the agency.  The intent to defraud, deceive, or mislead, is a state of mind which generally is proven by circumstantial evidence.  *Haack v. U.S. Postal Service,* 68 M.S.P.R. 275 (1995).

With regard to the first specification of the charge, the appellant argues that she was not terminated from her position with the Department of Corrections in West Virginia, and that she had verbally "resigned" from that position due to a

---

[6]  The agency's representative argued in his closing remarks, in essence, that "Specification 1" of the agency's charge was that the OPM Investigative Report reflected that the appellant had been terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections, on May 21, 1998, for numerous incidents of misconduct. He asserted that the agency was not charging the appellant with the actual incidents of the misconduct for which she was terminated, and that it is not required to prove that conduct.  The appellant's representative argued in her closing remarks that the merits of the charges for which the West Virginia Department of Corrections allegedly terminated her should be adjudicated in this appeal.

The Board has held that an agency is required to state the reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply, but that the charge must be viewed in light of the accompanying specifications and should not be technically construed.  *Tom v. Department of the Interior,* 97 M.S.P.R. 395 (2004).

Having reviewed the agency's charge as cited in the October 24, 2003 proposal notice, in light of the accompanying specifications, I have determined that this is essentially a "falsification" of an employment application case, despite the fact that the agency's language in the November 18, 2004 decision letter indicated that the agency made findings concerning the merits of the appellant's alleged termination by the West Virginia Department of Corrections.  Thus, the agency will not be required to prove the reasons given by the West Virginia Division of Corrections for its decision to "dismiss" the appellant from her position in 1998, and the actual incidents of misconduct charged in support of the dismissal will not be considered to support the removal action.

number of reasons, including, but not limited to, a perceived racially discriminatory and hostile work environment, the notification that her ailing husband (who was then living in New York State) had been diagnosed with a terminal illness and given a short duration of time to live, the announcement of biased and unfounded allegations of misconduct lodged against her (which she contends were concocted by two of her direct supervisors). *See* Remand Removal Appeal File (RRAF), Tab 6, Appellant's Prehearing Submissions. Additionally, the appellant argues that she had no knowledge that her resignation had been recorded as a dismissal by West Virginia Department of Corrections at the time that she completed the employment forms that are at issue in this appeal. *Id*

In response to the agency's proposed removal action, the appellant submitted a sworn Declaration from Otis Cox,[7] dated January 16, 2003. *See* IRAF, Tab 4, Agency's Response, tab 9. In this Declaration, Mr. Cox indicated that a Form WV-11 was required to complete a personnel action, that he was the only official authorized to execute such a document, and that he had not executed a Form WV-11, terminating the appellant.[8] *See id*.

During the hearing, the appellant testified essentially as follows. Her work environment at the West Virginia Department of Corrections was extremely hostile and racist. It was reported that she was going to be made the Warden of the correctional facility, and several individuals orchestrated a smear campaign against her. She was suspended by Mr. Ervin, the Administrator, based on allegations made by an inmate. She subsequently had a conversation with Mr.

---

[7] Mr. Cox stated that between 1997 and 2001, he served as Secretary for Public Safety for the State of West Virginia (a Cabinet level position that reported directly to the Governor), and that he had ultimate responsibility over a number of departments for the State of West Virginia, including the Department of Corrections. IRAF, tab 4, Agency's Response, tab 9.

[8] I note that the record also contain a sworn affidavit from Mr. Cox dated April 27, 2004, the contents of which will be discussed later in this decision.

Cox, and although she does not know the exact word she used when speaking with him, it was her understanding that when she left (to take care of her husband), she would not return. She did not put her resignation in writing because she was in an "interim position." She never received a copy of the termination letter that informed her that she was being terminated from her position. The termination letter did not have her apartment number on it, and she was never told orally that she was terminated. She did not commit any of the misconduct charged in the termination letter, with the exception of the charge that she had her driver pick up her daughter from school at 7:00 p.m. one night. She did not carefully read the SF-86 and Declaration forms when she filled them out, as she was preoccupied with personal problems. She did not list her situation with the West Virginia Department of Corrections on the SF-86, because she thought that the "continuation page" on the Optional Form 306 (which she filled out at the same time) was the continuation page for both documents. *See also* the appellant's January 27, 2004 Declaration, RRAF, Tab 8, Appellant's Ex. C.

