**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LINDA CRUZ-PACKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1235 (RWR)** |
| | ) | |
| **MICHAEL CHERTOFF,** | ) | |
| **Secretary of Homeland Security,** | ) | |
| **Department of Homeland Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S "MEMORANDUM OF POINTS
AND AUTHORITIES DENYING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT"**

Plaintiff filed this civil action challenging her termination by the Transportation

Security Administration (TSA). TSA had conditionally hired Plaintiff as a

Transportation Security Specialist, SV-1801-J, in TSA's Office of Internal Affairs and

Program Review. See Complaint, ¶ 1. Effective June 30, 2002, Plaintiff was reassigned

to the position of Criminal Investigator, SV-1811-J, in TSA's Office of Special

Investigations, conditioned upon Plaintiff's successful completion of the Office of

Personnel Management (OPM) background investigation. Id. Plaintiff's permanent

appointment to the Criminal Investigator position was contingent on her successfully

being adjudicated for employment and eligible for a Top Secret security clearance.

TSA's Credentialing and Program Office determined that Plaintiff was unsuitable

for employment with TSA as a Criminal Investigator because she had been terminated by

a prior employer for misconduct. See Complaint, ¶ 2. As such, Plaintiff was ineligible to

carry a Top Secret security clearance and thus, unsuitable for employment because she

failed to disclose her termination on her Standard Form 86, Questionnaire for National Security Positions.  Id.

TSA conducts suitability determinations of its employees pursuant to an Executive Order of the President that declares acceptable backgrounds are required to protect the national security of the United States.  Defendant moved to dismiss and argued that under Bennett v. Ridge, 425 F.3d 999 (D.C. Cir. 2005), plaintiff's claims were inextricably intertwined with the Executive Branch's stewardship over national security, and that the Court was without subject matter jurisdiction to hear plaintiff's claims.

In her Opposition, plaintiff relies on the Administrative Procedures Act (APA), 5 U.S.C. § 702, to evade dismissal under Bennett v. Ridge.   As defendant argued in its motion under Bennett, plaintiff's termination is unreviewable by this Court under the APA because the Agency's national security determination is committed to agency discretion by law.  Here, the APA does not afford this Court with jurisdiction.  Oryszak v. Sullivan, 2008 U.S. Dist. LEXIS 71592, *7 (D.D.C. July 8, 2008) (judicial review of top secret security clearance revocation brought pursuant to the APA denied); 5 U.S.C. § 701(a)(2).  Thus, this court is without subject-matter jurisdiction to review the merits of the removal or plaintiff's pretext claim, regardless of when the Agency asserted the national security defense.  Bennett, 425 F.3d at 1003 (Agency raising national security defense for the first time in district court did not change unreviewability of merits and pretext claim).

## ARGUMENT

**I.    PLAINTIFF'S REMOVAL STEMMED FROM HER INELIGIBILITY TO RECEIVE A TOP SECRET CLEARANCE, AND IS UNREVIEWABLE.**

As in <u>Bennett</u>, plaintiff's criminal investigator position required a Top Secret Security Clearance.  <u>Bennett v. Ridge</u>,  425 F.3d 999, 1001 (D.C. Cir. 2005).  Plaintiff submitted the SF 86 Questionnaire for National Security Positions to initiate a background investigation " . . . in order for Appellant to receive a security clearance." Plantiff's Memorandum of Points and Authorities Denying Defendant's Motion to Dismiss Plaintiff's Complaint (Plaintiff's Memorandum), p.11.  During the course of TSA's investigation into plaintiff's clearance eligibility, its Credentialing and Program Office discovered that plaintiff had failed to disclose a prior termination on her SF 86. (Plaintiff's Memorandum Documents, pp. 37-39) (MSPB Initial Decision, dated September 6, 2006 – clean copy attached without Plaintiff's handwritten notes).

As a result, on or about October 24, 2003, TSA served plaintiff with a Notice of Proposed Removal.  In that notice, the Agency explained that, based on the investigation into plaintiff's suitability for employment and eligibility for access to national security information, she was found unsuitable, in part, for "<u>failing to fully disclose information regarding her employment history on the SF-86 form</u> . . . "  Plaintiff's Memorandum, p.12.  In particular, Specification #2 of the notice states that "plaintiff "falsif[ied] a federal document (SF-86)," rendering her "unsuitable for employment with TSA." MSPB Initial Decision, dated September 6, 2006. Plaintiff's Memorandum Documents, pp. 37-39 (MSPB Initial Decision, dated September 6, 2006 – clean copy attached without Plaintiff's handwritten notes).  Thereafter, TSA removed plaintiff from her TSA criminal investigator position.  Deciding official Joy Fairtile, former Deputy Director,

TSA Office of Transportation Vetting and Credentialing, explained "I removed Ms. Cruz- Packer from her Criminal Investigator position because she was ineligible to carry a Top Secret security clearance and thus unsuitable for employment with TSA." Declaration of Joy S. Fairtile, ¶ 2 attached to Defendant's Motion to Dismiss.

Plaintiff's 'unsuitability' for federal employment was the direct result of the Agency's investigation of her eligibility for a top secret security clearance.  Under Bennett, Plaintiff's resulting removal is unreviewable.  As in Bennett, "both parties agree that TSA's proffered reason for termination was a negative suitability determination." Bennett 425 F.3d at 1001; see also Plaintiff's Memorandum, p.9.  Yet, even though the removal was cast in terms of a negative suitability determination rather than eligibility to hold a national security clearance, the Court upheld the removal because "Bennett's alleged dishonesty could render her both unsuitable for federal employment and ineligible for a security clearance, even if the two determinations are distinct."  425 F.3d at 1002.  The Court further stated that, "lack of 'suitability' in ordinary language can encompass lack of suitability because of ineligibility for a security clearance . . ."  Id. Just as clearly, the Agency's determination in this action of Plaintiff's lack of suitability encompasses ineligibility for a top secret security clearance.

Finally, Plaintiff argues that the Agency did not meet its burden to prove that Plaintiff actually falsified the SF-86, and that the penalty of removal was reasonable. Plaintiff's Memorandum, p.16.  These issues are entirely beside the point, however, because the Court lacks jurisdiction to review the Agency's national security determination.

II.   **THE COURT CANNOT ADJUDICATE PLAINTIFF'S CLAIM THAT
      PLAINTIFF'S SECURITY CLEARANCE INELIGIBILITY IS A
      PRETEXT.**

Plaintiff claims, just like the Plaintiff in <u>Bennett</u>, that the Agency's failure to raise

the national security defense prior to this district court action demonstrates that its actions

are a "pretext" and somehow vests this Court with jurisdiction.  Plaintiff's Memorandum,

p.36.  The timing of the Agency's articulation of the national security issue here and, in

<u>Bennett</u>, is similar, and so the result should be the same.  <u>Bennett</u>, 425 F.3d. at 1001.  The

<u>Bennett</u> Court ruled that "[w]hile Bennett claims that TSA's security clearance

explanation is pretextual, under <u>Ryan [v. Reno</u>], 168 F.3d at 522 [D.C. Cir. 1999], a court

cannot adjudicate the credibility of that claim" in light of the national security issue.  <u>Id</u>.

at 1003.  Regarding the Agency's assertion of the national security defense for the first

time at the district court level, the Court explained that the timing argument "ignores that

'suitability' can encompass national security and that where there is substantial evidence

that the latter was a contemporaneous reason for the agency's action, the interests have

been resolved by this court's precedent in favor of executive discretion." <u>Id</u>. at 1003-

1004.  Hence, the Court sustained the district court's dismissal because "there was

sufficient evidence in the record of the basis for TSA's action even though it was not

announced to Bennett at the time of the termination of her employment."  <u>Id</u>.  That

evidence included TSA's letter to DoD seeking "information that was relevant to

determining whether Bennett could sustain a security clearance while employed as a

criminal investigator in TSA" and an affidavit made to an EEO investigator.  <u>Id</u>.