In support of its charge, the agency submitted a copy of a May 21, 1998 letter from Mr. Manfred G. Holland, Deputy Commissioner, to the appellant, in which he dismissed her from her position "effective immediately." IRAF, tab 4, Agency's Response, tab 12. Mr. Holland noted that, on March 3, 1998, the appellant was advised that her acceptance of a limited term/temporary position did not provide her any rights under the Civil Service System. *Id.* Mr. Holland also noted that the appellant was hired as a limited term/temporary employee on March 16, 1998, and that she, therefore, could be released from employment without cause. Mr. Holland, stated, however, that the reason for the appellant's dismissal was his "loss of confidence in his ability to effectively discharge the duties and responsibilities of [her] position," and he reiterated his concerns of: (1) misuse of inmates free time; (2) misuse of inmates privileges, i.e. Visits/Furloughs; (3) utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy, and

(4) making improper purchases. *Id.* The appellant was also advised that she could either meet with Mr. Holland in person, or present him with a written explanation of the reasons why she might think the action was inappropriate, within 15 days of receipt of the letter. *Id.*

The agency also submitted a copy of a sworn Declaration from Donald M. Ervin, Administrator for the Charleston Work Release Center (the appellant's former immediate supervisor), dated April 22, 2004. *See* IRAF, Tab 4, Agency's Response, tab 10. In his Declaration, Mr. Ervin stated that, during the appellant's employment she was involved in improprieties. *Id.* Mr. Ervin also stated that he suspended the appellant pending the outcome of his investigation, and that as a result of the improprieties, he recommended the appellant's dismissal to the then Deputy Commissioner for the Division of Corrections, Manfred G. Holland. Mr. Ervin additionally stated that Mr. Holland agreed with his recommendations, and that he (Mr. Holland) dismissed (fired) the appellant on May 21, 1998. *Id.*

The agency submitted a sworn affidavit from Manfred G. Holland, former Deputy Commissioner for the Division of Corrections, dated April 22, 2004. *Id.*, tab 11. In his sworn affidavit, Mr. Holland, stated, in pertinent, as follows. While the appellant was in the Program Specialist position at the Charleston Work Release Center, Mr. Ervin advised him that the appellant might possibly be involved in rule violations in the performance of her duties, and he instructed Ms. Ervin to investigate those allegations. *Id.* The outcome of that investigation prompted him to issue the May 21, 1998 letter dismissing the appellant for the reasons outlined in that letter. *Id.* Prior to issuing the termination letter, he spoke with Otis Cox, advising him of the problem with the appellant, and his belief that she should no longer be employed at the Charleston Work Release Center or within the Division. *Id.* Mr. Cox advised him to "do what I had to do." *Id.* He had no knowledge of the appellant resigning, or requesting a resignation in lieu of termination. *Id.*

In addition, the agency submitted a sworn affidavit from Otis G. Cox, dated April 27, 2004.[9] IRAF, Tab 4, Agency's Response, tab 13. In that affidavit, Mr. Cox stated, in pertinent part, as follows. He reviewed Mr. Holland's dismissal letter to the appellant for the first time, because Mr. Holland had not sent him a copy of the letter. *Id.* If Mr. Holland had discussed the letter with him, he would have agreed on the dismissal. *Id.* He had assumed that the appellant resigned because he had never seen Mr. Holland's termination letter, nor had he signed a WV-11 personnel form indicating a termination. *Id.* His department had a procedure in place that, on any special hire or dismissal, the Form WV-11 would come through his office. *Id.* Mr. Holland had been given the signature authority to hire and to terminate by letter, but in order to close out the personnel action, a Form WV-11 would have been needed to notify the Division of Personnel, and to take the appellant off the payroll. *Id.* It appears to him that something fell through the cracks. *Id.* The letter to the appellant from Mr. Holland was official, and it will stand as a letter of termination. *Id.* There must be a Form WV-11 some place in the Division of Personnel which brought closure to the appellant's termination. *Id.* He never discussed with the appellant how she exited the organization, and he had no mutual agreement with her regarding the issue of her leaving. *Id.*