Similarly, while the Agency did not formally assert the 'national security defense'

prior to the instant action, there is sufficient evidence in the record to show that plaintiff's

"fail[ure] to disclose [a] termination on her Standard From 86, Questionnaire for National Security Positions" was announced throughout the administrative proceedings as the impetus for her indefinite suspension and removal. <u>See</u> MSPB Opinion and Order, p.2, Docket No. DC-0752-05-0636-I-1 (May 11, 2006) (copy attached). Plaintiff acknowledged that she completed the SF 86 which "initiated a background investigation of Appellant . . . in order for Appellant to receive a security clearance." Plaintiff's Memorandum, p.11, ¶ 2 39 (MSPB Initial Decision, dated September 6, 2006 – clean copy attached without Plaintiff's handwritten notes). The October 24, 2003 Notice of Proposed Removal - Specification #2, identified plaintiff's false answers on her Standard Form 86 Questionnaire for National Security Positions (SF 86) as the basis for the adverse actions against her. Plaintiff's Memorandum Documents, pp. 37-39 39 (MSPB Initial Decision, dated September 6, 2006 – clean copy attached without Plaintiff's handwritten notes). Finally, the declaration of Joy Fairtile, the deciding official, confirms that plaintiff was removed because she falsified her SF-86, rendering her ineligible for a clearance and federal employment. According to the law of this Circuit, both plaintiff's removal and her pretext argument, are therefore, unreviewable.

CONCLUSION

WHEREFORE, for the reasons stated herein, Defendant submits that this Court

should dismiss this action with prejudice.

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
WYNEVA JOHNSON, D.C. BAR # 278515
Assistant United States Attorney
555 4th Street, N.W., Room E-4106
Washington, D.C.
(202) 514-7224


OF COUNSEL:

JANESSA GRADY FLEMING
Senior Counsel, Litigation
Office of Chief Counsel
Transportation Security Administration
601 12th Street, South, 12th Floor
Arlington, Virginia  22202

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of August, 2008 that a copy of the

foregoing was served by First Class mail, postage prepaid to:

LINDA CRUZ-PACKER
4800 Megan Drive
Clinton, Maryland 20735


_____/s/_____
WYNEVA JOHNSON
Assistant United States Attorney
555 4th Street, N.W., Room E-4106
Washington, D.C. 20530
(202) 514-7224

# Merit Systems Protection Board
# Opinion and Order
# May 11, 2006

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

### 2006 MSPB 126

Docket No. DC-0752-05-0636-I-1

### Linda Y. Cruz-Packer,

### Appellant,

### v.

### Department of Homeland Security,

### Agency.

May 11, 2006

Crystal A. G. Fisher, Esquire, Alexandria, Virginia, for the appellant.

Bryan A. Bonner, Esquire, Arlington, Virginia, for the agency.

### BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

## OPINION AND ORDER

¶1      The appellant petitions for review of an initial decision that dismissed her appeal for lack of jurisdiction. For the following reasons, we GRANT the petition for review, REVERSE the initial decision, FIND that the Board has jurisdiction over this appeal, and REMAND the appeal for adjudication of the merits of the agency's removal action.

## BACKGROUND

¶2      The agency's Transportation Security Administration (TSA) removed the appellant from her SV-1811-J Special Agent (Criminal Investigator) position

based on a charge of "Unsuitability for Federal Service," which was supported by two specifications. Appeal File (AF), Tab 4, Subtabs 5, 7. The agency determined that the appellant had been terminated by a prior employer for misconduct, and had failed to disclose that termination on her Standard Form 86, Questionnaire for National Security Positions. *Id.*, Subtab 5. After the appellant filed a timely appeal of the removal with the Board, AF, Tabs 1, 3, the agency moved to dismiss the appeal for lack of jurisdiction, AF, Tab 4, Subtab 1. The agency asserted that the appellant was an excepted service employee with no right to appeal the "suitability determination" because such an appeal right to the Board is granted only to applicants for, or employees in, competitive service or Senior Executive Service positions. *Id.* at 1, 12.

¶3      The administrative judge (AJ) assigned to this case ordered the appellant to submit evidence and/or argument showing that the Board had jurisdiction over the appeal, and to address the specific arguments made by the agency in its motion to dismiss. AF, Tab 6. After the appellant did not file a timely response,[1] the AJ dismissed the appeal for lack of jurisdiction. AF, Tab 8, Initial Decision (ID). Relying on the Board's decision in *Zufan v. Department of Transportation*, 91 M.S.P.R. 258 (2002), the AJ found that TSA employees are in the excepted service, and therefore have no right to appeal suitability determinations under 49 U.S.C. § 40122(g) and 5 C.F.R. § 731.501. ID at 7-8.

## ANALYSIS

¶4      The appellant asserts on review that the Board has jurisdiction over her appeal of her removal because she was a preference-eligible employee in the excepted service who had completed at least one year of current continuous

---

[1] The appellant filed a jurisdictional response after the deadline for doing so, and one day after the issuance of the initial decision. AF, Tab 9.

service in the same or similar position.  Petition for Review File (PFRF), Tab 3.[2]
The agency asserts on review that, among other things, the appellant is not a
preference-eligible employee.  PFRF, Tab 5 at 6-7.  As set forth below, regardless
of whether the appellant is a preference eligible, the Board has jurisdiction over
this appeal.

¶5       The Board is not obligated to accept the assertion of a party as to the nature
of a personnel action, but may make its own independent determination regarding
the matter.  *Russell v. Department of the Navy*, 6 M.S.P.R. 698, 704 (1981).
Thus, it is the nature of the action, and not the agency's characterization of the
action, that determines the Board's jurisdiction.  *Czarkowski v. Department of the
Navy*, 87 M.S.P.R. 107, ¶ 20 (2000); *see Robinson v. U.S. Postal Service*,
63 M.S.P.R. 307, 313-25 (1994) (the employees' assignments constituted
reduction in force demotions within the Board's jurisdiction, despite the agency's
characterization of them as reassignments).

¶6       As set forth above, the agency characterizes the action in this case as a
"suitability determination" and contends that the appellant may not appeal such
an action because she occupied a position in the excepted service.[3]  However,
5 C.F.R. part 731, relating to "Suitability," establishes the criteria and procedures

---

[2] The appellant filed a supplement to her petition for review one day after the deadline
set forth by the Clerk of the Board, but before the record closed on review.  PFRF,
Tabs 2, 3.  The Board's regulations provide that, once the record on review closes, no
additional evidence or argument will be accepted unless the party submitting it shows
that the evidence was not readily available before the record closed.  5 C.F.R.
§ 1201.114(i).  Thus, we have considered the arguments set forth in the appellant's
supplement to her petition for review.  *See Owens v. Department of the Army*,
82 M.S.P.R. 279, ¶ 4 n.1 (1999) (the appellant filed a timely supplement to her petition
for review); *Dunn v. Office of Personnel Management*, 60 M.S.P.R. 426, 430 (1994)
(the appellant filed a timely petition for review and supplement to the petition for
review), *appeal dismissed*, 91 F.3d 169 (Fed. Cir. 1996) (Table).

[3] The appellant agrees that she occupied a position in the excepted service, PFRF, Tab 3
at 7, and the record reflects that the appellant received an excepted appointment by
reassignment to the Criminal Investigator position, AF, Tab 4, Subtab 7.