Robert J. Scanlon, Division Director, Operational Process & Performance Metrics, TSA, [10] testified, in pertinent part, as follows. The "Declaration of Employment," Optional Form 306, is not the document used to initiate background investigations. *Id.* It is the SF-86 that goes to OPM to initiate background investigations. *Id.* He believes that both the SF-86 and the Optional

---

[9] As noted previously, the record also contains a sworn Declaration from Mr. Cox dated January 16, 2003.

[10] Mr. Scanlon was formerly the Assistant Director, Personnel Security and Credentialing Program Office.

Form 306 are generally given to employees at the same time. *Id.* He does not know if employees are told that they are "stand alone" documents, but the forms are self instructive as to what information needs to be included on them. *Id.* Information that is not included on the SF-86 would be problematic, because OPM would not be aware of it when conducting its background investigation. *Id.*

Joy Fairtile was the Deputy Director, Office of Transportation Vetting and Credentialing, and she was responsible for the agency's credentialing program during the time period at issue. Ms. Fairtile testified, in pertinent part, concerning the agency's charge as follows. She learned during the appellant's suitability determination that the appellant had been terminated from the West Virginia Department of Corrections. *Id.* This information could have made the appellant unsuitable for employment, and it also may have been a problem for her concerning her eligibility for a security clearance. *Id.* In response to the matter concerning the appellant's employment with the West Virginia Department of Corrections, the appellant claimed that she ran out of room on the SF-86. *Id.* The appellant also claimed that she was not terminated from the position with the West Virginia Department of Corrections, but that she left by mutual decision with Mr. Cox. *Id.* Mr. Cox denied that he made any mutual agreement with the appellant concerning her leaving her employment with that agency. *Id.* The instructions on the SF-86 are in very clear and in plain language, and the form clearly tells you to use additional sheets for additional explanations. *Id.* She concluded that the information concerning the appellant that was provided to the agency as a result of OPM's background investigation was correct. *Id.* Although there was a signature missing from the Office of the Governor on the Form WV-11, that effected the appellant's dismissal from the West Virginia Department of Corrections, they received information that the authority for the personnel action had been delegated. *Id.* Sometimes personnel forms do not contain all signatures that the signature lines on the form provides for. *Id.* She does not recall receiving any evidence indicating that the appellant actually received the

termination letter from the West Virginia Department of Corrections, but she does not believe that the appellant did not know that she had been terminated. *Id.*

The agency submitted copies of the "Suitability Worksheet" dated October 21, 2003, in which Personnel Security recommended that the appellant be found unsuitable for employment with the TSA as a Special Agent, because the investigation reflected that she had been terminated from her position with the West Virginia Division of Corrections on May 21, 1998, and because she failed to disclose the termination on her SF-86, dated March 24, 2003. IRAF, Tab 4, Agency's response, tab 8. The agency also submitted a copy of OPM's "Report of Investigation" dated June 11, 2003. *Id.*

The record also contains copies of the appellant's SF-86, and her "Optional Form 306," both dated March 24, 2003, that she submitted to the agency. RRAF, Tab 8, Appellant's Ex. C. In addition, the agency submitted a copy of the Form WV-11, effecting the appellant's dismissal from her position with the West Virginia Department of Corrections on May 15, 1998. IRAF, Tab 4, Agency's Response, tab 14. The WV-11 was signed by a "Nancy Swecker" on May 26, 1998, and it contains another signature by an official from the Department of Administration, that is illegible.