4

for making determinations of suitability for employment only for "positions in the competitive service and for career appointments in the Senior Executive Service." 5 C.F.R. § 731.101(a). Thus, section 731.103, under which the Office of Personnel Management delegates to agency heads limited authority for adjudicating suitability cases involving applicants for and appointees to competitive service positions, and section 731.105(b), under which an agency, exercising delegated authority, may take a suitability action "under this part," do not serve as authority for the agency's removal action in this case.

¶7      Because the appellant worked for TSA, the Aviation and Transportation Security Act (ATSA) applies in this case. *Lara v. Department of Homeland Security*, 97 M.S.P.R. 423, ¶ 9 (2004). Under ATSA, TSA employees are covered by the personnel management system that is applicable to employees of the Federal Aviation Administration (FAA) under 49 U.S.C. § 40122, except to the extent that the Under Secretary of Transportation for Security[4] modifies that system as it applies to TSA employees. 49 U.S.C. § 114(n); *Lara*, 97 M.S.P.R. 423, ¶ 9. Under the personnel management system that is applicable to FAA employees, the removal of an individual who meets the definition of an "employee" under 5 U.S.C. § 7511 may be appealed to the Board. *See* 5 U.S.C. §§ 7511(a)(1), 7512(1), 7513(d) (providing "employees," as defined in section 7511(a)(1), with the right to appeal removals and other adverse actions to the Board); *Zambito v. Department of Homeland Security*, 100 M.S.P.R. 550, ¶ 6 (2005); *Goldberg v. Department of Transportation*, 97 M.S.P.R. 441, ¶ 6 (2004) (under 49 U.S.C. § 40122(g)(3), an FAA employee is entitled to appeal an adverse action covered by 5 U.S.C. § 7512 to the Board).

---

[4] The agency notes that the title of the Under Secretary of Transportation for Security was changed to Administrator upon TSA's transfer to the Department of Homeland Security. AF, Tab 4, Subtab 1 at 7 n.1. To avoid confusion, we will use the term "Under Secretary" throughout this decision.

5

¶8        Thus, as long as the Under Secretary has not modified the FAA's personnel management system so as to preclude TSA employees such as the appellant from appealing their removals, the appellant would have Board appeal rights if she is: (1) A preference eligible in the excepted service who has completed one year of current continuous service in the same or similar positions in an Executive agency; or (2) an individual in the excepted service (other than a preference eligible) who has completed two years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to two years or less. 5 U.S.C. § 7511(a)(1).

¶9        Here, there is no indication, and the agency has not argued, that the Under Secretary has modified the FAA's personnel management system so as to preclude TSA employees such as the appellant from appealing their removals.[5] Moreover, the record reflects that the agency appointed the appellant to an SV-1801-J Transportation Security Specialist position on or about June 17, 2002, and reassigned her to the SV-1811-J Criminal Investigator position effective June 30, 2002.  AF, Tab 4, Subtabs 6, 7.  The agency removed the appellant from the Criminal Investigator position effective upon her November 19, 2004 receipt of the agency's November 18, 2004 decision notice.  *Id.*, Subtab 5; AF, Tab 1 at 3. Thus, regardless of whether the appellant was a preference-eligible employee, she has shown by preponderant evidence that the Board has jurisdiction over her appeal because she was an individual in the excepted service who completed two years of current continuous service in the same Criminal Investigator position and she was subjected to an adverse action that is appealable to the Board.

¶10       We also find that *Zufan*, which involved an appeal filed by an applicant for employment from a suitability determination made by the FAA, does not require

---

[5] In *Connolly v. Department of Homeland Security*, 99 M.S.P.R. 422, ¶ 14 (2005), the Board found that neither HRM Letter 752-1 nor TSA Management Directive 1100.75-1, which were issued by the Under Secretary, indicated that employees other than screeners did not retain the right they previously had to appeal removals to the Board.

dismissal of this case for lack of jurisdiction.  The Board noted in *Zufan* that the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, 2000 U.S.C.C.A.N. (114 Stat.) 61 (Ford Act), added 49 U.S.C. § 40122(g)(3), which states that, under the new personnel management system for FAA employment matters, an employee of the FAA may submit an appeal to the Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996. *Zufan*, 91 M.S.P.R. 258, ¶ 15.  The Board found that Mr. Zufan had no right to appeal his nonselection under the Ford Act because he was an applicant, but never an FAA employee as required by the Act. *Id.*, ¶ 16.  In dictum, the Board noted that, even assuming that Mr. Zufan could have established that he was an "employee" under section 40122(g)(3), "the right to appeal negative suitability determinations relates only to applicants for, or employees in, the competitive service or SES positions."  *Id.*, ¶ 16 n.*.  Thus, the Board held that, to "establish jurisdiction," Mr. Zufan would have to show that the position he applied for was in the competitive service.  *Id.*

¶11      The footnote in *Zufan* addressed the narrow question of whether, even if Mr. Zufan had been an "employee" under 49 U.S.C. § 40122(g)(3), the Board would have had jurisdiction over the appeal of the appellant's nonselection as a suitability determination under 5 C.F.R. § 731.501.  It did not address whether the Board had jurisdiction under 5 U.S.C. §§ 7511(a)(1), 7512(1), and 7513(d).  As set forth above, the agency in this case did not take a suitability action under 5 C.F.R. part 731 against an "appointee" in the competitive service.  *See* 5 C.F.R. § 731.101(b) (defining "appointee" as a person who has entered on duty and is in the first year of a subject-to-investigation appointment).  Instead, it took an action against an appellant who, unlike Mr. Zufan, was an "employee" who has the right to appeal the agency action at issue, i.e., a removal, to the Board under 5 U.S.C. §§ 7511(a)(1), 7512(1), and 7513(d).  In any event, the footnote in *Zufan* was unnecessary to the decision in that case, and therefore not binding on

7

the Board. *See Smith v. Orr*, 855 F.2d 1544, 1550 (Fed. Cir. 1988) (broad language unnecessary to a court's decision cannot be considered binding authority); *Harding v. Department of Veterans Affairs*, 98 M.S.P.R. 296, ¶ 6 n.3 (2005) (declining to follow dicta in Board decisions). Thus, *Zufan* does not require a different result in this appeal.

## ORDER

¶12      Accordingly, we REVERSE the initial decision, FIND that the Board has jurisdiction over this appeal, and REMAND the appeal for adjudication of the merits of the appellant's removal.

FOR THE BOARD:

_____

Bentley M. Roberts, Jr.
Clerk of the Board
Washington, D.C.

# Merit Systems Protection Board
# Initial Decision
# September 6, 2006

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

LINDA Y. CRUZ-PACKER,
                Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
                Agency.

DOCKET NUMBER
DC-0752-05-0636-B-1
DC-0752-04-0640-I-3

DATE: September 6, 2006

Crystal A. G. Fisher, Esquire, Carolyn C. Eaglin & Associates, Alexandria,
    Virginia, for the appellant.

Bryan A. Bonner, Esquire, and Remy Savin, Arlington, Virginia, for the
    agency.

**BEFORE**
Michelle M. Hudson
Administrative Judge

**INITIAL DECISION**

In *Cruz-Packer v. Department of Homeland Security*, 102 M.S.P.R. 64
(2006), the Board remanded the appellant's appeal from an action taken by the
agency's Transportation Security Administration (TSA) removing her from the
position of Special Agent (Criminal Investigator), SV-1811-J, effective
November 18, 2004, for adjudication of the merits of the removal action.[1] The
appellant also refiled her appeal from the agency's action indefinitely suspending

---

[1] The docket number for the remand appeal of the removal action is MSPB Docket No.
DC-0752-05-0636-B-1.

her effective June 3, 2004, and the Board has jurisdiction over that action.[2] *See* 5 U.S.C. §§ 7511(a), 7512, 7513, 7701; 5 C.F.R. Part 752, Subpart D.