Having considered the record evidence in this appeal, I find that a reasonable person, considering the record as a whole, would accept as sufficient to find it more likely to be true than untrue that Mr. Holland had the authority to dismiss the appellant from her position with the West Virginia Department of Corrections, and that he in fact did so, effective May 15, 1998. In particular, the sworn affidavits and declarations from Messrs. Cox, Ervin and Holland, as well as copies of the May 21, 1998 termination letter and the Form WV-11, effecting the termination, support such a finding. I note that, while the record does not contain any evidence of the appellant's actual receipt of the May 21, 1998 termination letter from the West Virginia Department of Corrections, the record indicates that the appellant was aware that she had been terminated from that

position prior to filling out the Form SF-86 that is at issue. The termination letter was apparently sent to the correct address, although the appellant's apartment number may have been omitted.[11]   Nonetheless, I find it unlikely that the apartment number, if missing, would have rendered the termination letter undeliverable, even if it caused a delay.  Moreover, it is implausible that the incumbent of a position at such a high level as the appellant's at the West Virginia Department of Corrections, would not have submitted a resignation in writing, had she actually resigned her position as she contends, which further indicates that she had not resigned, and that she would have known that she had been terminated.

My assessment of the appellant's credibility concerning her contention that she did not have any knowledge that she had been terminated was also significantly affected and diminished by her statement on the "Declaration for Federal Employment," Optional Form 306, which she signed on March 24, 2003. *See* RRAF, Tab 8, Appellant's Ex. C. On that form, in the "Continuation Space" at Question 16, the appellant listed her position with the West Virginia Department of Corrections, and she stated, in pertinent part:

> Job promised could not be granted-Due to start up cost.  Couple with family stress, relocation, **mutual agreement between Director of Public Safety (Otis Cox) & myself to leave.**

*See id.*  Mr. Cox stated, unequivocally, in his April 27, 2004 affidavit that he never discussed with the appellant how she exited the organization, and he had had "no mutual agreement with her regarding the issue of her leaving." IRAF, Tab 4, Agency's Response, tab 13.  I find Mr. Cox's sworn statement in this regard to be more credible than the appellant's statement on her March 24, 2003 Optional Form 306, to the contrary, since the record does not indicate any reason

---

[11]   The appellant testified that her apartment number was omitted from the address on the May 21, 1998 termination letter, and thus, it is possible that the apartment number was also omitted from the mailing address on the envelope.

why Mr. Cox would have had to be untruthful concerning the matter. I note also in this regard that the appellant testified that she and Mr. Cox were "close personal friends," and the record indicates that Mr. Cox is no longer employed with the State of West Virginia in any capacity.[12] I note also that the appellant's credibility concerning her lack of any knowledge that she had been terminated by the West Virginia Department of Corrections was also significantly diminished by what I found to be her inconsistent and contradictory testimony at the hearing concerning her alleged "mutual agreement" with Mr. Cox to leave her position.

With regard to Specification 2 of its charge, I find the appellant's explanation that she did not put anything information about her position with the West Virginia Department of Corrections on the SF-86, at Question 22, because she was preoccupied with personal problems, because she did not carefully read the SF-86 and Optional Form 306 when she filled them out, because she ran out of space when filling out Question No. 22 on the SF-86, and because she believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that she put the information on the "continuation sheet" on the Optional Form 306, to be unpersuasive. I have reviewed the directions on the SF-86, at Question 22, which the appellant signed on March 24, 2003, and I find that the directions clearly instructed her to disclose that any of the following that had happened to her in the last 7 years, including that she had been "fired from a job," that she "quit after being told that [she would] be fired," that she left a job by mutual agreement following allegations of misconduct," that she "left a job by mutual Agreement following allegations of unsatisfactory performance," or that she "left a job for reasons under unfavorable circumstances." RRAF, Tab 8, Appellant's Ex. C. The instructions on the SF-86 also clearly informed the appellant that she

---

[12]    Mr. Cox stated in his April 27, 2004 Affidavit that he has been employed as the Deputy Administrator, National Highway Traffic Safety Administration, U.S. Department of Transportation since June 15, 2003.

was to provide "additional answers" to "other items," which would have included a continuation of her answer to Question 22, on page 9, at the end of the form. It is unlikely, given the clear instructions on the form, that the appellant would have believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that she correctly put the information concerning her employment with the West Virginia Department of Corrections on the "continuation sheet" of the Optional Form 306, and omitted the information from the SF-86. I agree with the agency that such an error by the appellant is even more implausible, in light of the nature of her position as Criminal Investigator, and the necessity that the incumbent of such a position be meticulous when filling out such forms. I note also that the appellant certified on the SF-86, that her statements that she provided on that form were true, complete and correct to the best of her knowledge and belief, and that she was aware that knowing and willful false statements are punishable by fines and/or imprisonment.