For the reasons that follow, both the indefinite suspension and removal actions are AFFIRMED.

BACKGROUND

On June 4, 2002, the appellant was offered the position of Transportation Security Specialist, SV-1801-J, with the TSA. The appellant received a waiver to begin working pending the outcome of a successful OPM background investigation, and she began working in the TSA's Office of Internal Affairs and Program Review. *See* Initial Removal Appeal File (DC-0731-05-0636-I-1) (IRAF), Tab 4, Agency's Response, tab 6. Shortly thereafter, on June 30, 2002, the appellant was reassigned to the position of Special Agent (Criminal Investigator), SV-1811-J, which is a Federal law enforcement position.

In furtherance of OPM's background investigation, the appellant submitted an SF-86, and a "Declaration of Federal Employment," Form 306, to the agency both dated March 24, 2003. Once OPM's background check on the appellant was completed, it was forwarded to the TSA's Credentialing Program Office (CPO), for a suitability determination. The CPO determined that the appellant was unsuitable for employment, after discovering the existence of evidence which indicated that in May of 1998, the appellant had been terminated from her former position with the West Virginia Department of Corrections (along with the reasons for the termination), and after determining that the appellant had not disclosed the termination on her SF-86.

---

[2] The docket number for the refiled indefinite suspension appeal is MSPB Docket No. DC-0752-04-0640-I-3. This appeal had been previously dismissed without prejudice on two occasions, in initial decisions that were issued on August 25, 2004 and January 14, 2005. The refiled indefinite suspension appeal has been joined with the removal appeal for adjudication, because joinder will not adversely affect the interest of the parties. *See* 5 C.F.R. § 1201.36(a)(2).

Thereafter, by notice dated April 15, 2004, Lou Widawski, (Deputy Director, MIIA, Management Inspections Division),[3] proposed the appellant's indefinite suspension, based on the charge of "Falsification of an Official Employment Document." *See* Initial Indefinite Suspension File (IISF) (DC-0752-04-0640-I-1), Tab 7, Agency's Response, tab 4(C). The appellant made both an oral and written reply to the proposed action, and by decision dated June 1, 2004, John J. Rooney (Director, Management Inspections Division, U.S. Customs and Border Protection),[4] decided to indefinitely suspend her, effective, June 3, 2004. *Id.*, Agency's Response, tab 4(A).

By notice dated October 24, 2003, Robert Scanlon, Assistant Director, Personnel Security & Credentialing Program Office, proposed to remove the appellant based on the charge of "Unsuitability for Federal Service," and the appellant replied to the proposed action. IRAF, Tab 4, Agency's Response, tab 8. Because of the appellant's denial that she had been terminated from the position with the Department of Corrections in West Virginia, and evidence that's she submitted in support of that claim, the CPO initiated a supplemental background investigation.

On July 1, 2004, the appellant filed an appeal from her indefinite suspension, and in an initial decision that was issued on August 25, 2004, the appeal was dismissed without prejudice because the appellant had amended a formal EEO complaint that she had previously filed, to include her indefinite suspension, prior to filing her appeal with this Board, and 120 days had not passed.

---

[3] Mr. Widawski was formerly the Deputy Director, Office of Internal Affairs and Program Review.

[4] Mr. Rooney was formerly the Director, Office of Internal Affairs and Program Review.

On October 20, 2004, the appellant refiled her indefinite suspension appeal (DC-0752-04-0640-I-2).

By notice dated November 18, 2004, Joy S. Fairtile, Deputy Director, Office of Transportation Vetting and Credentialing, decided to remove the appellant effective upon her receipt of the notice.   IRAF, Tab 4, Agency's Response, tab 5.

In an initial decision that was issued on January 14, 2005, the indefinite suspension appeal was again dismissed without prejudice because the agency had taken action to remove the appellant.  The appeal was dismissed in order to allow the indefinite suspension appeal to be joined with the removal appeal when it was filed.

On March 15, 2005, the appellant filed a formal EEO complaint concerning her removal action.  IRAF-1, Tab 3.  On July 14, 2005, the appellant filed her appeal to this Board from the removal action.  IRAF, Tabs 1 and 3.

In an initial decision that was issued on October 6, 2005, the removal appeal was dismissed for lack of Board jurisdiction.

In *Cruz-Packer v. Department of Homeland Security*, 102 M.S.P.R. 64 (2006), the Board granted the appellant's petition for review, reversed the October 6, 2005 initial decision, and found that it has jurisdiction over the appellant's removal appeal under 5 U.S.C. § 7511(a)(1).   Thus, the Board remanded the appeal for adjudication of the merits of the removal action.

The indefinite suspension appeal was reopened (DC-0752-04-0640-I-3), and the removal and indefinite suspension appeals were joined for adjudication. A hearing was held on both matters on July 18, 2006.  The record remained open until July 24, 2006, for the receipt of additional evidence which the AJ ordered the agency to submit during the July 18, 2006 hearing.

## ANALYSIS AND FINDINGS

Burdens of proof

The agency has the burden to prove the merits of its case by a preponderance of the evidence, and the appellant has the burden to prove her affirmative defenses by a preponderance of the evidence. 5 C.F.R. § 1201.56(a). Preponderance of the evidence is defined by regulation as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). In addition, the agency must show that the penalty it selected was within the bounds of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302, 306 (1981).

The Indefinite Suspension

The agency has established that the appellant was properly placed on indefinite suspension.

Indefinite suspensions can be effected, pending criminal proceedings or inquiry, under certain circumstances in which an agency believes that the employee's retention on active duty could result in damage to Federal property, be detrimental to government interests, or be injurious to the employee, his fellow workers, or the public. 5 C.F.R. §§ 752.401(a)(2), 752.402(e); *Jones v. Department of the Navy*, 48 M.S.P.R. 680, 689 (1991), *Thomas v. General Services Administration*, 756 F.2d 86, 88, cert. denied, 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985). The essential element of a valid indefinite suspension is that it have a condition subsequent that will bring the suspension to an end. *Jones*, 48 M.S.P.R. at 686. The Board has also held that an agency is not required to prove the misconduct at issue in an indefinite suspension, but only examination into that conduct. *Larson v. Department of the Navy*, 22 M.S.P.R. 260 (1984).

Here, the agency issued a notice of proposed indefinite suspension to the appellant pending an investigation into the appellant's allegation that she was not

terminated from the State of West Virginia, Division of Corrections, and that she did not falsify her SF-86 that she completed as a part of her employment requirements.    IISF, Tab 7, Agency's Response, tab 4(C).    The appellant responded to the proposed suspension, and by decision dated June 1, 2004, the agency decided to indefinitely suspend the appellant "pending completion of the Agency's investigatory process and any administrative action that may follow". *Id.*, Agency's Response, tab 4(A).

The record shows that the agency was conducting an investigation into serious allegations concerning information that the appellant had provided on her SF-86 when it made the decision to indefinitely suspend her, and that it had not yet determined what, if any, administrative action would be taken.    *See* Testimony of Lou Widawski and John J. Rooney.    It is also undisputed that the appellant was provided with the required procedural safeguards prior to implementing the suspension.[5]    I find that the indefinite suspension had an identifiable end, was for such cause as will promote the sufficiency of the service, and that the chosen penalty was reasonable under the circumstances. Accordingly, I find the agency has proven by preponderant evidence that the appellant was properly placed on indefinite suspension effective June 3, 2004.

The Removal Action

The agency has proven its charge by a preponderance of the evidence.