It is important to note that, even if I were to believe the appellant's arguments that she "resigned" (and was not terminated) from her position with the West Virginia Department of Corrections, that she ran out of space when filling out Question No. 22 on the SF-86, that because she believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that consequently, she put the information on the "continuation sheet" of the Optional Form 306 instead of the SF-86, the record evidence indicates that the information that she provided on the Optional Form 306, was nonetheless untruthful. As discussed previously, the instructions on the SF-86, required that the appellant disclose any of the following that had happened to her in the last 7 years, including that she had been "fired from a job," that she "quit after being told that [she would] be fired," that she left a job by mutual agreement following allegations of misconduct," that she "left a job by mutual Agreement following allegations of unsatisfactory performance," or that she "left a job for reasons under unfavorable circumstances." The appellant admits that she had received

notice from the West Virginia Department of Corrections concerning the allegations of misconduct that ultimately resulted in her termination, and that she had been suspended during the investigation of those allegations. The appellant, however, failed to provide information on **both** the SF-86 and the Optional Form 306, concerning the misconduct allegations, when clearly such information was required by Question 22 on the SF-86, under code (3) left a job by mutual agreement following allegations of misconduct, code (4) left a job by mutual agreement following allegations of unsatisfactory performance, and code (5) left a job for other reasons under unfavorable circumstances. Moreover, as I previously found, the information concerning her employment with the West Virginia Department of Corrections that the appellant did provide on the Optional Form 306 was false, namely that there was "**mutual agreement between Director of Public Safety (Otis Cox) & myself to leave.**"

For all of the above reasons, I find that that appellant knowingly supplied incorrect information on her March 24, 2003 SF-86. See *Haack v. U.S. Postal Service*, 68 M.S.P.R. 275; *See Pappas v. Office of Personnel Management*, 76 M.S.P.R. 152, 158-59 (1997). I also find that the agency correctly determined that the appellant was unsuitable for the Criminal Investigator position based on her falsification of that document, and the charge is sustained.

Nexus

Appellant did not specifically raise an issue regarding nexus. In any event, I find that falsification of an SF-86, as here, has an inherently adverse affect on the efficiency of the service, as it raises serious doubts about an appellant's honesty and fitness for employment. *See, e.g., Scott v. Department of Justice*, 69 M.S.P.R. 211, 242 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).

Appellant failed to prove her affirmative defenses

During the prehearing conference held on July 10, 2006, I informed the parties that I would adjudicate only those affirmative defenses that were

discussed, clarified and memorialized in the summary of that conference. See RRAF, Tab 9. The appellant clarified that she is alleging discrimination (disparate treatment) on the basis of race (African American), and sex (female), in connection with her removal. The appellant also claimed that the agency retaliated against her because of her prior EEO activities in October of 2003, and that she filed a formal EEO complaint at that time.

Race and Sex Discrimination

To establish a prima facie case of unlawful discrimination based on race and sex through circumstantial evidence, an appellant must show: (a) that she is a member of a protected group; (b) that she was similarly situated to an individual who was not a member of her protected group; and (c) that she was treated more harshly or disparately than the individual who was not a member of her protected group. *See Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 497 (1997).

Once the appellant has established a prima facie case, the burden of going forward shifts to the agency to produce evidence showing a legitimate nondiscriminatory reason for the different treatment. *See Creer v. U.S. Postal Service*, 62 M.S.P.R. 656, 661 (1994). It can do this by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for its action, regardless of whether the agency actually proves its case. *Id.* The appellant must then prove the agency's reason is merely a pretext for prohibited discrimination. *Id.* The appellant must show both that the stated reason was false, or not the real reason for the action, and that discrimination was the real reason for the action. *See Buckler*, 73 M.S.P.R. at 497 [citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)].