In the October 24, 2003 Notice of Proposed Removal, the agency charged the appellant as follows:

> The Office of Personnel Management, on behalf of TSA, conducted a background investigation to determine your suitability for employment and eligibility for access to national security

---

[5]    The appellant acknowledged during the telephonic prehearing conference that was held on July 10, 2006, that she is not alleging that there were any procedural errors regarding the indefinite suspension. RAF, Tab 9, Summary of Prehearing Conference.

information. The results of the investigation raise serious issues that render you unsuitable for employment.

Reason: Unsuitability for Federal Service

The results of your background investigation revealed the following:

Specification #1: The OPM Investigative Report reflects that you were terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections on 05/21/98 for abuse of inmates free time, abuse of inmate privileges, i.e. visits/furloughs, no respect for staff assignments made by the Director of Security, theft of facility food, having inmates drive vehicles, which were not authorized to do so, directing an inmate who was incarcerated for 3rd offense DUI and Driving on a suspended license, to drive personal vehicle (a felony), taking inmates to your home without permission or notification of their whereabouts, taking inmates to the South Charleston Recreational facility without permission or notification of their whereabouts, making improper purchases, utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy.

Specification #2: On the SF-86 that you signed and completed on 03/24/03, Question #22, Your Employment Record asks, Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. You responded in the affirmative; however, you listed 08/97 and selected reason #1 - Fired from job with Volunteer's of America. New York, but did not list being Fired from position with State of West Virginia Department of Military Affairs & Public Safe Division of Corrections in O5/21/98. In your response to this question, you failed to fully disclose information regarding your employment history.

***

All TSA employees are required to demonstrate behavior, which meets federal government standards for trustworthiness, judgment, and reliability. As a federal law enforcement officer, this responsibility and standards are heightened. The above information reported in your background investigation reflects behavior that includes repeated and serious incidents of misconduct, **falsifying a federal document (SF-86)** and renders you unsuitable for employment with TSA.

*Emphasis Supplied. See* IRAF, Tab 4, Agency's Response, tab 8.

The agency's charge concerning the appellant's SF-86, is essentially a "falsification" charge.[6]   To sustain a falsification charge, the agency must prove by preponderant evidence that appellant knowingly supplied incorrect information with the specific intent of defrauding, deceiving, or misleading the agency.   The intent to defraud, deceive, or mislead, is a state of mind which generally is proven by circumstantial evidence. *Haack v. U.S. Postal Service,* 68 M.S.P.R. 275 (1995).

With regard to the first specification of the charge, the appellant argues that she was not terminated from her position with the Department of Corrections in West Virginia, and that she had verbally "resigned" from that position due to a

---

[6]   The agency's representative argued in his closing remarks, in essence, that "Specification 1" of the agency's charge was that the OPM Investigative Report reflected that the appellant had been terminated from employment with State of West Virginia, Department of Military Affairs & Public Safety, Division of Corrections, on May 21, 1998, for numerous incidents of misconduct.   He asserted that the agency was not charging the appellant with the actual incidents of the misconduct for which she was terminated, and that it is not required to prove that conduct.   The appellant's representative argued in her closing remarks that the merits of the charges for which the West Virginia Department of Corrections allegedly terminated her should be adjudicated in this appeal.

The Board has held that an agency is required to state the reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply, but that the charge must be viewed in light of the accompanying specifications and should not be technically construed. *Tom v. Department of the Interior*, 97 M.S.P.R. 395 (2004).

Having reviewed the agency's charge as cited in the October 24, 2003 proposal notice, in light of the accompanying specifications, I have determined that this is essentially a "falsification" of an employment application case, despite the fact that the agency's language in the November 18, 2004 decision letter indicated that the agency made findings concerning the merits of the appellant's alleged termination by the West Virginia Department of Corrections.   Thus, the agency will not be required to prove the reasons given by the West Virginia Division of Corrections for its decision to "dismiss" the appellant from her position in 1998, and the actual incidents of misconduct charged in support of the dismissal will not be considered to support the removal action.

number of reasons, including, but not limited to, a perceived racially discriminatory and hostile work environment, the notification that her ailing husband (who was then living in New York State) had been diagnosed with a terminal illness and given a short duration of time to live, the announcement of biased and unfounded allegations of misconduct lodged against her (which she contends were concocted by two of her direct supervisors). *See* Remand Removal Appeal File (RRAF), Tab 6, Appellant's Prehearing Submissions. Additionally, the appellant argues that she had no knowledge that her resignation had been recorded as a dismissal by West Virginia Department of Corrections at the time that she completed the employment forms that are at issue in this appeal. *Id*

In response to the agency's proposed removal action, the appellant submitted a sworn Declaration from Otis Cox,[7] dated January 16, 2003. *See* IRAF, Tab 4, Agency's Response, tab 9. In this Declaration, Mr. Cox indicated that a Form WV-11 was required to complete a personnel action, that he was the only official authorized to execute such a document, and that he had not executed a Form WV-11, terminating the appellant.[8] *See id.*

During the hearing, the appellant testified essentially as follows. Her work environment at the West Virginia Department of Corrections was extremely hostile and racist. It was reported that she was going to be made the Warden of the correctional facility, and several individuals orchestrated a smear campaign against her. She was suspended by Mr. Ervin, the Administrator, based on allegations made by an inmate. She subsequently had a conversation with Mr.

---

[7]  Mr. Cox stated that between 1997 and 2001, he served as Secretary for Public Safety for the State of West Virginia (a Cabinet level position that reported directly to the Governor), and that he had ultimate responsibility over a number of departments for the State of West Virginia, including the Department of Corrections.    IRAF, tab 4, Agency's Response, tab 9.

[8]  I note that the record also contain a sworn affidavit from Mr. Cox dated April 27, 2004, the contents of which will be discussed later in this decision.

Cox, and although she does not know the exact word she used when speaking with him, it was her understanding that when she left (to take care of her husband), she would not return. She did not put her resignation in writing because she was in an "interim position." She never received a copy of the termination letter that informed her that she was being terminated from her position. The termination letter did not have her apartment number on it, and she was never told orally that she was terminated. She did not commit any of the misconduct charged in the termination letter, with the exception of the charge that she had her driver pick up her daughter from school at 7:00 p.m. one night. She did not carefully read the SF-86 and Declaration forms when she filled them out, as she was preoccupied with personal problems. She did not list her situation with the West Virginia Department of Corrections on the SF-86, because she thought that the "continuation page" on the Optional Form 306 (which she filled out at the same time) was the continuation page for both documents. *See also* the appellant's January 27, 2004 Declaration, RRAF, Tab 8, Appellant's Ex. C.

In support of its charge, the agency submitted a copy of a May 21, 1998 letter from Mr. Manfred G. Holland, Deputy Commissioner, to the appellant, in which he dismissed her from her position "effective immediately." IRAF, tab 4, Agency's Response, tab 12. Mr. Holland noted that, on March 3, 1998, the appellant was advised that her acceptance of a limited term/temporary position did not provide her any rights under the Civil Service System. *Id*. Mr. Holland also noted that the appellant was hired as a limited term/temporary employee on March 16, 1998, and that she, therefore, could be released from employment without cause. Mr. Holland, stated, however, that the reason for the appellant's dismissal was his "loss of confidence in his ability to effectively discharge the duties and responsibilities of [her] position," and he reiterated his concerns of: (1) misuse of inmates free time; (2) misuse of inmates privileges, i.e. Visits/Furloughs; (3) utilizing the services of correctional staff and inmates to provide transportation and baby sitting services contrary to law and policy, and

(4) making improper purchases. *Id.* The appellant was also advised that she could either meet with Mr. Holland in person, or present him with a written explanation of the reasons why she might think the action was inappropriate, within 15 days of receipt of the letter. *Id.*