In order to be similarly situated, the comparator employee must be in the same work unit, must have the same supervisors, and the misconduct must be substantially similar. *See Brown v. Defense Logistics Agency*, 65 M.S.P.R. 436, 445 (1994), *aff'd*, 67 F.3d 319 (Fed. Cir. 1995) (Table); *Thomas v. Department of*

*Defense*, 66 M.S.P.R. 546, 551, *aff'd*, 64 F.3d 677 (Fed. Cir. 1995); *Archuleta v. Department of the Air Force*, 16 M.S.P.R. 404, 407 (1983).

When questioned concerning alleged similarly situated employees, the appellant named a coworker, Janice[13] Palvick (a white female), a Special Agent, who she claimed was employed in the same division as she. *See* RRAF, Tabs 7 and 9. After the prehearing telephone conference held on July 10, 2006, by submission of that same date, the appellant additionally alleged that Ed Gomez, a Director who she stated was employed in the San Francisco area, should be deemed an appropriate comparator as well. *See* RAF, Tab 7.

With regard to Mr. Gomez, however, it appeared that he did not work in the same work unit as the appellant, or that he had the same supervisor. Thus, the appellant has not shown that he was a comparator employee.

By submission dated July 17, 2006, the agency moved to exclude Janice Pavlick as an approved witness for the appellant, arguing that she was not similarly situated to the appellant. RRAF, Tab 10. The agency argued that, since July of 2002, Ms. Pavlick has been a supervisor, unlike the appellant who has never served as a supervisor. *Id.* The agency also argued that Ms. Pavlick has never been supervised by either the proposing or the deciding official who were involved in the appellants' removal. *Id.* Additionally, the agency argued that unlike the appellant, Ms. Pavlick never experienced any problems regarding the completion of her SF-86, nor was she ever terminated from a prior position for misconduct. *Id.*

While the appellant alleged that Ms. Pavlick was a comparative employee for her disparate treatment claim, she has not disputed the agency's proffer concerning the above matters, nor has she met her burden in this regard. In any

---

[13] The appellant named a "Janice Plavick" during the July 10, 2006 prehearing telephone conference, as a similarly situated employee, but subsequently informed me by submission dated July 10, 2006, that the employee's name is "Janice Plavick".

event, the agency has articulated a legitimate nondiscriminatory reason for its actions (the unsuitability charge which I have sustained), and the appellant has not established that the agency's charges constitutes a pretext for discrimination. Thus, the appellant's affirmative defenses of discrimination fail.

Reprisal for EEO Activity

To establish retaliation for EEO complaint activities, appellant must show that she engaged in protected activity; the accused official or officials knew of the activities; the agency action under review could have been retaliation under the circumstances; and after carefully weighing the motive to retaliate, that there is a genuine nexus between the alleged retaliation and the disputed agency action. *See Trammell v. Department of Veterans Affairs*, 60 M.S.P.R. 79, 88-89 (1993). In determining whether the appellant has established a nexus between the alleged retaliation and the adverse action, the Board must weigh the intensity of the motive to retaliate against the gravity of the misconduct. *Id*. The proper perspective for this determination is the gravity of the misconduct as it appeared to the deciding official at the time he took the action. *Jefferson*, 81 M.S.P.R. at 612.

The appellant argued that she filed a formal EEO complaint in October of 2003, and she clarified during the prehearing conference that a Hector Santana was the management official who she is claiming retaliated against her because of her EEO activities. *See* AF, Tab 9. The appellant, however, has failed to show that Hector Santana played any role in Ms. Fairtile's (the deciding official's) decision to remove her. Moreover, Ms. Fairtile testified that she did not know that the appellant had filed an EEO complaint when she made the decision to remove her, and the record does not indicate otherwise. Thus the appellant failed to meet her burden of showing that there was a genuine nexus between the alleged retaliation and her removal action, and her defense of retaliation thus fails.