The agency also submitted a copy of a sworn Declaration from Donald M. Ervin, Administrator for the Charleston Work Release Center (the appellant's former immediate supervisor), dated April 22, 2004. *See* IRAF, Tab 4, Agency's Response, tab 10. In his Declaration, Mr. Ervin stated that, during the appellant's employment she was involved in improprieties. *Id.* Mr. Ervin also stated that he suspended the appellant pending the outcome of his investigation, and that as a result of the improprieties, he recommended the appellant's dismissal to the then Deputy Commissioner for the Division of Corrections, Manfred G. Holland. Mr. Ervin additionally stated that Mr. Holland agreed with his recommendations, and that he (Mr. Holland) dismissed (fired) the appellant on May 21, 1998. *Id.*

The agency submitted a sworn affidavit from Manfred G. Holland, former Deputy Commissioner for the Division of Corrections, dated April 22, 2004. *Id.*, tab 11. In his sworn affidavit, Mr. Holland, stated, in pertinent, as follows. While the appellant was in the Program Specialist position at the Charleston Work Release Center, Mr. Ervin advised him that the appellant might possibly be involved in rule violations in the performance of her duties, and he instructed Ms. Ervin to investigate those allegations. *Id.* The outcome of that investigation prompted him to issue the May 21, 1998 letter dismissing the appellant for the reasons outlined in that letter. *Id.* Prior to issuing the termination letter, he spoke with Otis Cox, advising him of the problem with the appellant, and his belief that she should no longer be employed at the Charleston Work Release Center or within the Division. *Id.* Mr. Cox advised him to "do what I had to do." *Id.* He had no knowledge of the appellant resigning, or requesting a resignation in lieu of termination. *Id.*

In addition, the agency submitted a sworn affidavit from Otis G. Cox, dated April 27, 2004.[9] IRAF, Tab 4, Agency's Response, tab 13. In that affidavit, Mr. Cox stated, in pertinent part, as follows. He reviewed Mr. Holland's dismissal letter to the appellant for the first time, because Mr. Holland had not sent him a copy of the letter. *Id.* If Mr. Holland had discussed the letter with him, he would have agreed on the dismissal. *Id.* He had assumed that the appellant resigned because he had never seen Mr. Holland's termination letter, nor had he signed a WV-11 personnel form indicating a termination. *Id.* His department had a procedure in place that, on any special hire or dismissal, the Form WV-11 would come through his office. *Id.* Mr. Holland had been given the signature authority to hire and to terminate by letter, but in order to close out the personnel action, a Form WV-11 would have been needed to notify the Division of Personnel, and to take the appellant off the payroll. *Id.* It appears to him that something fell through the cracks. *Id.* The letter to the appellant from Mr. Holland was official, and it will stand as a letter of termination. *Id.* There must be a Form WV-11 some place in the Division of Personnel which brought closure to the appellant's termination. *Id.* He never discussed with the appellant how she exited the organization, and he had no mutual agreement with her regarding the issue of her leaving. *Id.*

Robert J. Scanlon, Division Director, Operational Process & Performance Metrics, TSA, [10] testified, in pertinent part, as follows. The "Declaration of Employment," Optional Form 306, is not the document used to initiate background investigations. *Id.* It is the SF-86 that goes to OPM to initiate background investigations. *Id.* He believes that both the SF-86 and the Optional

---

[9]   As noted previously, the record also contains a sworn Declaration from Mr. Cox dated January 16, 2003.

[10]  Mr. Scanlon was formerly the Assistant Director, Personnel Security and Credentialing Program Office.

Form 306 are generally given to employees at the same time. *Id.* He does not know if employees are told that they are "stand alone" documents, but the forms are self instructive as to what information needs to be included on them. *Id.* Information that is not included on the SF-86 would be problematic, because OPM would not be aware of it when conducting its background investigation. *Id.*

Joy Fairtile was the Deputy Director, Office of Transportation Vetting and Credentialing, and she was responsible for the agency's credentialing program during the time period at issue. Ms. Fairtile testified, in pertinent part, concerning the agency's charge as follows. She learned during the appellant's suitability determination that the appellant had been terminated from the West Virginia Department of Corrections. *Id.* This information could have made the appellant unsuitable for employment, and it also may have been a problem for her concerning her eligibility for a security clearance. *Id.* In response to the matter concerning the appellant's employment with the West Virginia Department of Corrections, the appellant claimed that she ran out of room on the SF-86. *Id.* The appellant also claimed that she was not terminated from the position with the West Virginia Department of Corrections, but that she left by mutual decision with Mr. Cox. *Id.* Mr. Cox denied that he made any mutual agreement with the appellant concerning her leaving her employment with that agency. *Id.* The instructions on the SF-86 are in very clear and in plain language, and the form clearly tells you to use additional sheets for additional explanations. *Id.* She concluded that the information concerning the appellant that was provided to the agency as a result of OPM's background investigation was correct. *Id.* Although there was a signature missing from the Office of the Governor on the Form WV-11, that effected the appellant's dismissal from the West Virginia Department of Corrections, they received information that the authority for the personnel action had been delegated. *Id.* Sometimes personnel forms do not contain all signatures that the signature lines on the form provides for. *Id.* She does not recall receiving any evidence indicating that the appellant actually received the

termination letter from the West Virginia Department of Corrections, but she does not believe that the appellant did not know that she had been terminated. *Id.*

The agency submitted copies of the "Suitability Worksheet" dated October 21, 2003, in which Personnel Security recommended that the appellant be found unsuitable for employment with the TSA as a Special Agent, because the investigation reflected that she had been terminated from her position with the West Virginia Division of Corrections on May 21, 1998, and because she failed to disclose the termination on her SF-86, dated March 24, 2003. IRAF, Tab 4, Agency's response, tab 8. The agency also submitted a copy of OPM's "Report of Investigation" dated June 11, 2003. *Id.*

The record also contains copies of the appellant's SF-86, and her "Optional Form 306," both dated March 24, 2003, that she submitted to the agency. RRAF, Tab 8, Appellant's Ex. C. In addition, the agency submitted a copy of the Form WV-11, effecting the appellant's dismissal from her position with the West Virginia Department of Corrections on May 15, 1998. IRAF, Tab 4, Agency's Response, tab 14. The WV-11 was signed by a "Nancy Swecker" on May 26, 1998, and it contains another signature by an official from the Department of Administration, that is illegible.

Having considered the record evidence in this appeal, I find that a reasonable person, considering the record as a whole, would accept as sufficient to find it more likely to be true than untrue that Mr. Holland had the authority to dismiss the appellant from her position with the West Virginia Department of Corrections, and that he in fact did so, effective May 15, 1998. In particular, the sworn affidavits and declarations from Messrs. Cox, Ervin and Holland, as well as copies of the May 21, 1998 termination letter and the Form WV-11, effecting the termination, support such a finding. I note that, while the record does not contain any evidence of the appellant's actual receipt of the May 21, 1998 termination letter from the West Virginia Department of Corrections, the record indicates that the appellant was aware that she had been terminated from that

position prior to filling out the Form SF-86 that is at issue. The termination letter was apparently sent to the correct address, although the appellant's apartment number may have been omitted.[11]    Nonetheless, I find it unlikely that the apartment number, if missing, would have rendered the termination letter undeliverable, even if it caused a delay.    Moreover, it is implausible that the incumbent of a position at such a high level as the appellant's at the West Virginia Department of Corrections, would not have submitted a resignation in writing, had she actually resigned her position as she contends, which further indicates that she had not resigned, and that she would have known that she had been terminated.