22

## The penalty

Penalty determinations are judgment calls within the discretion of the employing agency. *LaChance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). The Board may not independently determine penalties. *Id*. at 1259. Rather, in a case in which all of the charges against an appellant are sustained, the Board reviews the penalty selection to determine whether it is so excessive as to be an abuse of discretion or is otherwise arbitrary, capricious, or unreasonable. *Douglas*, 5 M.S.P.R. at 302. In such cases, the Board will review an agency-imposed penalty to determine if the agency conscientiously considered all of the relevant mitigating factors and exercised management discretion within tolerable limits of reasonableness. *Id*. at 306.

In conducting its review, the Board will weigh these factors with the agency's discretionary authority to carry out its managerial functions in maintaining employee discipline and overall efficiency. *Id*. at 302. The Board's function in this regard is not to displace management's responsibility, but to assure that managerial judgment has been properly exercised. *Id*. Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the agency's judgment clearly exceeded the bounds of reasonableness. *Hylick v. Department of the Air Force*, 85 M.S.P.R. 145, 153 (2000).

In evaluating a penalty determination, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or was frequently repeated. *Hylick*, 85 M.S.P.R. at 153.

There is no *per se* rule that removal is always warranted where an employee has falsified documents. *Perez v. U.S. Postal Service*, 75 M.S.P.R. 503, 506 (1997). However, the Board has held that law enforcement positions require a higher standard of conduct and degree of trust. *See, e.g., Padilla v.*

*Department of Justice,* 64 M.S.P.R. 416, 423 (1994), *aff'd,* 64 F.3d 676 (Fed. Cir. 1995) (Table).

In her November 18, 2004 decision letter, Ms. Fairtile stated that the appellant's conduct was serious, and that it called into question her judgment, integrity veracity and trustworthiness. IRAF, Tab 4, Agency's Response, tab 8. Ms. Fairtile also stated that, as a Federal law enforcement officer, the appellant should be held to the highest standards of conduct and performance. *Id.* Additionally, Ms. Fairtile noted that the appellant had expressed no remorse, and that she had not taken any responsibility for her actions. *Id.*

During her testimony, Ms. Fairtile stated that she does not believe that the appellant would have been offered her position, had the agency knew of her situation with the West Virginia Department of Corrections. Ms. Fairtile also stated that she considered the appellant's 5 years of service, but that her length of service was outweighed by her misconduct. She also testified that she considered that, in June of 2003, the appellant had been previously suspended for a five day period, for "violation of travel card policy." *See* RAF, Tab 13.

While I have also considered all of the appellant's defenses raised in connection with the agency's charge in my determination of the reasonableness of the penalty imposed in this case, I find that removal is reasonable under all of the circumstances. The appellant's falsification of an SF-86, a form which was required for her law enforcement position, unfortunately, directly implicates her honesty and fitness for employment. *Pappas,* 76 M.S.P.R. at 161; *Hanker v. Department of the Treasury,* 73 M.S.P.R. at 168; *Devitto v. Office of Personnel Management,* 61 M.S.P.R. 297, 302 (1994).

24

For all of these reasons, I find that the agency considered the relevant *Douglas* factors, and the penalty of removal is reasonable under the specific circumstances of this case.

## DECISION

Both the agency's indefinite suspension and removal actions are AFFIRMED.

FOR THE BOARD:

Michelle M. Hudson
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on ___OCT 1 1 2006___, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial

decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (see 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

### JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Mail          Linda Y. Cruz-Packer
                         4800 Megan Drive
                         Clinton, MD 20735

Appellant Representative

Electronic Mail          Crystal A. G. Fisher, Esq.
                         Carolyn Eaglin & Associates
                         431 North Lee Street
                         Alexandria, VA 22314

Agency Representative

U.S. Mail                Bryan A. Bonner, Esq.
                         Remy Savin
                         Department of Homeland Security
                         Office of Chief Counsel
                         Transportation Security Administration
                         TSA Headquarters, East Tower
                         601 S. 12th Street, 12th Floor
                         Room 214S, TSA-2
                         Arlington, VA 22202-4220


September 6, 2006                    Sheila R. Stanton
(Date)                               Sheila R. Stanton
                                     Paralegal Specialist

Docket No. DC-0752-05-0636-B-1
Party:        Agency's Representative


Bryan A. Bonner, Esq.
Remy Savin
Department of Homeland Security
Office of Chief Counsel
Transportation Security Administration
TSA Headquarters, East Tower
601 S. 12th Street, 12th Floor
Room 214S, TSA-2
Arlington, VA 22202-4220

GOVERNMENT EXHIBIT
No. 14

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LINDA Y. CRUZ-PACKER,  
      Appellant,

v.