My assessment of the appellant's credibility concerning her contention that she did not have any knowledge that she had been terminated was also significantly affected and diminished by her statement on the "Declaration for Federal Employment," Optional Form 306, which she signed on March 24, 2003. *See* RRAF, Tab 8, Appellant's Ex. C. On that form, in the "Continuation Space" at Question 16, the appellant listed her position with the West Virginia Department of Corrections, and she stated, in pertinent part:

> Job promised could not be granted-Due to start up cost.  Couple with family stress, relocation, **mutual agreement between Director of Public Safety (Otis Cox) & myself to leave.**

*See id.* Mr. Cox stated, unequivocally, in his April 27, 2004 affidavit that he never discussed with the appellant how she exited the organization, and he had had "no mutual agreement with her regarding the issue of her leaving." IRAF, Tab 4, Agency's Response, tab 13. I find Mr. Cox's sworn statement in this regard to be more credible than the appellant's statement on her March 24, 2003 Optional Form 306, to the contrary, since the record does not indicate any reason

---

[11]   The appellant testified that her apartment number was omitted from the address on the May 21, 1998 termination letter, and thus, it is possible that the apartment number was also omitted from the mailing address on the envelope.

why Mr. Cox would have had to be untruthful concerning the matter. I note also in this regard that the appellant testified that she and Mr. Cox were "close personal friends," and the record indicates that Mr. Cox is no longer employed with the State of West Virginia in any capacity.[12] I note also that the appellant's credibility concerning her lack of any knowledge that she had been terminated by the West Virginia Department of Corrections was also significantly diminished by what I found to be her inconsistent and contradictory testimony at the hearing concerning her alleged "mutual agreement" with Mr. Cox to leave her position.

With regard to Specification 2 of its charge, I find the appellant's explanation that she did not put anything information about her position with the West Virginia Department of Corrections on the SF-86, at Question 22, because she was preoccupied with personal problems, because she did not carefully read the SF-86 and Optional Form 306 when she filled them out, because she ran out of space when filling out Question No. 22 on the SF-86, and because she believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that she put the information on the "continuation sheet" on the Optional Form 306, to be unpersuasive. I have reviewed the directions on the SF-86, at Question 22, which the appellant signed on March 24, 2003, and I find that the directions clearly instructed her to disclose that any of the following that had happened to her in the last 7 years, including that she had been "fired from a job," that she "quit after being told that [she would] be fired," that she left a job by mutual agreement following allegations of misconduct," that she "left a job by mutual Agreement following allegations of unsatisfactory performance," or that she "left a job for reasons under unfavorable circumstances." RRAF, Tab 8, Appellant's Ex. C. The instructions on the SF-86 also clearly informed the appellant that she

---

[12]    Mr. Cox stated in his April 27, 2004 Affidavit that he has been employed as the Deputy Administrator, National Highway Traffic Safety Administration, U.S. Department of Transportation since June 15, 2003.

was to provide "additional answers" to "other items," which would have included a continuation of her answer to Question 22, on page 9, at the end of the form. It is unlikely, given the clear instructions on the form, that the appellant would have believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that she correctly put the information concerning her employment with the West Virginia Department of Corrections on the "continuation sheet" of the Optional Form 306, and omitted the information from the SF-86. I agree with the agency that such an error by the appellant is even more implausible, in light of the nature of her position as Criminal Investigator, and the necessity that the incumbent of such a position be meticulous when filling out such forms. I note also that the appellant certified on the SF-86, that her statements that she provided on that form were true, complete and correct to the best of her knowledge and belief, and that she was aware that knowing and willful false statements are punishable by fines and/or imprisonment.

It is important to note that, even if I were to believe the appellant's arguments that she "resigned" (and was not terminated) from her position with the West Virginia Department of Corrections, that she ran out of space when filling out Question No. 22 on the SF-86, that because she believed that the SF-86 and the Optional Form 306 were a part of the same documents, and that consequently, she put the information on the "continuation sheet" of the Optional Form 306 instead of the SF-86, the record evidence indicates that the information that she provided on the Optional Form 306, was nonetheless untruthful. As discussed previously, the instructions on the SF-86, required that the appellant disclose any of the following that had happened to her in the last 7 years, including that she had been "fired from a job," that she "quit after being told that [she would] be fired," that she left a job by mutual agreement following allegations of misconduct," that she "left a job by mutual Agreement following allegations of unsatisfactory performance," or that she "left a job for reasons under unfavorable circumstances." The appellant admits that she had received

notice from the West Virginia Department of Corrections concerning the allegations of misconduct that ultimately resulted in her termination, and that she had been suspended during the investigation of those allegations. The appellant, however, failed to provide information on **both** the SF-86 and the Optional Form 306, concerning the misconduct allegations, when clearly such information was required by Question 22 on the SF-86, under code (3) left a job by mutual agreement following allegations of misconduct, code (4) left a job by mutual agreement following allegations of unsatisfactory performance, and code (5) left a job for other reasons under unfavorable circumstances. Moreover, as I previously found, the information concerning her employment with the West Virginia Department of Corrections that the appellant did provide on the Optional Form 306 was false, namely that there was "**mutual agreement between Director of Public Safety (Otis Cox) & myself to leave.**"

For all of the above reasons, I find that that appellant knowingly supplied incorrect information on her March 24, 2003 SF-86. See *Haack v. U.S. Postal Service*, 68 M.S.P.R. 275; *See Pappas v. Office of Personnel Management*, 76 M.S.P.R. 152, 158-59 (1997). I also find that the agency correctly determined that the appellant was unsuitable for the Criminal Investigator position based on her falsification of that document, and the charge is sustained.

Nexus

Appellant did not specifically raise an issue regarding nexus. In any event, I find that falsification of an SF-86, as here, has an inherently adverse affect on the efficiency of the service, as it raises serious doubts about an appellant's honesty and fitness for employment. *See, e.g., Scott v. Department of Justice*, 69 M.S.P.R. 211, 242 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).

Appellant failed to prove her affirmative defenses

During the prehearing conference held on July 10, 2006, I informed the parties that I would adjudicate only those affirmative defenses that were

discussed, clarified and memorialized in the summary of that conference. See RRAF, Tab 9. The appellant clarified that she is alleging discrimination (disparate treatment) on the basis of race (African American), and sex (female), in connection with her removal. The appellant also claimed that the agency retaliated against her because of her prior EEO activities in October of 2003, and that she filed a formal EEO complaint at that time.

Race and Sex Discrimination

To establish a prima facie case of unlawful discrimination based on race and sex through circumstantial evidence, an appellant must show: (a) that she is a member of a protected group; (b) that she was similarly situated to an individual who was not a member of her protected group; and (c) that she was treated more harshly or disparately than the individual who was not a member of her protected group. *See Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 497 (1997).

Once the appellant has established a prima facie case, the burden of going forward shifts to the agency to produce evidence showing a legitimate nondiscriminatory reason for the different treatment. *See Creer v. U.S. Postal Service*, 62 M.S.P.R. 656, 661 (1994). It can do this by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for its action, regardless of whether the agency actually proves its case. *Id.* The appellant must then prove the agency's reason is merely a pretext for prohibited discrimination. *Id.* The appellant must show both that the stated reason was false, or not the real reason for the action, and that discrimination was the real reason for the action. *See Buckler*, 73 M.S.P.R. at 497 [citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)].

In order to be similarly situated, the comparator employee must be in the same work unit, must have the same supervisors, and the misconduct must be substantially similar. *See Brown v. Defense Logistics Agency*, 65 M.S.P.R. 436, 445 (1994), *aff'd*, 67 F.3d 319 (Fed. Cir. 1995) (Table); *Thomas v. Department of*

*Defense*, 66 M.S.P.R. 546, 551, *aff'd*, 64 F.3d 677 (Fed. Cir. 1995); *Archuleta v. Department of the Air Force*, 16 M.S.P.R. 404, 407 (1983).