DEPARTMENT OF HOMELAND  
  SECURITY,  
      Agency.

DOCKET NUMBERS  
DC-0752-05-0636-B-1  
DC-0752-04-0640-I-3

DATE: January 31, 2007

Crystal A. G. Fisher, Esquire, Carolyn Eaglin & Associates, Alexandria, Virginia, for the appellant.

Bryan A. Bonner, Esquire, and Remy Savin, Arlington, Virginia, for the agency.

### BEFORE

Neil A. G. McPhie, Chairman  
Mary M. Rose, Vice Chairman  
Barbara J. Sapin, Member

### FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d). Therefore, we DENY the petition for review. The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

<u>Discrimination Claims: Administrative Review</u>

You may request the Equal Employment Opportunity Commission (EEOC) to review this final decision on your discrimination claims. *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). You must send your request to EEOC at the following address:

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, DC 20036

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

<u>Discrimination and Other Claims: Judicial Action</u>

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with

the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f); 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request the United States Court of Appeals for the Federal Circuit to review this final decision on the other issues in your appeal. You must submit your request to the court at the following address:

United States Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.


FOR THE BOARD:

                                    Bentley M. Roberts, Jr.
                                    Clerk of the Board

Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:

Electronic Mail          Crystal A. G. Fisher, Esq.
                         Carolyn Eaglin & Associates
                         431 North Lee Street
                         Alexandria, VA 22314

Electronic Mail          Linda Y. Cruz-Packer
                         4800 Megan Drive
                         Clinton, MD 20735

U.S. Mail                Bryan A. Bonner, Esq.
                         Department of Homeland Security
                         Office of Chief Counsel
                         Transportation Security Administration
                         TSA Headquarters-TSA-2, East Bldg
                         601 S. 12th Street, 12th Floor
                         Arlington, VA 22202-4220

U.S. Mail                Remy Savin
                         Department of Homeland Security
                         Transportation Security Administration
                         East Building, 12th Floor, TSA-2
                         601 South 12th Street
                         Arlington, VA 22202-4220


January 31, 2007                    *Jacquelin Wilson*
_____                     _____
    (Date)                          Jacquelin Wilson
                                    Paralegal Specialist

Docket No. DC-0752-05-0636-B-1
Party:        Agency's Representative


Bryan A. Bonner, Esq.
Department of Homeland Security
Office of Chief Counsel
Transportation Security Administration
TSA Headquarters-TSA-2, East Bldg
601 S. 12th Street, 12th Floor
Arlington, VA 22202-4220

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LINDA CRUZ-PACKER,                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      Civil Action No. 07-1235 (RWR)
                                  )
MICHAEL CHERTOFF,                 )
Secretary of Homeland Security,   )
Department of Homeland Security,  )
                                  )
            Defendant.            )
_____ )


<u>ORDER</u>

        UPON CONSIDERATION of Defendant's Motion to Dismiss, any Opposition thereto

and for good cause shown, it this _____ day of _____, 2007.

        ORDERED that Defendant's motion should be and hereby is granted; and it is

        FURTHER ORDERED that Plaintiff's complaint be and hereby is dismissed.


_____                          _____
Date                                   United States District Judge


Copies to:

Defendant's Attorney                   Pro Se Plaintiff

WYNEVA JOHNSON                         Linda Cruz-Packer
Assistant United States Attorney       4800 Megan Drive
555 Fourth Street, N.W., E-4106        Clinton, Maryland 20735
Washington, DC 20530