When questioned concerning alleged similarly situated employees, the appellant named a coworker, Janice[13] Palvick (a white female), a Special Agent, who she claimed was employed in the same division as she. *See* RRAF, Tabs 7 and 9. After the prehearing telephone conference held on July 10, 2006, by submission of that same date, the appellant additionally alleged that Ed Gomez, a Director who she stated was employed in the San Francisco area, should be deemed an appropriate comparator as well. *See* RAF, Tab 7.

With regard to Mr. Gomez, however, it appeared that he did not work in the same work unit as the appellant, or that he had the same supervisor. Thus, the appellant has not shown that he was a comparator employee.

By submission dated July 17, 2006, the agency moved to exclude Janice Pavlick as an approved witness for the appellant, arguing that she was not similarly situated to the appellant. RRAF, Tab 10. The agency argued that, since July of 2002, Ms. Pavlick has been a supervisor, unlike the appellant who has never served as a supervisor. *Id*. The agency also argued that Ms. Pavlick has never been supervised by either the proposing or the deciding official who were involved in the appellants' removal. *Id*. Additionally, the agency argued that unlike the appellant, Ms. Pavlick never experienced any problems regarding the completion of her SF-86, nor was she ever terminated from a prior position for misconduct. *Id*.

While the appellant alleged that Ms. Pavlick was a comparative employee for her disparate treatment claim, she has not disputed the agency's proffer concerning the above matters, nor has she met her burden in this regard. In any

---

[13]   The appellant named a "Janice Plavick" during the July 10, 2006 prehearing telephone conference, as a similarly situated employee, but subsequently informed me by submission dated July 10, 2006, that the employee's name is "Janice Plavick".

event, the agency has articulated a legitimate nondiscriminatory reason for its actions (the unsuitability charge which I have sustained), and the appellant has not established that the agency's charges constitutes a pretext for discrimination. Thus, the appellant's affirmative defenses of discrimination fail.

Reprisal for EEO Activity

To establish retaliation for EEO complaint activities, appellant must show that she engaged in protected activity; the accused official or officials knew of the activities; the agency action under review could have been retaliation under the circumstances; and after carefully weighing the motive to retaliate, that there is a genuine nexus between the alleged retaliation and the disputed agency action. *See Trammell v. Department of Veterans Affairs*, 60 M.S.P.R. 79, 88-89 (1993). In determining whether the appellant has established a nexus between the alleged retaliation and the adverse action, the Board must weigh the intensity of the motive to retaliate against the gravity of the misconduct. *Id.* The proper perspective for this determination is the gravity of the misconduct as it appeared to the deciding official at the time he took the action. *Jefferson*, 81 M.S.P.R. at 612.

The appellant argued that she filed a formal EEO complaint in October of 2003, and she clarified during the prehearing conference that a Hector Santana was the management official who she is claiming retaliated against her because of her EEO activities. *See* AF, Tab 9. The appellant, however, has failed to show that Hector Santana played any role in Ms. Fairtile's (the deciding official's) decision to remove her. Moreover, Ms. Fairtile testified that she did not know that the appellant had filed an EEO complaint when she made the decision to remove her, and the record does not indicate otherwise. Thus the appellant failed to meet her burden of showing that there was a genuine nexus between the alleged retaliation and her removal action, and her defense of retaliation thus fails.

The penalty

Penalty determinations are judgment calls within the discretion of the employing agency. *LaChance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). The Board may not independently determine penalties. *Id.* at 1259. Rather, in a case in which all of the charges against an appellant are sustained, the Board reviews the penalty selection to determine whether it is so excessive as to be an abuse of discretion or is otherwise arbitrary, capricious, or unreasonable. *Douglas*, 5 M.S.P.R. at 302. In such cases, the Board will review an agency-imposed penalty to determine if the agency conscientiously considered all of the relevant mitigating factors and exercised management discretion within tolerable limits of reasonableness. *Id.* at 306.

In conducting its review, the Board will weigh these factors with the agency's discretionary authority to carry out its managerial functions in maintaining employee discipline and overall efficiency. *Id.* at 302. The Board's function in this regard is not to displace management's responsibility, but to assure that managerial judgment has been properly exercised. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the agency's judgment clearly exceeded the bounds of reasonableness. *Hylick v. Department of the Air Force*, 85 M.S.P.R. 145, 153 (2000).

In evaluating a penalty determination, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or was frequently repeated. *Hylick*, 85 M.S.P.R. at 153.

There is no *per se* rule that removal is always warranted where an employee has falsified documents. *Perez v. U.S. Postal Service*, 75 M.S.P.R. 503, 506 (1997). However, the Board has held that law enforcement positions require a higher standard of conduct and degree of trust. *See, e.g., Padilla v.*

23

*Department of Justice,* 64 M.S.P.R. 416, 423 (1994), *aff'd,* 64 F.3d 676 (Fed. Cir. 1995) (Table).

In her November 18, 2004 decision letter, Ms. Fairtile stated that the appellant's conduct was serious, and that it called into question her judgment, integrity veracity and trustworthiness. IRAF, Tab 4, Agency's Response, tab 8. Ms. Fairtile also stated that, as a Federal law enforcement officer, the appellant should be held to the highest standards of conduct and performance. *Id.* Additionally, Ms. Fairtile noted that the appellant had expressed no remorse, and that she had not taken any responsibility for her actions. *Id.*

During her testimony, Ms. Fairtile stated that she does not believe that the appellant would have been offered her position, had the agency knew of her situation with the West Virginia Department of Corrections. Ms. Fairtile also stated that she considered the appellant's 5 years of service, but that her length of service was outweighed by her misconduct. She also testified that she considered that, in June of 2003, the appellant had been previously suspended for a five day period, for "violation of travel card policy." *See* RAF, Tab 13.

While I have also considered all of the appellant's defenses raised in connection with the agency's charge in my determination of the reasonableness of the penalty imposed in this case, I find that removal is reasonable under all of the circumstances. The appellant's falsification of an SF-86, a form which was required for her law enforcement position, unfortunately, directly implicates her honesty and fitness for employment. *Pappas,* 76 M.S.P.R. at 161; *Hanker v. Department of the Treasury,* 73 M.S.P.R. at 168; *Devitto v. Office of Personnel Management,* 61 M.S.P.R. 297, 302 (1994).

For all of these reasons, I find that the agency considered the relevant *Douglas* factors, and the penalty of removal is reasonable under the specific circumstances of this case.

## DECISION

Both the agency's indefinite suspension and removal actions are AFFIRMED.

FOR THE BOARD:

Michelle M. Hudson
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on ___OCT 1 1 2006___, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial

decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

### JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail        Linda Y. Cruz-Packer
4800 Megan Drive
Clinton, MD 20735

<u>Appellant Representative</u>

Electronic Mail        Crystal A. G. Fisher, Esq.
Carolyn Eaglin & Associates
431 North Lee Street
Alexandria, VA 22314

<u>Agency Representative</u>

U.S. Mail        Bryan A. Bonner, Esq.
Remy Savin
Department of Homeland Security
Office of Chief Counsel
Transportation Security Administration
TSA Headquarters, East Tower
601 S. 12th Street, 12th Floor
Room 214S, TSA-2
Arlington, VA 22202-4220

_____
September 6, 2006
(Date)

_____
Sheila R. Stanton
Paralegal Specialist

Docket No. DC-0752-05-0636-B-1
Party:        Agency's Representative


Bryan A. Bonner, Esq.
Remy Savin
Department of Homeland Security
Office of Chief Counsel
Transportation Security Administration
TSA Headquarters, East Tower
601 S. 12th Street, 12th Floor
Room 214S, TSA-2
Arlington, VA 22202-4220